**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTHONY HAM, individually and on behalf of all others similarly situated, | |
| | Case No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| LENOVO GROUP LTD. and LENOVO (UNITED STATES) INC., | |
| Defendants. | |

Plaintiff Anthony Ham ("Plaintiff") brings this Class Action Complaint against Defendants Lenovo Group Limited and Lenovo (United States) Inc. (together "Lenovo," the "Lenovo Defendants," or "Defendants"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys:

**<u>NATURE OF THE ACTION</u>**

1.      Plaintiff brings this important consumer class action to remedy Lenovo's years-long policy of fabricating fictitious valuations for its laptop and desktop computers, falsely representing those valuations as the "estimated value" of their products, and then advertising purported discounts based on those fictitious valuations.  Lenovo's practice knowingly takes advantage of the complexity of personal computers and the need for consumers to rely on manufacturers' representations regarding the quality and value of different models.  Lenovo's practice is deceptive, fraudulent, and violates the consumer protection laws of the state of New York.

1

2.      Lenovo touts itself as a "$70 billion revenue global technology powerhouse, ranked #159 in the Fortune Global 500, employing 75,000 people around the world, and serving millions of customers every day in 180 markets."[1]  As the single largest manufacturer of notebook computers in the world and one of the largest desktop computer manufacturers, revenue from PCs accounted for the vast majority of the company's $71 billion in revenue for the 2021/22 fiscal year.[2]

3.      In addition to its wholesale operations with retailers around the world, Lenovo operates a retail website, Lenovo.com, where it offers its laptop computers, desktop computers, and computer peripherals for sale directly to consumers.  Lenovo.com sells Defendants' ThinkPad, ThinkBook, IdeaPad, Yoga, Legion, Lenovo, and Chromebook laptops, its ThinkCentre, IdeaCentre, Legion, Yoga, and ThinkStation desktops, its ThinkPad and ThinkStation workstations, its Lenovo tablets, and its ThinkVision and Lenovo monitors (collectively the "Products").

4.      Despite its considerable economic success in the PC market, for years Lenovo has further padded its bottom line using fraudulent and deceptive business practices to deceive consumers about the nature and the value of the Products it sells on the Lenovo.com website.

5.      The exact presentation of Lenovo.com's product pricing has changed throughout the relevant period, but the overarching strategy has remained constant—Lenovo fabricates a fictitious original price, sometimes called "Web Price" (collectively referred to herein as "List Price") or explicit representation of a particular value or level of quality (referenced on Defendants' website and herein as "Estimated Value"), promises users substantial "savings" with a significant discount off the fictitious price ("Discount" or "Savings"), and presents users with a comparatively lower price to pay at the point of sale ("Sale Price").  The Discount or Savings figure is prominently

---

[1] *Available at* https://news.lenovo.com/pressroom/press-releases/fy-2021-22 (last visited May 28, 2022).
[2] *Id.*

displayed in this scheme, to highlight to users just how much of a Discount they are purportedly receiving and just how high-quality the Product purportedly is.

6.      Such representations induce reasonable consumers to believe that the List Price or Estimated Value represents either the product's normal price on Defendants' website and/or the prevailing price in the market.  In fact, the current List Price on Lenovo.com is labelled "Estimated Value" and includes the following description:

> Estimated value is Lenovo's estimate of product value **based on industry data, including the prices at which Lenovo and/or third-party retailers and e-tailers have offered or valued the same or comparable products**. Third-party data may not be based on actual sales.[3]

7.      These representations also induce consumers to believe the List Price or Estimated Value is the true value of the PC being advertised and that, therefore, the quality and value of the Product, in whole, is commensurate with the List Price or Estimated Value.  Computers are complex consumer goods.  Numerous factors affect the quality and overall value of different computer models, and reasonable consumers are not technologically literate enough to consider all of these factors together, including but not limited to: CPU processing speed, CPU cache size, the number of physical CPU cores, the number of virtual CPU cores, CPU power usage, CPU lifespan, RAM capacity, RAM cache size, RAM speed, RAM lifespan, hard drive capacity, hard drive speed, hard drive lifespan, whether a graphics card is integrated or discrete, the size, memory, clock rate, or bandwidth of the graphics card, screen resolution, screen brightness, screen power usage, how many and what kinds of ports the computer has, the wireless card's bandwidth and range, the amount of time a computer will last on battery, the lifespan of the computer's battery, and the computer's

---

[3] *See, e.g.*, https://www.lenovo.com/us/en/p/laptops/thinkpad/thinkpadx1/thinkpad-x1-carbon-gen-10-14-inch-intel/len101t0009 (last accessed May 26, 2022).

operating system.  Representations like Defendants' about the Estimated Value of their computers are actually a kind of qualitative statement because they induce consumers to believe those representations are commensurate with the Products' actual quality.

8.      Thus, consumers necessarily rely on representations made by the manufacturers and retailers of PCs and PC peripherals regarding their overall quality and value.  Consumers acting reasonably will assume, for example, that a computer "valued at" $2,000 is of a higher quality than a computer valued at $1,500 or $1,000 or less.  On Lenovo.com, consumers are led to believe that Defendants' Products have a particular value based on the List Price or Estimated Value of the Products.

9.      These advertised List Prices and purported Discounts, however, are completely illusory or grossly overstated.  This is because the List Price or Estimated Value used to calculate the amount of reported Discounts or "savings" is not the prevailing market price for obtaining the same product from one of the dozens of other retailers that sell Lenovo products or the prevailing market price for obtaining any comparable product from another manufacturer or, most damning, the price ever charged by Lenovo at Lenovo.com for the subject item in the normal course of its business.

10.     In truth, the List Price is simply a work of fiction.  Simply stated, Defendants fabricate a number using undisclosed formulas bearing no resemblance to the market, and they use the fictitious List Price or Estimated Value to create the appearance of a significant price discrepancy and the impression of significantly better quality, higher value Products and greater savings for their customers.

11.     The reality is that no discount is provided over Lenovo's everyday pricing and its Products' actual value and quality are much lower than advertised.  Its customers are not receiving

the value nor are they realizing the savings portrayed or expected by purchasing these advertised "Discounted" products from Lenovo. In fact, all other factors being equal, a customer will incur higher costs by purchasing a product through Lenovo.com (due *inter alia* to shipping and handling fees). Additionally, had Plaintiffs and members of the Class known that the Discounts on Lenovo.com were illusory, they would not have purchased their products from Lenovo.com, would have purchased them elsewhere, or may have purchased their PC from a different manufacturer entirely.

12.     Accordingly, Lenovo's business practice violates the New York General Business Law §§ 349 and 350, constitutes a breach of express and implied warranties, and has unjustly enriched Defendants.  Plaintiff thus seeks damages as well as injunctive, declaratory, and other equitable relief as may be deemed proper by the Court.

### PARTIES

**A.  Plaintiff**

13.     Plaintiff Anthony Ham is a resident of Champaign, Illinois and was, at all times relevant hereto, a citizen of Illinois.

14.     Plaintiff Ham purchased one of the Products on Lenovo.com during the relevant period.  When Plaintiff purchased the Product, Lenovo advertised the Product at a purported Sale Price supposedly discounted from a substantially higher List Price.

15.     The discount advertised by Lenovo for Plaintiff's T495 on the company's website was false and misleading because Defendants' actual price offered for the Product was not at any time the List Price displayed on Lenovo's website, nor was the List Price ever the prevailing market price for the Product, and because the Product's true quality or value was never reflected in the List Price.

**B. Defendants**

16.     Defendant Lenovo Group Limited ("Lenovo Group") is a multinational technology company with its global headquarters in Beijing, China and its worldwide operational headquarters in Morrisville, North Carolina.  Lenovo Group the largest manufacturer of laptop and desktop computers in the world with an annual revenue of over $70 billion and annual profit in the billions.

17.     Defendant Lenovo (United States) Inc. ("Lenovo US") is a Delaware Corporation headquartered in Morrisville, North Carolina.  Lenovo US is a wholly owned subsidiary of Lenovo Group.

18.     Defendants design, manufacture, advertise, and sell the Products throughout the United States and the world.

## JURISDCTION AND VENUE

1.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more proposed Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because at least some Plaintiffs and Defendants are citizens of different states.

2.     This Court has personal jurisdiction over the Lenovo Defendants because the company has substantial aggregate contacts with this State and District, including Defendants' uniform sales agreement which applies to all sales of the Products in the United States and purposefully avails Lenovo of the laws of New York "without regard to its conflict of law principles,"[4] engaging in conduct in this District that has a direct, substantial, reasonably

---

[4] Terms of Sale *available at* https://www.lenovo.com/us/en/terms-and-conditions/ (last accessed May 27, 2022).

foreseeable, and intended effect of causing injury to persons throughout the United States, and because Defendants placed the Products into the stream of commerce directed at this District.

19.    In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, Defendants transact substantial business in this District, and Defendants have intentionally availed themselves of the laws and markets within this District.

## FACTUAL ALLEGATIONS

### A. Lenovo Computers

20.    "Lenovo is a US$60 billion revenue Fortune Global 500 company serving customers in 180 markets around the world."[5]   According to Defendants, "[w]e deliver a full portfolio of PCs and tablets, monitors, accessories, smartphones, smart home and smart collaboration solutions . . . around the world.  Since 1995 we have shipped more than half a billion PCs, and we make three devices every second."[6]

21.    In 2005, Lenovo acquired IBM's PC business for $1.2 billion, including $650 million in cash.[7] This acquisition gave Lenovo the ThinkPad brand, renowned for its build quality, performance, and reliability.  In 2008, Lenovo further capitalized off of the ThinkPad brand name, announcing its new line of IdeaPad PCs—a nod to the ThinkPad brand and its already-established reputation.

22.    Lenovo's lines of smartphone, PC, and PC peripheral devices has grown to include ThinkPad, ThinkBook, IdeaPad, Yoga, Legion, ThinkStation, IdeaCentre, Lenovo-branded PCs, Lenovo-branded Chromebook laptops, and Lenovo smart phones.  Lenovo manufactures and

---

[5] *Available at* https://investor.lenovo.com/en/global/home.php (last accessed June 7, 2022).

[6] *Available at* https://www.lenovo.com/us/en/about/whoweare/ (last accessed June 7, 2022).

[7] *Available at* https://news.lenovo.com/pressroom/press-releases/lenovo-completes-acquisition-ibms-personal-computing-division/ (last visited June 7, 2022).

distributes its Products across the world to major retailers, and it offers its Products for sale directly from Lenovo.com.

**B. Defendants' Misrepresentations to Consumers**

23.    Consumers visiting Lenovo.com to shop for PCs are immediately greeted with a banner claiming enormous savings on current sales:

Save up to 65% off PCs and top tech. **Shop Now >**    [8]

This banner, or a similar banner, is and has always been present on the Lenovo website throughout the relevant period, regardless of whether there are in fact any sales promotions being offered.

24.    Lenovo's advertising similarly perpetually represents that consumers can save big if they act now, regardless of whether there are in fact any sales promotions being offered:



_____

25.    The Lenovo website also highlights some of the company's flagship PC models with significant purported savings.  For instance, the PC landing page on June 7, 2022 displayed the following:



Each of the flagship models advertised claimed to offer thousands of dollars in potential savings. For instance, Lenovo represents on its website that the ThinkPad X1 Carb Gen 9 (14 inch Intel) Laptop has an Estimated Value of $2,469.00 but a current sale price starting at $1,401.60, more than $1,000 in savings:

---

9 *Available at* https://www.lenovo.com/us/en/pc/ (last accessed June 7, 2022).



**ThinkPad X1 Carbon Gen 9 (14",
Intel) Laptop**

⭐⭐⭐⭐⯪

Est Value ⓘ ~~$2,469.00~~
Starting at
**$1,401.60**
$117/mo suggested payments w/12 mo promo
financing See How | Prequalify

[10]

26.    The website says "Starting at" because each model has various configurations with different specifications for CPU, RAM, hard drive capacity, and more.  For instance, two of the X1 Carbon configurations available in June 2022 are:

---

[10] *Available at* https://www.lenovo.com/us/en/p/laptops/thinkpad/thinkpadx1/x1-carbon-gen9/22tp2x1x1c9 (last accessed June 7, 2022).




11

As shown above, Lenovo represents to consumers that these models have Estimated Values of

$3,049.00 and $3,589.00 respectively, and claims "savings" of over $1,000 on each

configuration, or "40% off."

27.   This express warranty of the "Estimated Value" listed for each Product is explained

as follows:

> Estimated value is Lenovo's estimate of product value based on industry data,
> including the prices at which Lenovo and/or third-party retailers and e-tailers have

[11] *Id.*

offered or valued the same or comparable products. Third-party data may not be based on actual sales.

Thus, consumers are reasonably left with the impression that these models offer quality and value commensurate with their high Estimated Values.

28.     For products as complex as personal computers, consumers necessarily rely on these kinds of representations because the average consumer cannot take into account the myriad variables that determine the quality and value of computers.  Lenovo's own product pages illustrate the overwhelming number of variables to consider in buying a PC:

| | |
|---|---|
| Processor : 11th Generation Intel® Core™ i7-1165G7 Processor (2.80 GHz, up to 4.70 GHz with Turbo Boost, 4 Cores, 8 Threads, 12 MB Cache) | Processor : 11th Generation Intel® Core™ i7-1185G7 Processor with vPro™ (3.00 GHz, up to 4.80 GHz with Turbo Boost, 4 Cores, 8 Threads, 12 MB Cache) |
| Operating System : Windows 10 Pro 64 | Operating System : Windows 11 Pro 64 |
| Graphics : Integrated Intel® Iris® Xe Graphics | Graphics : Integrated Intel® Iris® Xe Graphics |
| Memory : 16 GB LPDDR4X 4266MHz (Soldered) | Memory : 32 GB LPDDR4X 4266MHz (Soldered) |
| Storage : 1 TB PCIe SSD | Storage : 512 GB PCIe SSD |
| Display : 14.0" WUXGA (1920 x 1200) IPS, anti-glare, low-power, 400 nits | Display : 14.0" WUXGA (1920 x 1200) IPS, anti-glare, low-power, 400 nits |
| Camera : IR & 720p HD with HPD | Camera : 720p HD |
| Fingerprint Reader : Fingerprint Reader | Fingerprint Reader : Fingerprint Reader |
| Keyboard : Backlit - US English | Keyboard : Backlit - US English |
| WLAN : Intel® Wi-Fi 6 AX201 802.11AX (2 x 2) & Bluetooth® 5.2 | WLAN : Intel® Wi-Fi 6 AX201 802.11AX (2 x 2) & Bluetooth® 5.2 with vPro™ |
| Warranty : 1 Year Depot or Carry-in | Warranty : 1 Year On-site [12] |

---

[12] *Id.*

This is not an exhaustive list of the relevant component specifications in a PC.  For each of the more than a dozen relevant components in a PC, there are multiple metrics that gauge the quality and value.  For instance: clock speed, cache, cores, and threads are all considerations in evaluating the quality and value of a CPU.  Memory (or RAM) relevantly varies in memory size, DDR classification, frequency, latency, memory bandwidth, and more.  CPU and RAM are not unique.  Each component in a PC comes with its own complex array of considerations, which vary from model to model—and sometimes within different configurations of the same 'model.'

29.     Thus, when the Lenovo Defendants represent to consumers that a particular configuration of its ThinkPad X1 Carbon PC has an Estimated Value of $3,589, consumers reasonably believe that all of the components and the boundless specifications thereof, taken together, comprise a Product with quality and value commensurate with a $3,589 computer.  That is, consumers reasonably believe that such a computer is "better" than, for instance, a Dell laptop sold for $2,000 or a Macbook Pro sold for $2499.  Consumers also reasonably believe that an X1 Carbon with an Estimated Value of $3,589 is typically or at least sometimes sold at or around that price, not least because Lenovo explicitly represents as much.

30.     None of this could be further from the truth.  Not only are Products' Estimated Values completely unrepresentative of those Products' quality and value as compared to similar computers, the Estimated Values don't have any relationship whatsoever with the actual sales price of *that same model* on the Lenovo.com website or at any other retailer.

31.     Take, for instance, the X1 Carbon with an "Estimated Value" of $2,469.00, with an Intel i7-1185G7 Processor, 32GB of LPDDR4X memory, and a 512GB solid state hard drive.



In contrast, an X1 Carbon with these same specifications can be purchased for a whopping $1,159.99—a full $1,300 less than the "Estimated Value" on Lenovo.com and more than $300 cheaper than the "sale" price on Lenovo's own amazon.com store:

---



32.     Thus, a consumer who reasonably trusts Lenovo's false representations would be led to believe they were receiving a laptop of quality and value approximating $2,469 with a $987 discount when, in reality, they are receiving a laptop of far lesser quality and value at a <u>$300 premium</u> over the same or comparable models sold elsewhere.

33.     Lenovo's ThinkPad X1 Carbon laptop computers are not unique.  In fact, Defendants use the exact same scheme to inflate the value and perceived quality of virtually all of the Products.  For instance, a ThinkPad T15 Gen 2 Intel PC with an i5 CPU, 8 GB of RAM, and a 256 solid state hard drive has an "Estimated Value" of $2,190.00 on Lenovo.com and a sale price of $1,313.40 with $875.60 in purported "savings" whereas the same computer with *twice* the hard drive capacity and otherwise identical specifications sells for $1,279.00 on Amazon.

---

[14] *Available at* https://www.amazon.com/Lenovo-ThinkPad-Fingerprint-i5-1135G7-Bluetooth/dp/B09S3BLDDJ/ (last visited June 7, 2022).



**ThinkPad T15 Gen 2 Intel (15") - Black**

Save $875.60   **40% off**

Est Value ⓘ ~~$2,189.00~~

**$1,313.40**

Lenovo Financing   $110/mo suggested payments w/12 mo promo financing
See How | Prequalify

Use eCoupon  THINKJUNE
eCoupon limited to 2 units

**Add To Cart**



Processor : 11th Generation Intel® Core™ i5-1135G7 Processor (2.40 GHz, up to 4.20 GHz with Turbo Boost, 4 Cores, 8 Threads, 8 MB Cache)

Operating System : Windows 10 Pro 64

Graphics : Integrated Intel® UHD Graphics

Memory : 8 GB DDR4 3200MHz (Soldered)

Storage : 256 GB PCIe SSD

Display : 15.6" FHD (1920 x 1080) IPS, anti-glare, 300 nits

15



Roll over image to zoom in



Lenovo ThinkPad T15 Gen 2 15.6" Business IPS Laptop (Intel i5-1135G7 4-Core, 8GB RAM, 512GB PCIe SSD, Intel Iris Xe, 60Hz Full HD (1920x1080), WiFi, Bluetooth, Backlit KB, Win 10 Pro) with Hub

Visit the Lenovo Store

$1,279⁰⁰

Get 3% back on this item with the Amazon Rewards Visa Card.

Capacity: **8GB RAM|512GB SSD**

| 8GB RAM|1TB SSD | 8GB RAM|256GB SSD | **8GB RAM|512GB SSD** | 16GB RAM|1TB SSD |
| 16GB RAM|256GB SSD | 16GB RAM|512GB SSD | 24GB RAM|1TB SSD | |
| 24GB RAM|512GB SSD | 40GB RAM|1TB SSD | 40GB RAM|2TB SSD | 40GB RAM|512GB SSD |

Style: **Windows 10 Pro**

| **Windows 10 Pro** | Windows 11 Pro |

| Brand | Lenovo |
| Series | ThinkPad T15 Gen 2 |
| Screen Size | 15.6 Inches |
| Hard Disk Size | 512 GB |
| CPU Model | Core i5 |
| Ram Memory Installed Size | 8 GB |

˅ See more

16

---

[15] *Available at* https://www.lenovo.com/us/en/p/laptops/thinkpad/thinkpadt/thinkpad-t15-gen-2-(intel)/22tpt15t5n2 (last visited June 7, 2022).
[16] *Available at* https://www.amazon.com/Lenovo-ThinkPad-i5-1135G7-Fingerprint-

The Lenovo Yoga 6 is a "New Arrival" on Lenovo.com with no prior sales history whatsoever. And yet these brand new Yoga 6 configurations all have "Estimated Values" hundreds of dollars above Lenovo's asking price:



---

Bluetooth/dp/B09MR6FL7P/ref=sr_1_1_sspa (last visited June 7, 2022).

[17] *Available at* https://www.lenovo.com/us/en/p/laptops/yoga/yoga-2-in-1-series/yoga-6-gen-7-(13-inch-amd)/len101y0014 (last visited June 7, 2022).

Lenovo applies this practice uniformly to *inter alia* its Legion gaming laptops,[18] ThinkBooks,[19] IdeaPads,[20] ThinkCentre desktops,[21] IdeaCentre desktops,[22] ThinkStation Workstations,[23] tablets,[24] monitors.[25]

34.    Defendants' policy is applied uniformly to virtually all of its Products.  Lenovo provides a fictitious Estimated Value or List Price for each Product, highlights a large purported "savings," and then ultimately offers the Product for sale at or above the prevailing market price. The result is two-fold.  First, consumers are deceived into believing that the Product they are purchasing is of substantially higher quality or greater value than it really is.  Second, consumers are deceived into believing they are being offered a substantial sales price—which reasonably induces consumers to pull the trigger and purchase the fictitiously priced Product for fear that the sale will end before they are able to thoroughly research the market.

35.    Lenovo knows its policy has this effect and, in fact, Lenovo *intends* for this deleterious effect on consumers.  As a result, the company sells more of its Products directly, without retailers acting as middlemen, *and* it does so at a price premium over the prevailing market rate.

---

[18] *Available at* https://www.lenovo.com/us/en/p/laptops/legion-laptops/legion-5-series/legion-5-gen-6-(15%E2%80%9D-amd)-gaming-laptop/len101g0004 (last visited June 7, 2022).
[19] *Available at* https://www.lenovo.com/us/en/p/laptops/thinkbook/thinkbook-series/lenovo-thinkbook-15-g2-itl/xxtbxtmi500 (last visited June 7, 2022).
[20] *Available at* https://www.lenovo.com/us/en/p/laptops/ideapad/ideapad-300/ideapad-3-(15%E2%80%9D,-amd)-laptop/len101i0010 (last visited June 7, 2022).
[21] *Available at* https://www.lenovo.com/us/en/p/desktops/thinkcentre/m-series-tiny/thinkcentre-m75q-gen-2/11tc1mtm7g2 (last visited June 7, 2022).
[22] *Available at* https://www.lenovo.com/us/en/p/desktops/ideacentre/aio-500-series/ideacentre-aio-5i-27/fficf500348 (last visited June 7, 2022).
[23] *Available at* https://www.lenovo.com/us/en/p/workstations/thinkstation-p-series/thinkstation-p348-tower-workstation/len102s0004 (last visited June 7, 2022).
[24] *Available at* https://www.lenovo.com/us/en/p/tablets/android-tablets/lenovo-tab-series/tab-m8-hd-lte/tab-m8-hd-lte (last visited June 7, 2022).
[25] *Available at* https://www.lenovo.com/us/en/p/accessories-and-software/monitors/office/62aakar6us (last visited June 7, 2022).

36.     As a result, consumers are injured in the amount of the so-called Estimated Value minus the actual sale price.  This is because consumers believe, and Lenovo knowingly induces them to believe, that they are getting a PC of a quality and value commensurate with the Estimated Value when, in reality, they are getting a Product of lesser quality and value.

**PLAINTIFF'S FACTUAL ALLEGATIONS**

37.     Like other consumers, Plaintiff Anthony Ham purchased one of the Products from Lenovo's website relying on the company's inflated valuations and illusory discounts.

38.     In June 2020 when Plaintiff visited Lenovo.com, the site prominently advertised "All Think on Sale!" and promised that consumers could "[s]ave up to 65% on ThinkPad laptops" with several flagship Lenovo laptops purportedly Discounted below the banner:



26

---

[26] *Available at* https://web.archive.org/web/20200701000000*/https://www.lenovo.com/us/en/ (last visited June 13, 2022).

39.     On June 17, 2020, Plaintiff purchased a T495 (14') AMD 3700U with 8GB of RAM and a 256GB capacity solid state hard drive (the "T495") on Lenovo.com for a Sale Price of $969. When Plaintiff purchased the T495, the computer's product page advertised a "Web Price," which the page suggested was the original price or actual value of the product, a substantially lower sale price of $969, and significant purported Savings.

40.     Around the time Plaintiff purchased the T495, Lenovo advertised the Product at a purported Sale Price of $1,037.40 supposedly discounted from a substantially higher List Price of $1,729.00.[27]  Defendant highlighted a supposed savings of $691.60:

---

[27] There is no Lenovo.com product page for the T495 archived by Wayback Machine for the day Plaintiff Ham purchased the Product, but it was archived 2 weeks later on July 3, 2020, which is available at https://web.archive.org/web/20200701000000*/https://www.lenovo.com/us/en/laptops/thinkpad/thinkpad-t-series/T495/p/22TP2TTT495 (last visited June 13, 2022).  At that time, the advertised Sale Price was substantially similar.



41.     The Web Price and the Savings advertised by Lenovo for Plaintiff's T495 on the company's website were both false and misleading because Defendants' actual price offered for the Product was not at any time the List Price displayed on Lenovo's website, nor was the List Price ever the prevailing market price for the Product, and because the Product's true value was never reflected in the List Price.

---

[28] This screenshot was taken from a Wayback Machine archived version of the T495 product page from July 3, 2020 and is available at
https://web.archive.org/web/20200701000000*/https://www.lenovo.com/us/en/laptops/thinkpad/thinkpad-t-series/T495/p/22TP2TTT495 (last visited June 13, 2022).

42.    In fact, Plaintiff's configuration of the T495 launched in June 2019 with a List Price of $1,209.  Notably, this was the only period in the Product's entire lifecycle where it was not offered with a purported discount:



43.    The next month in July 2019, the Product was advertised with a Sale Price of $904 and an advertised Savings of $304:

---



44.     One month later, in August 2019, the Product's List Price ballooned to $1,729 and its Sale Price also increased—to $1,037.92.  Thus, although Lenovo had increased the Product's Sale Price by $133, it advertised a massive, purported Savings of $691.08:

---



45.     Throughout the rest of the T495's approximately 2-year lifecycle, Defendants continued to advertise Plaintiff Ham's configuration of the Product with a List Price of $1,729.00 and substantially lower Sale Prices ranging from $972.00 to $1,037.  Each archived version of the Product's web page throughout that period had a different eye-popping banner accompanying the purported Discount, promising significant savings.  "Cyber Monday in July."  "Weekend Sale." "Black Friday sneak peak.  Save up to 62% on ThinkPad T495 (14")."  Hurry!  Sale Ends 11/2."[32]

---

[31] *Id.*
[32] *Id.*

46.     Lenovo.com did not offer the Product at or even near the supposed List Price of $1,729.00 at any time prior to or after Plaintiff's purchase, nor did any retailer selling this configuration.  In fact, at the time of Plaintiff's purchase, models substantially similar to Plaintiff's T495 were available for a price lower than Lenovo.com's Sales Price, including its purported and fictitious Discount.

47.     For instance, in July 2020 a comparable configuration of Lenovo's ThinkPad T495s, with a 3700U AMD process, 8GB of RAM, and a 256GB solid state hard drive, was offered for sale (direct from Lenovo) on eBay for $749.99.[33]  The T495s is a lighter and more portable version of the T495 and comparable configurations of the T495s are typically sold at a $100 premium over the standard T495 configurations.[34]  Yet, mere weeks after Plaintiff Ham purchased his T495 for $969, the higher-end T495s variant with comparable hardware specifications was available for $200 less.

48.     An Amazon reviewer for the 3500U configuration of the T495 in November 2019 was tricked by Defendants' misrepresentations regarding the 3700U much in the same was as Plaintiff Ham, stating: "I had already ordered a T495 with a Ryzen 3700u from Lenovo with similar specs for $950 (**a substantial discount from their list price**) when I saw this item on Amazon for $650. I ordered from Amazon and will send the other one back to Lenovo as soon as it gets here."[35] This consumer got off lucky.  He found the $650 offer on Amazon for the 3500U configuration of the T495.  If he had instead stayed on Lenovo.com and believed Defendants' misrepresentations that they offered a significant Discount and that the illusory savings promotion would end soon,

---

[33] *Available at* https://web.archive.org/web/20200723041426/https://www.ebay.com/itm/Lenovo-ThinkPad-T495s-14-0-FHD-IPS-250-nits-Ryzen-7-Pro-3700U/164288563162 (last accessed June 13, 2022).
[34] *See* https://www.zdnet.com/product/lenovo-thinkpad-t495s/ (last accessed June 14, 2022).
[35] *Available at* https://www.amazon.com/Lenovo-ThinkPad-20NJ0004US-Touchscreen-Notebook/product-reviews/B07SH98QDW?reviewerType=all_reviews (last visited June 13, 2022).

he may have purchased the exact same 3500U configuration on Lenovo.com for $893, a full $243 more than the Amazon price.

49.     The 3500U configuration of the T495 was typically offered for $100 less than the 3700U configuration.  Thus, while archived web data from 2020 does not show the exact price prevailing in the market for Plaintiff Ham's configuration of the T495 at the time of purchase, it illustrates that substantially similar models were consistently overpriced on Lenovo.com as compared to competitors' websites.  Plaintiff Ham could have purchased a more high-end version of his T495 for approximately $200 less or a slightly less powerful version for $300 less (whereas the different in prevailing market price of the two models was only $100).

50.     Plaintiff Ham also could have purchased competitors' laptops with comparable or better hardware configurations for a lesser price.  For instance, in June 2020 when Plaintiff purchased his T495, an ASUS ZenBook 14 3700U—a laptop in the same segment as Plaintiff's T495—with twice the hard drive capacity was offered for as low as $900.00.[36]  At that same time, a Dell Inspiron 5485 3700u with the same processor, same RAM, and twice the hard drive capacity was offered for as low as $639.99.[37]  Plaintiff, however, did not have the opportunity to shop around and compare these and other models because he was induced by Defendants' misrepresentations to act quickly on Defendants' illusory T495 Discount and grossly inflated valuation.

51.     Through the misrepresentations detailed above, Defendants misled Plaintiff into believing that the fictitious List Price stated on the Lenovo website was the actual, prevailing

---

[36] *Available at*
https://camelcamelcamel.com/product/B084ZPT9ST?utm_campaign=camelizer&utm_medium=extension&utm_source=edge&utm_content=chart&utm_term=US-B084ZPT9ST (last visited June 15, 2022).
[37] *Available at*
https://camelcamelcamel.com/product/B07ZDL34CW?utm_campaign=camelizer&utm_medium=extension&utm_source=edge&utm_content=chart&utm_term=US-B07ZDL34CW (last visited June 15, 2022).

market price for the Product and that he was receiving a substantial Discount from the List Price. Defendants also misled Plaintiff into believing the illusory Discount offered was only for a limited time, thus motivating Plaintiff to act more quickly and spend less time comparing prices and models elsewhere.

52.    In reality, the List Price Defendants advertised bore no relation to the Product's prevailing market price, at the time Plaintiff purchased it or ever, and Plaintiff in fact paid a Sales Price similar to or the same as the typical price on the Lenovo.com website.  Worse, Plaintiff paid a Sales Price that was greater than the sales price of substantially similar laptop models offered elsewhere.

53.    Had Plaintiff known the true nature of Defendants' pricing, that the Product was actually worth significantly less than Lenovo represented and that the purported Savings touted by Defendant were entirely illusory, he would have not purchased the Product from Lenovo.com.  He would have purchased the Product elsewhere for less or would have purchased a comparable PC from a different manufacturer entirely, for a similar or even lower price.

54.    As a result of Defendants' actions, Plaintiff has incurred damages, including economic damages.

## CLASS ACTION ALLEGATIONS

55.    Plaintiff brings this action individually and as the representative of all those similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the below-defined Class:

> **Class Definition**: During the fullest period allowed by law, all persons in the United States who purchased any of the Products on Defendants' website, Lenovo.com, for which Defendants advertised both a List Price or Estimated Value and a Sale Price.

56.     Members of the class described are referred to herein as "Class Members" or members of the "Class."

57.     Plaintiff reserves the right to amend the Class definitions or add a Class or Classes if discovery and/or further investigation reveal that the Class definition(s) should be narrowed, expanded or otherwise modified.

58.     The following are excluded from the Class: (1) any Judge presiding over this action and members of his or her family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

59.     **Numerosity – Federal Rule of Civil Procedure 23(a)(a)**: The members of the Class are so numerous that their individual joinder herein is impracticable. Lenovo maintains accurate records of all transactions occurring on its website, including the name, mailing address, email and billing information of each of the Class members.  While the exact number of Class members is unknown to Plaintiff at this time, Plaintiff is informed and believes that there are tens of thousands of members in the proposed Class, if not more, and a precise number can be ascertained through discovery. The number of individuals who comprise the Class are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action, rather than in individual actions, will benefit both the parties and the courts.

60.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**: Common questions of law and fact exist as to all members of each of the Class and predominate over questions affecting only individual members of the Class. Such common questions of law or fact include, but are not limited to, the following:

- a.     Whether Defendants misrepresented material facts concerning the quality, value, or market price of the Products on their website;
- b.     Whether Defendants' conduct was unlawful; unfair; fraudulent and/or deceptive;
- c.     Whether Defendants breached express warranties to Plaintiff and Class Members;
- d.     Whether Defendants were unjustly enriched when selling the fictitiously-valued Products to Plaintiff and Class Members;
- e.     Whether Plaintiff and the Class have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

61.     Defendants engaged in a common course of conduct giving rise to the legal rights Plaintiff seeks to enforce on behalf of himself and the other Members of the proposed Class. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action.

62.     **Typicality – Federal Rule of Civil Procedure 23(a)(3)**. Plaintiff's claims are typical of the claims of the other Members of the Class because, among other things, all Members of the Class were comparably injured through Defendants' uniform misconduct described above. Further, there are no defenses available to Defendants that are unique to Plaintiff or to any particular Members of the Class.

63.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other Members of the Class he seeks to represent; he has retained counsel competent and

experienced in complex class action litigation; and he will prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and the undersigned counsel.

64.     **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, Members of the Class would continue to suffer the harm described herein, for which they would have no remedy.  Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendants. The proposed Class thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

65.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Members of the Class to individually seek redress for Defendants' wrongful conduct.  Even if Members of the Class could afford individual litigation, the court system could not.  Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management

difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
**Violation of the New York Deceptive Trade Practices Act,**
**New York Gen. Bus. Law § 349, *et seq.***
**(On behalf of the Class)**

66.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

67.     By reason of the acts set forth above, Defendants have been and are engaged in deceptive acts or practices in the conduct of a business, trade, or commerce in violation of New York's General Business Law § 349.

68.     The Lenovo Defendants engaged in unfair and/or deceptive conduct by, *inter alia*, making the representations that the Products were of a far higher quality and greater value than they actually were, based on fictitious List Prices or Estimated Values.

69.     The public is likely to be damaged because of Lenovo's deceptive trade practices or acts. Specifically, Lenovo's false, deceptive, or misleading statements give consumers a false impression of the value of Lenovo's PC and PC peripherals and consumers' potential savings.

70.     Lenovo directs its conduct at consumers, as its false, deceptive, or misleading statements are contained in marketing targeted toward consumers, including on the product pages of each of the Products. As such, Defendants' conduct as alleged herein is consumer oriented.

71.     Defendants' deceptive acts are likely to mislead a reasonable consumer acting reasonably under the circumstances.

72.     Defendants' deceptive acts affect the public interest in the state of New York because, upon information and belief, consumers located in New York have purchased Lenovo's Products in reliance on Defendants' false, deceptive, or misleading statements.

73.     Defendants' advertising and the Products' fictitious pricing or valuation induced Plaintiff and the Class to purchase Lenovo's Products.

74.     Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the Class have been damaged thereby.

75.     As a result of Defendants' use of unfair or deceptive acts or business practices, Plaintiff and each of the other Members of the Class have sustained damages in an amount to be proven at trial.

76.     In addition, Plaintiff Ham and Class Members seek equitable and injunctive relief against Defendants on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

77.     Finally, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT II
### Violation of the New York Deceptive Trade Practice Act,
### New York Gen. Bus. Law § 350, *et seq.*
### (On behalf of the Class)

78.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

79.     The Lenovo Defendants has made material, false or misleading statements or representations of fact about the Products. Specifically, Defendants has literally, impliedly, or by necessary implication made the representations that the Products are of a particular quality or value and that the Products are offered at significant discount to the consumer, when in reality the Products are not of the quality or value represented, are not discounted at all, and can often be found at a lesser price from other retailers.

80.     Defendants' acts constitute false advertising in the conduct of business, trade, or commerce, or in the furnishing of any service in the state of New York in violation of New York's General Business Law § 350.

81.     The public is likely to be damaged because of Defendants' deceptive trade practices or acts. Specifically, Lenovo's false, deceptive, or misleading statements give consumers a false impression of the value of Lenovo's PC and PC peripherals and consumers' potential savings.

82.     As such, Defendants' conduct as alleged herein is consumer oriented.

83.     As a result of Defendants' material, false or misleading statements or representations of fact about the Products, Plaintiff and each of the other Members of the Class have sustained damages in an amount to be proven at trial.

84.     In addition, Plaintiff Ham and Class Members seek equitable and injunctive relief against Defendants on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

85.     Finally, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**<u>COUNT III</u>**
**Breach of Express Warranty**
**(Plaintiff on Behalf of the Class)**

86.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

87.     At all times relevant hereto, Lenovo designed, manufactured, produced, promoted, marketed and sold the Products on its website, Lenovo.com.

88.     Lenovo, as the manufacturer, marketer, distributor, and seller, expressly warranted that the Products were of a particular quality or value and that the Products were being offered at a considerable discount.  However, the Products were never of the quality or value represented and the advertised discounts were illusory.

89.     Lenovo's express warranties, and its affirmations of fact and promises made to Plaintiff and Class Members regarding the Products became part of the basis of the bargain between Defendants and Plaintiff and the Class, thereby creating an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

90.     The Products do not conform to the express warranty because the representations are false or misleading.

91.     As a direct and proximate cause of Defendants' breach of express warranty, Plaintiff and Class Members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products; (b) they paid a substantial price premium for the Products based on Defendants' express warranties; and (c) the Products do not have the characteristics, uses, or benefits as promised.

92.     All conditions precedent to Defendants' liability under this warranty and/or contract were performed by Plaintiff and the Class when they purchased the Products and used the Products as directed.

93.     On June 16, 2022, Plaintiff Ham mailed notice of claim letters to the Lenovo Defendants via FedEx overnight delivery, including a copy of this Complaint, noticing Lenovo of its breach of warranty.  The letters were sent on behalf of himself and "all individuals comprising the proposed Class defined in the attached Complaint."  The letters specifically stated that they served as notice that Defendants' conduct violated, *inter alia*, the express and implied warranty statutes of New York. The letters identified Plaintiff Ham's Product as well as the other Lenovo Products at issue here by reference to this Complaint. A copy of these letters is attached as **Exhibit A** and **Exhibit B.**

## <u>COUNT IV</u>
## Breach of Implied Warranty
## (Plaintiff on Behalf of the Class)

94.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

95.     The Lenovo Defendants provided Plaintiff and Class Members with implied warranties that the Products were merchantable and fit for the ordinary purposes for which they were sold, *i.e.* that they were of the quality or value represented by Lenovo's advertised List Price or Estimated Value.

96.     Lenovo designed, manufactured, produced, promoted, marketed and sold the Products on its website, Lenovo.com, and Plaintiff and the Class purchased the Products from the Lenovo website.

97.     Plaintiff brings this claim for breach of the implied warranty of merchantability on behalf of himself and other consumers who purchased any of the Products with the expectation that the List Price or Estimated Value represented the actual quality or value of the Product, as Lenovo warranted.

98.     Lenovo has breached the implied warranties of merchantability that it made to Plaintiff and the Class.  Defendants impliedly warranted that the Products were of a higher quality and greater value than they actually were.  In reality, the List Price or Estimated Value of the Products had no relation to the Products' actual quality or value.

99.     When sold by Defendants, Lenovo's Products were not merchantable, did not pass without objection in the trade, were not of adequate quality within that description, were not fit for the ordinary purposes for which such goods are used, and did not conform to the promises or affirmations of fact made by Defendants.

100.     As a result of Defendants' breaches of implied warranties, Plaintiff and Class

Members did not receive the benefit of their bargain and suffered damages at the point of sale

stemming from their overpayment for Lenovo's Products.

101.     As a direct and proximate result of Defendants' breach of the warranties of

merchantability, Plaintiff and the other Class Members have been damaged in an amount to be

proven at trial.

**COUNT V**
**Fraud**
**(Plaintiff On Behalf of the Class)**

102.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

103.     Defendants made fraudulent misrepresentations to Plaintiff and members of the

Class regarding the Products, specifically that the Products were of a particular quality or value

and that the Products were offered at significant discount to the consumer, when in reality the

Products are not of the quality or value represented, are not discounted at all, and can often be

found at a lesser price from other retailers.

104.     Defendants had a duty to disclose material facts to Plaintiff and the Class given

their relationship as contracting parties and intended users of the Products. Defendants also had a

duty to disclose material facts to Plaintiffs and the Class, namely that it was in fact manufacturing,

distributing, and selling Products of quality and value with no relation to the advertised List Price

or Estimated Value, because Defendants had superior knowledge such that the transactions without

the disclosure were rendered inherently unfair.

105.     Defendants knew or should have known that the Products were not of the quality

or value represented by Lenovo's List Price or Estimated Value, but they nonetheless continued to

manufacture and advertise the Products as such.  Plaintiff and the Class purchased the Products

believing that the List Price or Estimated Value represented the actual value of the Products, as Lenovo represented.

106.    Lenovo failed to discharge its duty to disclose these material facts, and it affirmatively and falsely represented the List Price or Estimated Value of the Products as representative of their actual quality or value.

107.    In so misrepresenting these material facts to Plaintiff and the Class, Defendants intended to induce Plaintiff and the Class to believe that they were purchasing Products of significantly greater quality or higher value, and thus acted with scienter and/or an intent to defraud.

108.    Plaintiff and the Class reasonably relied on Defendants' misrepresentations insofar as they would not have purchased the Products manufactured and sold by Defendants had the truth about Defendants' representations or would have purchased them at a lower price elsewhere.

109.    As a direct and proximate cause of Defendants' fraudulent representations and concealment, Plaintiff and the Class suffered damages in an amount to be proven at trial.

110.    As a result of Defendants' willful and malicious conduct, punitive damages are warranted.

## COUNT VI
### Unjust Enrichment
### (In the Alternative to Count III and on Behalf of the Class)

111.    Plaintiff repeats and re-alleges the allegations above as if set forth herein.

112.    At all times relevant hereto, Lenovo designed, manufactured, produced, promoted, marketed and sold the Products.

113.    Plaintiff and the other members of the Class conferred benefits on the Lenovo Defendants by purchasing the Products based on Defendants' representations of List Price or Estimated Value.

114.    Lenovo received the benefits to the detriment of Plaintiff and the other members of the Class because Plaintiff and the other members of the Class purchased deliberately overvalued Products that are not what they bargained for and that did not provide the promised quality or value as advertised by Defendants.

115.    Defendants have been unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiff and the other members of the Class. Retention of those monies under these circumstances is unjust and inequitable because Defendants' representations regarding the quality or value of the Products was misleading to consumers, which caused injuries to Plaintiff and the other members of the Class, because they would have not purchased the Products had they known the true facts or would have purchased them for a lower price elsewhere.

116.    Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and the other members of the Class is unjust and inequitable, Defendants must pay restitution to Plaintiff and the other members of the Class for their unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated members of the Class, prays for relief and judgment, including entry of an order, as follows:

(a) Declaring that this action is properly maintained as a class action, certifying the proposed Class, appointing Plaintiff as Class Representative and appointing Plaintiff's counsel as Class Counsel;

(b) Directing that Defendants bear the costs of any notice sent to the Class;

(c)  Ordering Defendants to pay restitution to Plaintiff and the Class;

(d)  A jury trial and damages according to proof;

(e)  Awarding actual damages to Plaintiff and the Class;

(f)  Awarding Plaintiff and members of the Class statutory damages, as provided by the applicable state consumer protection statutes invoked above;

(g)  Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class;

(h)  Civil penalties, prejudgment interest and punitive damages as permitted by law; and

(i)  Ordering such other and further relief as the Court deems just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiff hereby demands a jury trial of the claims asserted in this Class Action Complaint.

Dated: June 17, 2022                              Respectfully submitted,

By:      /s/ Russell Busch
         Russell Busch (6329500)
         **MILBERG COLEMAN BRYSON**
         **PHILLIPS GROSSMAN, PLLC**
         405 E 50th Street
         New York, NY 10022
         Tel: (630) 796-0903
         rbusch@milberg.com

         **MILBERG COLEMAN BRYSON**
         **PHILLIPS GROSSMAN, PLLC**
         Nick Suciu III*
         6905 Telegraph Road, Suite 115
         Bloomfield Hills, MI 48301
         Tel: (313) 303-3472
         nsuciu@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Trenton R. Kashima*
401 West C St., Suite 1760
San Diego, CA 92101
Tel: (714) 651-8845
tkashima@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Zoe T. Aaron
405 E 50th Street
New York, NY 10022
Tel: (630) 796-0903
zaaron@milberg.com

*Pro Hac Vice* application forthcoming

*Attorneys for Plaintiff and the Proposed
Class*