**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3/28/2023

**ANTHONY HAM,** *individually and on behalf of all others similarly situated*,

**Plaintiff,**

-against-

**LENOVO (UNITED STATES) INC.,**

**Defendant.**

**22-cv-05131 (ALC)**

<u>**OPINION AND ORDER**</u>

**ANDREW L. CARTER, United States District Judge:**

Plaintiff Anthony Ham ("Plaintiff") brings this putative class action[1] suit against Defendant Lenovo (US) Inc. ("Lenovo" or Defendant) [2] alleging (1) deceptive acts or practices in violation of the New York Deceptive Practice Act, N.Y.G.B.L. § 349 *et seq.*; (2) false advertising in violation New York Deceptive Practice Act, N.Y.G.B.L. § 350 *et seq.*; (3) breach of express warranty; (4) breach of implied warranty; (5) fraud; and (6) unjust enrichment. Defendant moved to dismiss Plaintiff's complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the Court finds that Plaintiff lacks standing to seek injunctive relief. The Court dismisses Plaintiff's other causes of action for failure to state a claim. Defendant's Motion is **GRANTED**.

---

[1] Plaintiff defines the Class as all persons in the United States who purchased any of the Products on Defendants' website, Lenovo.com, for which Defendants advertised both a List Price or Estimated Value and a Sale Price.

[2] Lenovo Group Ltd. ("LGL") has been dismissed. *See* ECF No. 16. The Clerk of the Court is respectfully directed to change the caption of this case to remove LGL.

# BACKGROUND

## I.      Procedural Background

Plaintiff Anthony Ham ("Plaintiff") commenced this action on June 17, 2022. ECF No. 1. The Complaint alleges, *inter alia*, that the Defendant violated N.Y.G.B.L. §§ 349 and 350. Defendant filed its motion to dismiss, (the "Motion"), pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) on August 18, 2022. ECF Nos. 21-22. Defendant also filed supplementary declarations. ECF Nos. 23-24. Plaintiff filed his opposition on September 15, 2022 ("Opp."). ECF No. 25. Defendant's reply memorandum was filed on October 17, 2022 ("Reply"), ECF No. 28, alongside a third declaration. ECF No 29. On February 23, 2023 Defendant filed a Notice of Supplemental Authority. ECF No. 30.[3] The motion is deemed fully briefed. After careful consideration, Defendant's motion to dismiss is **GRANTED**.

## II.     Factual Background

The following facts are taken from the allegations contained in Plaintiff's Complaint, which are presumed to be true for purposes of this motion to dismiss.

Plaintiff Ham is a resident of Champaign, Illinois and is a citizen of Illinois. Compl. ¶ 13. Defendant Lenovo is a Delaware corporation with its headquarters in Morrisville, North Carolina. *Id*. ¶ 17. The Defendant designs, manufactures advertises, and sells the "Products" at issue.[4] Lenovo is the single largest manufacturer of notebook computers in the world and one of the largest

---

[3] On February 24, 2023, Plaintiff filed a response to the Defendant's Notice of Supplemental Authority. ECF No. 31. On March 7, 2023 Defendant filed a premotion conference letter requesting leave to file a motion to strike the Plaintiff's response in its entirety. ECF No. 32. To date, Plaintiff has not responded to Defendant's letter. Plaintiff's response improperly responds to arguments raised by Defendant in its Reply brief and it therefore constitutes an impermissible sur-reply. The Court notes that Plaintiff did not request permission to file a sur-reply in accordance with this Court's Individual Practices. Therefore, the Court will not consider the Plaintiff's response at ECF No. 31. Defendant's premotion request is DENIED.

[4] Products is defined as Defendant's ThinkPad, ThinkBook, IdeaPad, Yoga, Legion, Lenovo, and Chromebook laptops, its ThinkCentre, IdeaCentre, Legion, Yoga, and ThinkStation desktops, its ThinkPad and ThinkStation workstations, its Lenovo tablets, and its ThinkVision and Lenovo monitors. Compl. ¶ 3.

desktop computer manufacturers. *Id*. ¶ 2. Lenovo operates a retail website, Lenovo.com, ("the Website") where it offers its laptop computers, desktop computers, and computer peripherals for sale directly to consumers. *Id*. ¶ 3.

Plaintiff asserts that Defendant deceives its customers through a "years-long policy of fabricating fictitious valuations for its laptop and desktop computers, falsely representing those valuations as the "estimated value" of their products, and then advertising purported discounts based on those fictitious valuations." *Id*. ¶ 1. The Plaintiff alleges that Lenovo "fabricates a fictious original price," sometimes called the "Web Price" or an "explicit representation of a particular value or level of quality," referred to as the "Estimated Value", "promises users substantial 'savings' with a significant discount off the fictitious price," and "presents users with a comparatively lower price to pay at the point of sale ('Sale Price')." *Id*. ¶  5. Plaintiff alleges that these representations "induce reasonable consumers to believe that the "Web Price"[5] or "Estimated Value" represents either the product's normal price on Defendants' website and/or the prevailing price in the market" and that it "also induce consumers to believe the List Price or Estimated Value is the true value of the PC being advertised and that, therefore, the quality and value of the Product, in whole, is commensurate with the List Price or Estimated Value." *Id*. ¶¶ 6-7.

Plaintiff alleges that these advertised List Prices and purported Discounts are "completely

---

[5]The Complaint alleges that the "Web Price" is a "fictitious original price," compl. ¶ 5, but the Complaint does not allege a Lenovo Website definition for "Web Price." The Complaint groups the terms "Web Price" and "Estimated Value" together and refers to them as a "List Price." The Complaint defines the List Price as the "fictious, original price" listed next to a Product. *Id*. ¶ 5. Plaintiff alleges that the current List Price on the Website is labelled as the "Estimated Value." *Id*. ¶ 6. The Complaint defines "Estimated value" as an "explicit representation of a particular value or level of quality" listed next to a Product on Lenovo.com. *Id*. The Lenovo Website defines Estimated Value as the following: "Lenovo's estimate of product value based on industry data, including the prices at which Lenovo and/or third-party retailers and e-tailers have offered or valued the same or comparable products. Third-party data may not be based on actual sales." *Id*.

illusory or grossly overstated," that Defendant "fabricate[s]  a number using undisclosed formulas bearing no resemblance to the market, and they use the fictitious List Price or Estimated Value to create the appearance of a significant price discrepancy and the impression of significantly better quality, higher value Products and greater savings for their customers." *Id*. ¶¶ 9-10.

In support of these allegations, Plaintiff points to his own experience purchasing a Product, *id*. ¶¶ 37-54, and the Complaint includes descriptions of the Website alongside screengrabs of the checkout process on the Website. *Id*. ¶¶ 23-36.

## A. Alleged Misrepresentations to Consumers

Plaintiff alleges that when a consumer visits Lenovo.com to shop for PCs, they are immediately greeted with a banner claiming savings on current sales. *Id*. ¶ 23. The Lenovo website also highlights some of the company's flagship PC models with significant purported savings. *Id*. ¶ 25. For example, on June 7, 2022, Lenovo represented on its website that  the ThinkPad X1 Carb Gen 9 (14-inch Intel) Laptop had an Estimated Value of $2,469.00 but a current Sale Price starting at $1,401.60, and more than $1,000 in savings. *Id*. ¶ 25. The Website includes a "starting at" price because each model has various configurations with different specifications for CPU, RAM, hard drive capacity, and other factors. *Id*. ¶ 26. "Estimated Value" is defined on the Website as "Lenovo's estimate of product value **based on industry data, including the prices at which Lenovo and/or third-party retailers and e-tailers have offered or valued the same or comparable products**. Third-party data may not be based on actual sales." *Id*. ¶ 6, 27. (emphasis in complaint). Plaintiff asserts that this Estimated Value is an express warranty and leaves reasonable consumers "with the impression that these models offer quality and value commensurate with their high Estimated Values." *Id*. ¶ 27.

Plaintiff explains that personal computers are "complex" products with more than a dozen relevant components and that for each component, there are multiple metrics that gauge the quality and value. *Id*. ¶ 28. Because these products are complex and because the average consumer cannot take into account the myriad variables that determine the quality and value of computers, Plaintiff asserts that consumers necessarily rely on representations like the Estimated Value. *Id*.

For example, Plaintiff explains that when the Defendant represents to consumers that a particular configuration of its ThinkPad X1 Carbon PC has an estimated value of $3,589, consumers "reasonably believe that all of the components and the boundless specifications thereof, taken together comprise a product with quality and value commensurate with a $3,589 computer." *Id*. ¶ 29. However, Plaintiff claims that the Products' Estimated Values are completely unrepresentative of those Products' quality and value as compared to similar computers and that the Estimated Values don't have any relationship whatsoever with the actual sales price of *that same model* on the Lenovo.com website or at any other retailer. *Id*. ¶ 30. Ultimately, Plaintiff contends that the Defendant's policy is applied uniformly "to virtually all of its Products." *Id*. ¶ 33-34.

Plaintiff points to three examples to explain this. First, the Complaint points to the "X1 Carbon" with an "Estimated Value" of $2,469.00, "with an Intel i7-1185G7 Processor, 32GB of LPDDR4X memory, and a 512GB solid state hard drive." *Id*. ¶ 31. Plaintiff asserts that an "X1 Carbon" with the same specifications can be purchased for $1,159.99 on Lenovo's amazon.com store. *Id*. This is $1,300 less than the Estimated Value on Lenovo's website and $300 less than the Sale Price on Lenovo's website. *Id*. Thus, Plaintiff explains, a consumer who "reasonably trusts Lenovo's false representation would be led to believe they were receiving a laptop of quality approximating $987 discount when, in reality, they are receiving a laptop of far lesser quality and

value at a $300 premium over the same or comparable models sold elsewhere." *Id*. ¶ 32. Second, Plaintiff points to the "ThinkPad T15 Gen 2 Intel" PC with an "i5 CPU, 8 GB of RAM, and a 256 solid state hard drive," which has an "Estimated Value" of $2,190.00 on Lenovo.com and a Sale Price of $1,313.40 with $875.60 in purported "savings." *Id*. ¶ 33. The "same computer with twice the hard drive capacity and otherwise identical specifications" sells for $1,279.00 on Amazon. *Id*. Third, the Plaintiff explains that the "Lenovo Yoga 6" is a "New Arrival" on Lenovo.com with no prior sales history whatsoever but yet these brand-new Yoga 6 configurations all have "Estimated Values" hundreds of dollars above Lenovo's asking price. *Id*.

### B.  Plaintiff Ham's Purchase

Plaintiff Anthony Ham purchased one of the Products from Lenovo's website. *Id* ¶ 37. In June 2020 when Plaintiff visited Lenovo.com, the site prominently advertised "All Think on Sale!" and promised that consumers could "[s]ave up to 65% on ThinkPad laptops" with several flagship Lenovo laptops purportedly Discounted below the banner. *Id*. ¶ 38.

One June 17, 2020, Plaintiff purchased a "T495 (14') AMD 3700U with 8GB of RAM and a 256GB capacity solid state hard drive" (the "T495" or the "Laptop") on Lenovo.com for a Sale Price of $969. *Id*. ¶ 39. When Plaintiff purchased the Laptop, the computer's product page advertised a "Web Price," which the page suggested was the original price or actual value of the product, a substantially lower Sale Price of $969, and significant purported "Savings."[6] *Id*. Around the time Plaintiff purchased the T495, Lenovo advertised the Laptop at a Sale Price of $1,037.40 supposedly discounted from a substantially higher List Price of $1,729.00. *Id*. ¶ 40. Defendant highlighted a supposed savings of $691.60 in the checkout process. *Id*.

---

[6] The Complaint defines this as the purported difference between the Web Price and the Sale Price. *Id*.

Despite this purported Web Price, Plaintiff asserts that the actual price offered for the Laptop was not at any time that price displayed on Lenovo's website, nor was this Web Price ever the prevailing market price for the Laptop. *Id*. ¶ 41.

Plaintiff asserts that the only time the Laptop was not offered with a purported discount was in June 2019 when it was offered at $1,209. *Id*. ¶ 42. In July of 2019, the T495 Laptop was advertised with a Sale Price of $904 and an advertised Savings of $304. *Id*. ¶ 43. In August 2019, the Laptop's Web Price increased to $1,729.00 and its Sale Price increased to $1,037.92. *Id*. ¶ 44. Although Lenovo had increased the T495's Sale Price by $133, it now advertised a purported Savings of $691.08. *Id*. Plaintiff asserts that each archived version of the Laptop's web page throughout the 2-year period the T495 was sold had a different banner accompanying the purported discount, promising significant savings. *Id*. ¶ 45.

Additionally, at the time of Plaintiff's purchase, Plaintiff asserts that no other retailer selling this configuration of the Laptop sold the T495 Laptop at the Web Price of $1,729.00 and that at the time of Plaintiff's purchase, models substantially similar to Plaintiff's T495 were available for a price lower than Lenovo's Sale Price. *Id*. ¶ 46.

Plaintiff asserts that in in July 2020 a "comparable configuration of Lenovo's ThinkPad T495s, with a 3700U AMD process, 8GB of RAM, and a 256GB solid state hard drive ("T495s"), was offered for sale (direct from Lenovo) on eBay for $749.99." *Id*. ¶ 47. Plaintiff alleges that the T495s is a lighter and more portable version of the T495 Laptop and that "comparable configurations of the T495s are typically sold at a $100 premium over the standard T495 configurations." *Id*. Plaintiff additionally explains that he could have also purchased competitors' laptops with comparable or better hardware configurations for a lesser price. *Id*. ¶ 50. For example, in June 2020 when Plaintiff purchased his T495, "an ASUS ZenBook 14 3700U—a laptop in the

same segment as Plaintiff's T495—with twice the hard drive capacity was offered for as low as $900.00" and a " Dell Inspiron 5485 3700u with the same processor, same RAM, and twice the hard drive capacity was offered for as low as $639.99." *Id*. However, Plaintiff asserts that he did not have the opportunity to shop around and compare these and other models because he was induced by Defendants' misrepresentations to act quickly on Defendants' "illusory T495 Discount and grossly inflated valuation." *Id*.

Plaintiff asserts he "rel[ied] on the company's inflated valuations and illusory discounts," *id*. ¶ 37, because the Defendant misled the Plaintiff into believing that the fictious list price stated on the Lenovo website was the actual, prevailing market price for the Laptop and that he was receiving a substantial discount from the list price. *Id*. ¶ 51. Plaintiff also claims that the Defendant misled him into believing that the discount offered was only for a limited time and thus motivating him to act more quickly and spend less time comparing prices and models elsewhere." *Id*. Plaintiff then explains that had he known that "the Product was actually worth significantly less than Lenovo represented and that the purported Savings touted by Defendant were entirely illusory," then he would not have purchased the Laptop from Lenovo.com. *Id*. ¶ 53.

## C. Defendant's Extrinsic Evidence and Factual Allegations in Support of its 12(b)(1) Motion to Dismiss

Defendant submits three declarations and numerous exhibits in connection with its Motion to Dismiss challenging Plaintiff's factual allegations concerning the value of the Laptop for standing. *See* ECF Nos. 23, 24, 29.

First, Defendant argues that the Plaintiff does not allege any defects in the performance of his Laptop and Defendant factually alleges, through the Declaration of Carlo Savino, that Plaintiff submitted a 5-star review on the Website 11 days after Plaintiff placed his order. *See* Decl. of Carlo Savino, ("Savino Decl."), ECF No. 24 ¶¶ 7-9.

Second, Defendant targets examples of price comparisons cited in the Complaint. As explained previously, Plaintiff alleges that in July 2020 a "comparable" configuration of Lenovo's ThinkPad T495s was offered for sale (direct from Lenovo) on eBay for $749.99. Compl. ¶ 47. Defendant alleges that this particular device was not available for sale at the time of Plaintiff's purchase on either Lenovo's Website or eBay's marketplace, the price was set by eBay and not Lenovo, and that the eBay T495s is one of the last builds of an older generation model that Lenovo offered on "closeout" because Lenovo sought to divest the remaining inventory, which was one of the last builds of that generation T495s, quickly. Mot. at 11; Savino Decl. ¶¶ 10-13.

Additionally, Defendant alleges that Plaintiff's assertions concerning the X1 Carbon and the ThinkPad T15 Gen 2 are untrue. Defendant alleges that the Plaintiff falsely identifies that they are from "Lenovo's own amazon.com," compl. ¶ 31, Lenovo actually does not sell products directly on Amazon, Lenovo products for sale on amazon.com are sold by third-parties and they have no control over the prices set by those third-parties. Mot. at 11; Savino Decl. ¶ 14; Ex. 8 to Declaration of Colleen M. Gulliver ("Gulliver Decl."), ECF No. 23-8 at 1; Ex. 9 to Gulliver Decl., ECF No. 23-9 at 1. Additionally, Defendant alleges that Plaintiff's comparisons "fail because they are materially different." Mot. at 12. As to the ThinkPad T15 Gen 2 model available on Amazon, Defendant alleges that it was being sold after the "seal was opened," that such item should be considered a "used product," and that Lenovo would not charge that same amount for a used or "open box" product as it would for a new product. Mot. at 12; Savino Decl. ¶ 16. Defendant alleges that the X1 Carbon listed on Amazon does not have the same specifications as the model listed on Lenovo's website. Mot. at 12. Rather, Defendant alleges that that it "has an earlier generation processor, one-quarter of the RAM memory, and one-half of the hard drive capacity." Mot. at 12-13; Savino Decl. ¶ 17.

9

**LEGAL STANDARD**

## I.       Rule 12(b)(1) Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

In reviewing a motion to dismiss under Rule 12(b)(1), a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and internal quotation marks omitted). Rather, "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). Courts "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [the Court] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).

A "defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (citations omitted). "In opposition to such a motion, the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Id.* (quoting *Exchange National Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1131 (2d Cir.1976). However, the plaintiffs are entitled to rely on the allegations in the Pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing. *Id.* "If the extrinsic evidence presented by the defendant

is material and controverted, the district court will need to make findings of fact in aid of its decision as to standing." *Id.*

## II.     Rule 12(b)(6) Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, the Court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Claims should be dismissed when a plaintiff has not pleaded enough facts that "plausibly give rise to an entitlement for relief." *Id.* at 679. A claim is plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). While not akin to a "probability requirement," the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Accordingly, where a plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

## DISCUSSION

Plaintiff brings claims for violations of N.Y.G.B.L. § 349 and N.Y.G.B.L. § 350, breach of express warranty, breach of implied warranty, fraud, and unjust enrichment against Defendant

Lenovo. Defendant asserts the Plaintiff lacks Article III standing to bring this action and that the Complaint fails to state a claim for upon which relief can be granted. Defendant argues that Plaintiff's allegations fail to plausibly allege that he suffered an injury caused by Lenovo, thereby defeating his claims under the N.Y.G.B.L. and his claims for breach of warranty and fraud. Defendant additionally argues that Plaintiff's warranty claims also fail because (a) Lenovo's Limited Warranty bars the claims; (b) Lenovo did not make a false affirmation of fact; (c) Plaintiff did not provide adequate pre-suit notice; and (d) the laptop at issue was merchantable. Furthermore, Defendant contends that Plaintiff's fraud claim also fails because Plaintiff has not pled fraudulent intent. Finally, Defendant argues that Plaintiff fails to adequately plead that Lenovo was unjustly enriched.

Defendant seeks to dismiss Plaintiff's Complaint for lack of standing—that is, for Plaintiff's failure to allege an injury-in-fact—and for failure to state a claim. Accordingly, the Court must first address Defendant's challenge to subject matter jurisdiction and will only analyze Defendant's remaining arguments if the Court has subject matter jurisdiction over this case. *See De Medicis v. Ally Bank*, No. 21 Civ. 6799 (NSR), 2022 WL 3043669, at *4 (S.D.N.Y. Aug. 2, 2022) (citing *Brokamp v. James*, 573 F.Supp.3d 696, 703 (N.D.N.Y. 2022)).

The Court finds that, at this juncture, the Plaintiff has adequately alleged an injury-in-fact for purposes of Article III standing.

## I.    Standing

Defendant contends that Plaintiff fails to establish an injury-in-fact because he has not shown that he *personally suffered* some actual or threatened injury due to Defendant's conduct. Defendant also argues that Plaintiff lacks standing to pursue claims for individuals who did not purchase the T495 laptop or for those who saw an "Estimated Value" when purchasing a product

12

on the Website, and that Plaintiff lacks standing to seek injunctive relief because he does not allege a likelihood of future injury.

A party must have Article III standing—"the personal interest that must exist at the commencement of the litigation." *Carter*, 822 F.3d 47, 55 (2d Cir. 2016) (citing *Davis v. FEC*, 554 U.S. 724, 732 (2008)). A standing issue may be raised at any stage in a litigation, *see id.* (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006)), and "the party invoking federal jurisdiction bears the burden of establishing the elements." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Under the U.S. Constitution, the jurisdiction of the federal courts is limited to "cases" and "controversies." U.S. Const., Art. III, § 2. "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 156 (2014) (*quoting Lujan*, 504 U.S. at 560)).

There are three Article III standing requirements: (1) the plaintiff must have "suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *John v. Whole Foods Market Group, Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (citing *Lujan*, 504 U.S. at 560–61). An injury-in-fact "consists of an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *De Medicis*, 2022 WL 3043669, at *4 (citing *John*, 858 F.3d at 736).

Plaintiffs must allege "injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, —— U.S. ——, 141 S.Ct. 2190, 2203, (2021). The Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that

person to sue to vindicate that right.'" *Id.* at 2204-07 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*

### A. Injury-in-fact

Here, Defendant makes a fact-based Rule 12(b)(1) challenge in its motion to dismiss, relying on extrinsic evidence, including declarations and exhibits attached to these declarations. The Court must first decide if the affidavits submitted by Defendant "reveal the existence of factual problems in the assertion of jurisdiction." *Carter*, 822 F.3d at 57 (citations omitted). If they do, then the Plaintiff "will need to come forward with evidence of their own to controvert that presented by defendant." *Id.* If the evidence proffered by the Defendant is "immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing," then the Court need only rely on the allegations in Plaintiff's Complaint. *Id.* "If the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision as to standing." *Id.*

In his opposition, Plaintiff asserts two theories of injury. Plaintiff's first theory of injury is that Lenovo made clear representations regarding the actual quality and value of his Product, those representations induced Plaintiff to purchase the Product from Defendant's website,  and the Product was not of the quality or value represented. Opp. at 4, 13. Plaintiff's second theory of injury is that Defendant's fictitious pricing scheme induced him to forgo better deals on identical, similar, or even better products for a similar or lower price. *Id.* at 12, 13.  Plaintiff's theories appear to rely on the allegation that he was induced to buy the Laptop because of the prospect of the purported savings and Defendant's misrepresentation of the  actual quality and value of the Laptop.

14

In this instance, Defendant's fact-based challenge relies on Defendant's characterization that Plaintiff's injury is solely about the Laptop being worth less than what he paid because Lenovo offered comparable computers for less on Amazon and eBay. Defendant asserts that its fact-based challenge goes to Plaintiff's assertion of injury-in-fact and Article III standing. As explained previously, the Defendant's submissions assert that the Plaintiff's factual allegations related to price and model comparisons are untrue and that Plaintiff left a 5-star review of the Laptop on the Defendant's website. The Court will address each factual allegation in turn.

First, Defendant factually alleges, through the Declaration of Carlo Savino, that Plaintiff submitted a 5-star review on the Website 11 days after Plaintiff placed his order. ECF No. 24, Savino Decl. ¶ 9, ECF No. 29, Reply Savino Decl. ¶¶ 4-5. The Court will not consider this evidence because it does not reveal the existence of a factual problem in the assertion of jurisdiction. Plaintiff's allegations pleading injury are not contradicted by an alleged review made 11 days after the order because Plaintiff focuses his theory of injury on being induced to purchase the Laptop on account of Defendant's misrepresentations and not on an alleged defect uncovered within two weeks of Plaintiff's order.

Second, Defendant alleges that the T495s model was not available for sale on eBay at the time of Plaintiff's purchase. Mot. at 11; Savino Decl. ¶¶ 10-13. Additionally, Defendant alleges that the T495s model is not comparable to Plaintiff's Laptop because it is a different model and a different generation from Plaintiff's Laptop. The Court will not consider this evidence at this juncture. Defendant's allegations do not create a factual problem in the assertion of jurisdiction because Plaintiff's injury relates to being induced by the alleged fictitious prices and not simply on a comparison of prices between the T495 Laptop and the T495s. Additionally, it remains unclear to the Court how the Defendant can both allege that the T495s is an "older generation

model" and that it "was not available for sale at the time of Plaintiff's purchase." Savino Decl. ¶¶ 11, 13. The differences in these two models, as Plaintiff points out, includes subtle differences and Plaintiff alleges that the two laptops were identical on numerous key specifications. Compl. ¶ 47. Defendant attempts to muddy the waters here with their alleged jurisdictional facts, but the Court will not consider these factual allegations on a motion to dismiss.

Third, Defendant's factual contention concerning the price of the X1 Carbon and the ThinkPad T15 Gen 2 will also not be considered at this point in litigation. Plaintiff alleges that his purchased Laptop is of lesser value than represented by Defendant in their Web Price. He alleges specifically that the Lenovo Website did not offer the Laptop at or even near the supposed Web Price of $1,729.00 at any time prior to or after Plaintiff's purchase, nor did any retailer selling this configuration. *Id*. ¶ 46. Plaintiff's theory of injury does not necessarily rely on Plaintiff's assertions about the ThinkPad T15 Gen 2 or the X1 Carbon. And even if the Court were to find that, for example, the ThinkPad T15 Gen 2 sold on Amazon was a "used product" and that therefore Lenovo would sell it at a lower price, the Court can make no finding as to what an appropriate price for a used product would be and how much it would be discounted from the prevailing price for a new PC.

Therefore, as to Defendant's immaterial allegations, the Plaintiff is entitled to rely on the allegations of the Complaint in opposition to the motion to dismiss for lack of standing. *See Carter*, 822 F.3d at 58.

Plaintiff has pleaded that Lenovo made clear representations regarding the actual quality of value of his Laptop through the listed Web Price, that the Plaintiff was induced to purchase the Laptop because he believed that the Web Price stated on the Lenovo website was the actual, prevailing market price for the Laptop and that he was receiving a substantial discount from the

16

Web Price, and that this fictitious pricing scheme induced him to forgo better deals on identical, similar, or even better products for a similar or lower price. "Such an allegation that a plaintiff would not have purchased a product or would not have paid the same amount comfortably satisfies injury-in-fact prong of Article III standing." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021); *see also DaCorta v. AM Retail Grp., Inc.*, No. 16-CV-01748 (NSR), 2018 WL 557909, at *6 (S.D.N.Y. Jan. 23, 2018) ("The allegation that Plaintiff would not have made this purchase or would not have paid the amount she did [] is sufficient for Article III injury"). Therefore, Plaintiff has adequately alleged an injury-in-fact for purposes of Article III standing.

## B. Plaintiff's Standing to Assert Claims for Products other than Laptops and for Purchasers who saw the Estimated Value Statement

Defendant argues that even if Plaintiff has Article III standing, he does not have standing to assert claims on behalf of (1) purchasers who purchased products other than a model T495 or (2) any purchasers who purchased when the "Estimated Value statement appeared on the Website. Mot. at 13.

In *DiMuro v. Clinique Labs.*, LLC, 572 Fed. App'x 27, 29 (2d Cir. 2014),  an unpublished decision of the Second Circuit, the Court dealt with a case where plaintiffs asserted class action claims "arising from Defendants' marketing of seven different cosmetic products sold under the 'Repairwear' product line" despite having only purchased three of them. *Dimuro*, 572 Fed. App'x at 29–30. The Second Circuit affirmed the district court's holding that plaintiffs lacked standing to assert claims regarding the four products they had not purchased. Those products had different ingredients, and defendants made different advertising claims for each. Thus, unique evidence would be required to prove that the different advertising statements made for those products were false and misleading. *Id*. at 29. Accordingly, the Second Circuit affirmed dismissal on the ground

17

that it could not "say that claims brought by a purchaser of one product would raise a set of concerns nearly identical to that of a purchaser of another Repairwear product." *Id*. As one court in this District explained, the "implicit lesson in *DiMuro* is that . . . plaintiffs—and their counsel" do not have "free reign to bring lawsuits regarding products they never purchased." *Hart v. BHH, LLC*, No. 15CV4804, 2016 WL 2642228, at *4 (S.D.N.Y. May 5, 2016).

Citing to *DiMuro*, Defendant argues that Plaintiff lacks standing to assert claims for the unpurchased products because these products are all "distinct" which will require "unique evidence" to demonstrate both that Lenovo made any misstatement and that any class member was injured by such a misstatement. Mot. at 14. Additionally, Defendant argues that Plaintiff cannot bring claims on behalf of purchasers who were exposed to an "Estimated Value" statement because the Complaint admits that the Website did not have that language when Plaintiff made his purchase, and instead, Lenovo featured a "Web Price" statement. Defendant asserts these concepts are distinct and thus unique evidence will be necessary regarding the meaning of each of these phrases and whether they were used in a deceptive manner. Plaintiff argues that while the Products are complex, they are "substantially the same in every relevant way" and Defendant's scheme is uniformly applied to the proposed Class.

The Court agrees that the alleged misrepresentation is nearly identical as to all the Products. Defendant's alleged scheme includes an original list price, represented as either the Web Price or Estimated Value, a lower price displayed as the Sale Price and purported "savings" were displayed to the consumers. Compl. ¶¶ 31, 33, 43, 44. The Court also agrees that the laptop Products are largely similar; therefore, at this stage of the litigation, the Court will deny Defendant's motion on this basis.[7] *See Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 563 (S.D.N.Y. 2016)

---

[7] As for the non-laptop products, the Court agrees these products are not substantially the same and Plaintiff does not have standing to bring claims as to these unpurchased products.

("Although the unpurchased products may contain different ingredients compared to the purchased products, the Court finds that the Amended Complaint adequately alleges that the misrepresentation claimed with respect to the unpurchased products is sufficiently similar to the misrepresentation for the purchased products."); *Rivera v. S.C. Johnson & Son, Inc.*, No. 20-CV-3588 (RA), 2021 WL 4392300, at *9 (S.D.N.Y. Sept. 24, 2021) ("Following *DiMuro*, a number of district courts within the Circuit have concluded that putative class-action plaintiffs have standing at the pleading stage to assert consumer-protection claims relating to products they themselves did not purchase when two conditions are met: 1) the products are substantially similar to the products that they did purchase; and 2) the alleged misrepresentation is the same").

### C. Plaintiff's Standing for Injunctive Relief

Defendant contends that Plaintiff lacks standing to seek injunctive relief because he has no risk of future harm. Plaintiff asserts that injunctive relief is the "only way to stop Lenovo's widespread, years-long, and ongoing fraudulent practice and therefore the only way to uphold and avoid the denigration of New York consumer protection law." Opp. at 19.

To satisfy the injury requirement when seeking injunctive relief, a plaintiff cannot rely on a past injury alone because "'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *City of Los Angeles v. Lyons*, 461 U.S. at 102 (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)). Rather, the plaintiff must "demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon*, 834 F.3d 220, 239 (2d Cir. 2016). "[A]llegations of possible future injury are not sufficient." *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) (internal quotations omitted). "There is no exception to demonstrating future injury when the plaintiff is pursuing a class action." *Buonasera v. Honest*

*Co., Inc.*, 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016) (citing *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 n.20, (1976)); *see also Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 309 (S.D.N.Y. 2017), *aff'd sub nom. Kommer v. Bayer Consumer Health, a division of Bayer AG*, 710 F. App'x 43 (2d Cir. 2018) (dismissing injunctive relief).

Here, Plaintiff alleges that he would not have purchased the Laptop if he knew the alleged truth regarding the discount. *See* Compl. ¶ 53. Plaintiff has not pleaded a risk of future injury.[8] Therefore, Plaintiff does not have individual standing to seek injunctive relief. Accordingly, he does not have standing on behalf of the class to seek injunctive relief, and the Court grants Defendant's motion on this ground and dismisses Plaintiff's request for injunctive relief for lack of subject matter jurisdiction pursuant to Rule 12 (b)(1).

## II.      Plaintiff's N.Y.G.B.L §§ 349 and 350 Claims

Plaintiff alleges that the Defendant violated N.Y.G.B.L § 349 because it "engaged in unfair and/or deceptive conduct by making the representations that the Products were of a far higher quality and greater value than they actually were, based on fictitious List Prices or Estimated Values," compl. ¶ 68, and because the Defendant's advertising and the Products' fictitious pricing or valuation induced Plaintiff and the Class to purchase Lenovo's Products. *Id.* ¶ 73.

The New York General Business Law prohibits "[d]eceptive acts or practices" and "false advertising" "in the conduct of any business, trade or commerce or in the furnishing of any

---

[8] In his opposition to Defendant's Motion, Plaintiff argues that he cannot currently trust the Lenovo Website and cannot currently purchase Products from the website but that if Lenovo were enjoined from its fraudulent practice, then he, the proposed class, and consumers broadly could rely on the Defendant's representation of the Products' value and quality and be able to shop on the Website. Opp. at 19. Plaintiff does not allege this alternative theory in his Complaint and therefore the Court will not consider these new allegations.

service." N.Y.G.B.L §§ 349, 350. "False advertising" includes "advertising, including labeling, of a commodity, ... if [it] is misleading in a material respect." *Id.* § 350-a(1).

"To state a claim under either section, a plaintiff must plead facts to show that (1) the challenged transaction was consumer-oriented; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct." *Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 461 (S.D.N.Y. 2020) (internal citations and quotations omitted). Claims under GBL §§ 350 and 350-a "must meet all of the same elements as a claim under GBL § 349." *Wurtzburger v. Ky. Fried Chicken*, No. 16-CV-08186 (NSR), 2017 WL 6416296, at *2 (S.D.N.Y. Dec. 13, 2017) (citing *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1, (2002)).

 "Although the Court has concluded that Plaintiff adequately pleaded an injury-in-fact for purposes of Article III standing, whether Plaintiff has properly alleged an injury for his N.Y. G.B.L. §§ 349 and 350 claims requires a separate inquiry." *Colpitts*, 527 F. Supp. 3d at 576; *see also Ross v. Bank of Am., N.A.(USA)*, 524 F.3d 217, 222 (2d Cir. 2008) ("Injury in fact is a low threshold, which we have held need not be capable of sustaining a valid cause of action"). Defendant argues that Plaintiff has failed to establish an injury under New York General Business Law Sections 349 and 350.

To plead an injury pursuant to either §§ 349 or 350, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015). "In the consumer goods context, an allegation of a defendant's deception alone does not suffice to plead injury, because a plaintiff may have received the benefit of the bargain despite the alleged misrepresentation." *Colpitts*, 527 F. Supp. 3d at 576 (S.D.N.Y. 2021). Instead, a plaintiff "must plead something more

than the defendant's deception; for example, that the price of the product was inflated as a result of defendant's deception or that use of the product adversely affected plaintiff's health." *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 676-77 (S.D.N.Y. 2012) (cleaned up). Additionally, courts have routinely "rejected misrepresentation claims based solely on a theory that the defendant's misrepresentation deprived the plaintiff of an opportunity to make a better-informed choice whether to buy the product." *Robey v. PVH Corp.*, 495 F. Supp. 3d 311, 321 (S.D.N.Y. 2020) (collecting cases under various consumer protection statutes) (internal citations omitted); *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56, 720 N.E.2d 892 (1999) (finding that a theory that "defendants' deception prevented [plaintiffs] from making free and informed choices as consumers" is "legally flawed" because it characterized the "deception as injury.")

Plaintiff argues that his theory of injury is not "based solely on a theory that defendant's misrepresentation deprived the plaintiff of an opportunity to make a better-informed choice." Opp. at 5 (quoting *Robey*, 495 F. Supp 3d at 321). Plaintiff asserts that "consumer electronics like laptop and desktop computers are a special category of goods too complex for consumers to evaluate holistically based on countless narrow specifications" and therefore consumers necessarily rely on representations made by the manufacturers and retailers of PCs and PC peripherals regarding their overall quality and value. Opp. at 5; Compl. ¶¶ 7-8.

Plaintiff relies on *Cannon v. Ashburn Corp.*, No. 16-cv-1452 (RMB)(AMD), 2016 WL 7130913 (D.N.J. Dec. 7, 2016) in support of his theories of injury. Defendants point primarily to *Robey*, 495 F. Supp. 3d 311, *Pittman v. Chick-Fil-A, Inc.*, No. 21 civ 8041 (VM), 2022 WL 2967586 (S.D.N.Y. July 27, 2022), and *DiCicco v. PVH Corp.*, No. 19 CIV. 11092 (ER), 2020 WL 5237250, (S.D.N.Y. Sept. 2, 2020), contending that courts in this District have held that deceptive list prices cannot serve as both act and injury. Opp. at 7-8; Reply at 2. For example, in

*Pittman*, the court held that plaintiff's contention that she "would not have made the purchase had she known" about the alleged deception "amounts to an allegation of deception as both act and injury, which is insufficient to plead a claim under Section 349." *Pittman*, 2022 WL 2967586 at *6.

In *Cannon*, the plaintiffs alleged that the defendant advertised fictional or inflated original prices for bottles of wine sold on its website in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* ("NJCFA"). *Cannon*, 2016 WL 7130913, at *1–2. The *Cannon* court found by a "slim margin" that plaintiffs alleged an "ascertainable loss" in the form of a loss of the benefit of the bargain under New Jersey law by alleging that the bottles of wine they received were less valuable than the bottles advertised. *Id*. at *7-8. In its decision, the *Cannon* court pointed out that wine is "unique" in that "customers rely on the original price as indicator of the market value of a wine." *DiCicco v. PVH Corp.*, No. 19 CIV. 11092 (ER), 2020 WL 5237250, at *7 (S.D.N.Y. Sept. 2, 2020) (citing *Cannon*, 2016 WL 7130913, at *8 n.5). The *Cannon* court also based its decision relying on the complaint's allegations as to the "actual values of the wines in question," which included independent reviews by "reputable wine magazines" as well as inquiries to the winemaker and winery. *Cannon*, 2016 WL 7130913 at *2, *8 n.5. Plaintiff argues that the Lenovo Products at issue are similarly "unique" and that customers shopping at Lenovo.com "rely on the origin[al] price as the indicator of the market value." Opp. at 8 (quoting *DiCicco*, 2020 WL 5237250 at *7. Plaintiff essentially asks this Court to extend the *Cannon* decision under New Jersey law to claims brought under the N.Y.G.B.L.

The Court notes that it is not bound by the *Cannon* decision but that other courts in this District have acknowledged this seemingly "unique" product carveout under New Jersey consumer protection law. *See Robey*, 495 F. Supp. 3d at 320–21 (acknowledging that the *Cannon* court

"noted that wines are 'unique' goods, that a wine bottle's original price related to its unique quality, and that the plaintiff alleged that the 'bottles they received were not the bottles promised to them'"); *DiCicco*, 2020 WL 5237250, at *7 ("the *Cannon* court expressly recognized that wine is 'unique,' as distinguished from articles of clothing, in that customers rely on the original price as indicator of the market value of a wine.").

Here, *Cannon* is distinguishable, and Plaintiff's reliance is misplaced. While the Court agrees that the Lenovo Products at issue are complex goods and that many consumers may rely on the original list price when making purchases, Plaintiff acknowledges that the Defendant disclosed the Products' specifications and configurations—which influence the value of the Products—to its consumers. *See* Compl. ¶ 28. Although Plaintiff describes these specifications as "overwhelming," customers are given the ability to judge the products' value for themselves—unlike the consumers of the wines at issue in *Cannon*. Finally, the Court reiterates that *Cannon* dealt with New Jersey law and not the N.Y.G.B.L. The Court respectfully declines to apply the *Cannon* court's decision under the NJCFA to this instant situation.

Here, Plaintiff's theories of injury rely on the allegation that he was induced to buy the Laptop because of the prospect of the purported savings and Defendant's misrepresentation of the actual quality and value of the Laptop. Opp. at 4, 13. However, "disappointed bargain-hunters do not suffer any actual injuries or damages simply because they did not get as good a deal as they expected. . . ." *DiCicco*, 2020 WL 5237250, at *7; *see also DaCorta v. Am. Retail Grp., Inc.*, No. 16 Civ. 1748 (NSR), 2018 WL 557909, at *7–8 (S.D.N.Y. Jan. 23, 2018). Additionally, the Plaintiff does not allege that the Laptop he received was worth less than the value he paid. *Pittman*, 2022 WL 2967586 at *5 (finding plaintiff failed to allege injury when the complaint did not allege the plaintiff received a service worth less than the value she paid). He only alleges it was worth

less than the purported Web Price, which he did not pay, and that he could have bought similar computers elsewhere. Plaintiff cannot rely on an injury being that the misrepresentation deprived him of an opportunity to make a better-informed choice. *See Small*, 94 N.Y.2d at 56.  While the Court is uncertain how the Defendant comes to this original list price, the fact that the Web Price is not directly tied to a past price on the Website does not in itself demonstrate that Plaintiff's Laptop is worth less than what Plaintiff paid for. Therefore, Plaintiff has failed to establish a cognizable injury and his N.Y.G.B.L. claims are dismissed for failure to state a claim.

### III.    Breach of Warranty Claims

Plaintiff additionally brings claims for breach of express warranty, compl. ¶¶ 86-93, and breach of implied warranty, *id*. ¶¶ 94-101.

A claim for breach of express warranty under New York law requires a plaintiff to allege an "'affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon.'" *Factory Assocs. & Exps., Inc. v. Lehigh Safety Shoes Co.*, 382 F. App'x 110, 112 (2d Cir. 2010) (quoting *Schimmenti v. Ply Gem Indus., Inc.*, 156 A.D.2d 658, 659, 549 N.Y.S.2d 152, 154 (1989)). To survive a motion to dismiss, a breach of express warranty claim must allege: "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014). "Generalized statements by a defendant, however, do not support an express warranty claim if they are such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely." *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2019) (quoting *Sitt v. Nature's Bounty, Inc.*, 15 Civ. 4199, 2016 WL 5372794, at

*15 (E.D.N.Y. Sept. 26, 2016)). Under New York law, a plaintiff must also give notice of the breach to the seller before he can recover under an express warranty claim. *See* N.Y. U.C.C. § 2-607(3)(a) ("[B]uyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach."). "The notice requirement applies to consumer fraud actions such as this one." *Colpitts*, 527 F. Supp. 3d at 589.

To state a claim for breach of implied warranty of merchantability, Plaintiff must plead that a merchant seller breached its "guarantee . . . that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection." *Wojcik v. Empire Forklift, Inc.*, 14 A.D.3d 63, 783 N.Y.S.2d 698, 700-01 (App. Div. 2004). "Liability for breach of warranty [of merchantability] depends on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners." *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, No. 03 Civ. 1851 (NGG), 2006 WL 2524187, at *7 (E.D.N.Y. Aug. 30, 2006) (alterations in original) (internal quotation marks and citation omitted).

Defendant argues that Plaintiff's warranty claims fail because (a) Lenovo's Limited Warranty bars the claims; (b) Lenovo did not make a false affirmation of fact; (c) Plaintiff did not provide adequate pre-suit notice; and (d) the laptop at issue was merchantable. The Court agrees that Defendant's Limited Warranty bars these claims.

"Under New York law, disclaimers of warranties . . . are permissible, and bar contract claims based on the alleged breach of those warranties." *Roberts v. Weight Watchers Int'l, Inc.*, 217 F. Supp. 3d 742, 750 (S.D.N.Y. 2016), *aff'd*, 712 F. App'x 57 (2d Cir. 2017). A disclaimer is effective "if the writing is conspicuous," such as in "larger or other contrasting type or color." *Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 472 (S.D.N.Y. 2010).

When Plaintiff purchased his Laptop, he agreed to the terms of Lenovo's Sales Agreement.[9] Compl. ¶ 2; Mot. at 3.  The Sales Agreement expressly incorporates the Lenovo Limited Warranty.[10]  The Lenovo Limited Warranty states in bold and capitalized font that it is the "exclusive warranty and replaces all other warranties or conditions, express or implied, including . . . any implied warranties or conditions of merchantability or fitness for a particular purpose." ECF No. 23-2 at 1. Lenovo warranted only that the Laptop will be "free from defects in materials and workmanship under normal use during the warranty period." *Id.* In addition, the limitation of liability conspicuously disclaims, with bolded and capitalized font, liability for "anticipated savings." *Id.* at 2. Therefore, Plaintiff has disclaimed the express and implied warranty claims asserted by Plaintiff.

### IV.    Fraud Claim

Plaintiff also brings a claim for fraud. Compl. ¶¶ 102-110. Under New York law, to allege fraud, the complaint must allege "a representation of material fact, falsity, scienter, reliance and injury." *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 57 (1999); *see also Colpitts*, 527 F. Supp. 3d at 585 ("To state a claim of common law fraud under New York law, a plaintiff must allege "(1) a material misstatement, (2) known by the perpetrator to be false, (3) made with an intent to deceive, (4) upon which the plaintiff reasonably relies, and (5) damages.").

As discussed previously, Plaintiffs have failed to plead injury. Therefore, this claim fails. *See Belcastro v. Burberry Ltd.*, No. 16-CV-1080 (VEC), 2017 WL 744596, at *3 (S.D.N.Y. Feb. 23, 2017); *Marino v. Coach, Inc.*, 264 F. Supp. 3d 558, 572 (S.D.N.Y. 2017).

---

[9] *See* Ex. 1 to Gulliver Decl., ECF No. 23-1. The Court may consider Lenovo's Sales Agreement because it is incorporated into the Complaint by reference. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

[10]*See* Ex. 2 to Gulliver Decl., ECF No. 23-2. The Court may consider Lenovo's Limited Warranty because it is integral to the Complaint. *Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002).

## V.      Unjust Enrichment Claim

Plaintiff's final claim is for unjust enrichment in the alternative to his claim of breach of express warranty. Compl. ¶¶ 111-116. Under New York law, "unjust enrichment is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Parks, LLC*, 377 F. Supp. 3d at 248 (quoting *Bautista v. CytoSport, Inc.*, 223 F.Supp.3d 182, 194 (S.D.N.Y. 2016)). The typical case is one where the "defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790, 967 N.E.2d 1177, 1185 (2012). However, an "unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 394 (S.D.N.Y. 2021) (quoting *Izquierdo v. Mondelez Int'l, Inc.*, No. 16 Civ. 04697, 2016 WL 6459832, at *10 (S.D.N.Y. Oct. 26, 2016)).

Courts in the "Second Circuit have consistently held that unjust enrichment claims are duplicative of [NY]GBL claims." *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 249 (S.D.N.Y. 2021); *see also NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) ("Two claims are duplicative of one another if they arise from the same facts ... and do not allege distinct damages.").

Where an "unjust enrichment claim is premised on the same factual allegations as those supporting [a plaintiff's] other claims, and [a plaintiff] ha[s] not alleged distinct damages with respect to this claim," then a plaintiff's unjust enrichment claim will be dismissed. *Cooper v. Anheuser-Busch*, LLC, 553 F. Supp. 3d 83, 115 (S.D.N.Y. 2021) (dismissing unjust enrichment claim as duplicative of Section 349 claim); *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 157

(S.D.N.Y. 2022) ("Courts will routinely dismiss an unjust enrichment claim that simply duplicates, or replaces, a conventional contract or tort claim."). Additionally, if "a plaintiff's other claims are defective ... an unjust enrichment claim cannot remedy the defects." *Izquierdo*, 2016 WL 6459832, at *10 (quoting *Corsello*, 967 N.E.2d at 1185).

Plaintiff's unjust enrichment claim is premised on the allegation that he "purchas[ed] the Products based on Defendants' representations of List Price or Estimated Value." Compl. ¶ 113. These are the same factual allegations as his other claims, and he has not alleged any damages separate from those other claims. Therefore, Plaintiff's unjust enrichment claim is dismissed as duplicative. *See Pittman*, 2022 WL 2967586 at *7.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED** without prejudice. The Clerk of the Court is respectfully directed to terminate ECF No. 21 and to change the caption of this case to remove LGL as a defendant. Plaintiff is granted leave to amend his Complaint within 21 days of the entry of this Order.

**SO ORDERED.**

**Dated:**    **March 28, 2023**
        **New York, New York**

_____
        **ANDREW L. CARTER, JR.**
        **United States District Judge**

29