**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTHONY HAM, individually and on behalf of all others similarly situated, | Case No. 1:22-CV-005131-ALC |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| LENOVO (UNITED STATES) INC., | |
| Defendant. | |

Plaintiff Anthony Ham ("Plaintiff") brings this Class Action Complaint against Defendant Lenovo (United States) Inc. ("Lenovo" or "Defendant"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys:

## NATURE OF THE ACTION

1.      Plaintiff brings this important consumer class action to remedy Lenovo's years-long policy of fabricating fictitious valuations for its laptop and desktop computers, falsely representing those valuations as the "estimated value" of their products, and then advertising purported discounts based on those fictitious valuations. Lenovo's practice knowingly takes advantage of the complexity of personal computers and the need for consumers to rely on manufacturers' representations to make qualitative assessments of different computer models. Lenovo's practice gives consumers less than they bargained for and is at bottom deceptive, fraudulent, and violates the consumer protection laws of the state of New York.

2.     Lenovo touts itself as a "$70 billion revenue global technology powerhouse, ranked #159 in the Fortune Global 500, employing 75,000 people around the world, and serving millions of customers every day in 180 markets."[1]  As the single largest manufacturer of notebook computers in the world and one of the largest desktop computer manufacturers, revenue from PCs accounted for the vast majority of the company's $71 billion in revenue for the 2021/22 fiscal year.[2]

3.     In addition to its wholesale operations with retailers around the world, Lenovo operates a retail website, Lenovo.com, where it offers its laptop computers, desktop computers, and computer peripherals for sale directly to consumers.  Lenovo.com sells Defendant's ThinkPad, ThinkBook, IdeaPad, Yoga, Legion, Lenovo, and Chromebook laptops, its ThinkCentre, IdeaCentre, Legion, Yoga, and ThinkStation desktops, its ThinkPad and ThinkStation workstations, its Lenovo tablets, and its ThinkVision and Lenovo monitors (collectively the "Products").

4.     Despite its considerable economic success in the PC market, for years Lenovo has further padded its bottom line using fraudulent and deceptive business practices to deceive consumers about the overall quality of the Products it sells on the Lenovo.com website.

5.     The exact presentation of Lenovo.com's product pricing has changed throughout the relevant period, but the overarching strategy has remained constant—Lenovo fabricates a fictitious original price, sometimes called "Web Price" (collectively referred to herein as "List Price") or explicit representation of a particular level of quality (referenced on Defendant's website and herein as "Estimated Value"), promises users substantial "savings" with a significant discount off the fictitious price ("Discount" or "Savings"), and presents users with a comparatively lower price to pay at the point of sale ("Sale Price").  The Discount or Savings figure is prominently

---

[1] *Available at* https://news.lenovo.com/pressroom/press-releases/fy-2021-22 (last visited May 28, 2022).
[2] *Id.*

displayed in this scheme, to highlight to users just how much of a Discount they are purportedly receiving and just how high-quality the Product purportedly is.

6.      Such representations induce reasonable consumers to believe that the List Price or Estimated Value represents either the product's normal price on Defendant's website and/or the prevailing price in the market.  In fact, the current List Price on Lenovo.com is labelled "Estimated Value" and includes the following description:

> Estimated value is Lenovo's estimate of product value **based on industry data, including the prices at which Lenovo and/or third-party retailers and e-tailers have offered or valued the same or comparable products**. Third-party data may not be based on actual sales.[3]

7.      These representations also induce consumers to believe the List Price or Estimated Value is the true value of the PC being advertised and that, therefore, the quality of the Product, in whole, is commensurate with other computers priced at or around the Product's List Price or Estimated Value.  Computers are complex consumer goods.  Numerous factors affect the quality and overall value of different computer models, and reasonable consumers are not technologically literate enough to consider all of these factors together, including but not limited to: CPU processing speed, CPU cache size, the number of physical CPU cores, the number of virtual CPU cores, CPU power usage, CPU lifespan, RAM capacity, RAM cache size, RAM speed, RAM lifespan, hard drive capacity, hard drive speed, hard drive lifespan, whether a graphics card is integrated or discrete, the size, memory, clock rate, or bandwidth of the graphics card, screen resolution, screen brightness, screen power usage, how many and what kinds of ports the computer has, the wireless

---

[3] *See, e.g.*, https://www.lenovo.com/us/en/p/laptops/thinkpad/thinkpadx1/thinkpad-x1-carbon-gen-10-14-inch-intel/len101t0009 (last accessed May 26, 2022).

card's bandwidth and range, the computer's battery capacity, the lifespan of the computer's battery, and the computer's operating system.

8.      The rapid pace of technological advancements further complicates the evaluation process for consumers.  The introduction of new components, architectures, and technologies makes it challenging for consumers to stay informed and make educated decisions about computer quality.  It also makes apples-to-apples comparisons impossible.  For instance, a consumer in the past may have been able to compare two computers with an Intel i5 and Intel i7 processor and assume, with a high likelihood of being correct, that the computer with the i7 processor would be more performant.  Today AMD processors are almost as common as Intel processors, and the various Ryzen processor models are not readily comparable to their Intel counterparts.[4]  One processor may offer lower clock speeds but higher overclocked speeds, or less overall speed but more cores and/or more performant threading.

9.      By way of another example, if Lenovo advertises a Product with an Estimated Value or List Price at or above $3,000, consumers may be tempted to compare the Product with high-end Apple Macbook Pros in the same price range, but Apple designs and manufactures its own processors, the M1 and M2 processors, which are ARM processors built on an entirely different CPU architecture from the x86 processors offered by Intel and AMD in consumer computers.  No direct comparison is possible, let alone accessible to the average consumer.[5]  The only way consumers' can make heads-or-tails of the choice between buying a Lenovo Product or an Apple

---

[4] As discussed further below, the named Plaintiff's Product is one such example of an AMD Ryzen computer.

[5] A 14-inch MacBook Pro with an M2 Max processor is advertised on Apple's website at $3,099 today.  This processor touts a 12-core CPU with "8 performance cores and 4 efficiency cores."  Putting aside the products' entirely different CPU architecture (which advertising does not mention, let alone discuss),  the notion of performance and efficiency cores is not even offered in many CPU product lines.  *See* https://www.apple.com/macbook-pro-14-and-16/specs/ (last visited April 18, 2023).

product is the companies' assertions regarding the overall quality of the products in the form of a List Price.

10.     In addition, even if a particularly tech-savvy consumer with the time and wherewithal to research all of these components and their various specifications put in the work, it would not be enough to tell them all they needed to know about the actual quality, performance, capability, reliability, or longevity of the Products—the attributes that actually matter to consumers. This is because software matters just as much as the hardware it runs on, and the exact same processor in two different machines manufactured by two different companies might have wildly different real-world performance.  Drivers (the software that harnesses and controls computers' hardware) created by one manufacturer may make identical hardware more or less performant, stable, reliable, customizable, and/or long-lasting than drivers offered by a competitor on its own products.

11.     Finally, hardware performance is not the only thing that matters to consumers, or even what matters most.  Less measurable attributes like user experience cannot be captured on a specification sheet.

12.     Inescapably, representations like Defendant's about the Estimated Value of their computers are actually qualitative statements about the overall quality, performance, capability, reliability, and longevity of the Products, and Lenovo purposefully induce consumers to believe its price representations are commensurate with the Products' actual quality.

13.     Consumers *must* rely on representations made by the manufacturers and retailers of PCs and PC peripherals regarding their overall quality.  Consumers acting reasonably will assume, for example, that a computer "valued at" $2,000 is of a higher quality overall than a computer valued at $1,500 or $1,000 or less, even if the hardware specifications for the two machines may

suggest they are comparable.  If this were not the case, no computer manufacturer would have any incentive to invest time and money into improving things like drivers and user experience.  On Lenovo.com in particular, consumers are led to believe that Defendant's Products have a particular overall quality because Defendant explicitly represents as much with its List Price or Estimated Value on each Product.

14.    These advertised List Prices, however, are completely illusory or grossly overstated.  This is because the List Price or Estimated Value used to calculate the amount of reported Discounts or "savings" is not the prevailing market price for obtaining the same product from one of the dozens of other retailers that sell Lenovo products or the prevailing market price for obtaining any comparable product from another manufacturer or, most damning, the price ever charged by Lenovo at Lenovo.com for the subject item in the normal course of its business.

15.    In truth, the List Price is simply a work of fiction.  Simply stated, Defendant fabricates a number using undisclosed formulas bearing no resemblance to the market, and it uses the fictitious List Price or Estimated Value to create the impression of significantly higher quality Product than consumers will actually receive.

16.    The reality is that Lenovo's Products' actual value and quality are much lower than advertised.  Its customers are not receiving Products of the quality advertised and expected by purchasing these advertised "Discounted" Products from Lenovo. In fact, all other factors being equal, a customer will incur higher costs by purchasing a product through Lenovo.com (due *inter alia* to shipping and handling fees). Consumers will forgo higher overall quality products from other manufacturers on the inflated overall value represented to them.

17.    Had Plaintiffs and members of the Class known that the List Prices on Lenovo.com were fabricated and in no way whatsoever reflected the actual quality of the Products, they would

6

not have purchased their Products from Lenovo.com, would have purchased them elsewhere, or may have purchased a PC or Apple computer from a different manufacturer entirely.

18.     The sheer gap between Defendant's representations of the Products' overall quality and their actual quality in reality is underscored by Lenovo's own website.  Defendant's Products are not worth what they claim they are, but they are certainly not worth more than what they are actually sold for—the Products' Sale Price on the website.   Thus, when the company offers purported but illusory "Savings" on a Product, often of $1,000 or more, this suggests a quality discrepancy of *at least* $1,000.

19.     Defendant continuously and systematically lied and continues to lie to consumers. Those lies are intended to mislead consumers as to the overall quality of its Products, and consumers are in fact so misled.  Consumers are thereby induced to purchase Defendant's Products at an inflated price under the mistaken belief that Defendant's List Price accurately conveys the overall quality of the Products, thus incurring economic injury.  Accordingly, Lenovo's business practice violates the New York General Business Law §§ 349 and 350, constitutes a breach of express and implied warranties, and has unjustly enriched Defendant.  Plaintiff thus seeks damages as well as injunctive, declaratory, and other equitable relief as may be deemed proper by the Court.

## PARTIES

**A.  Plaintiff**

20.     Plaintiff Anthony Ham is a resident of Champaign, Illinois and was, at all times relevant hereto, a citizen of Illinois.

21.     Plaintiff Ham purchased one of the Products on Lenovo.com during the relevant period.  When Plaintiff purchased the Product, Lenovo advertised the Product with a fictitious List Price and illusory Discount Price.

22.     The List Price advertised by Lenovo for Plaintiff's T495 on the company's website was false and misleading because Defendant's actual price offered for the Product was not at any time the List Price displayed on Lenovo's website, nor was the List Price ever the prevailing market price for the Product, and the Product's true overall quality therefore was never reflected in the List Price.  Instead, the inflated List Price induced Plaintiff Ham to purchase his Product in lieu of a comparable product for less money or a higher quality product for the same or a similar price.

**B.  Defendant**

23.     Defendant Lenovo (United States) Inc. is a Delaware Corporation headquartered in Morrisville, North Carolina.  Lenovo is the largest manufacturer of laptop and desktop computers in the world with an annual revenue of over $70 billion and annual profit in the billions.

24.     Defendant designs, manufactures, advertises, and sells the Products throughout the United States and the world.

## JURISDCTION AND VENUE

1.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more proposed Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because at least some Plaintiffs and Defendant are citizens of different states.

2.     This Court has personal jurisdiction over Lenovo because the company has substantial aggregate contacts with this State and District, including Defendant's uniform sales agreement which applies to all sales of the Products in the United States and purposefully avails

Lenovo of the laws of New York "without regard to its conflict of law principles,"[6] engaging in conduct in this District that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and because Defendant placed the Products into the stream of commerce directed at this District.

25.     In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, Defendant transacts substantial business in this District, and Defendant has intentionally availed itself of the laws and markets within this District.

## FACTUAL ALLEGATIONS

### A.  Lenovo Computers

26.     "Lenovo is a US$60 billion revenue Fortune Global 500 company serving customers in 180 markets around the world."[7]   According to Defendant, "[w]e deliver a full portfolio of PCs and tablets, monitors, accessories, smartphones, smart home and smart collaboration solutions . . . around the world.  Since 1995 we have shipped more than half a billion PCs, and we make three devices every second."[8]

27.     In 2005, Lenovo acquired IBM's PC business for $1.2 billion, including $650 million in cash.[9] This acquisition gave Lenovo the ThinkPad brand, renowned for its build quality, performance, and reliability.  In 2008, Lenovo further capitalized off of the ThinkPad brand name, announcing its new line of IdeaPad PCs—a  nod to the ThinkPad brand and its already-established reputation.

---

[6] Terms of Sale *available at* https://www.lenovo.com/us/en/terms-and-conditions/ (last accessed May 27, 2022).
[7] *Available at* https://investor.lenovo.com/en/global/home.php (last accessed June 7, 2022).
[8] *Available at* https://www.lenovo.com/us/en/about/whoweare/ (last accessed June 7, 2022).
[9] *Available at* https://news.lenovo.com/pressroom/press-releases/lenovo-completes-acquisition-ibms-personal-computing-division/ (last visited June 7, 2022).

28.     Lenovo's lines of smartphone, PC, and PC peripheral devices has grown to include ThinkPad, ThinkBook, IdeaPad, Yoga, Legion, ThinkStation, IdeaCentre, Lenovo-branded PCs, Lenovo-branded Chromebook laptops, and Lenovo smart phones.   Lenovo manufactures and distributes its Products across the world to major retailers, and it offers its Products for sale directly from Lenovo.com.

**B.  Defendant's Misrepresentations to Consumers**

29.     Consumers visiting Lenovo.com to shop for PCs are immediately greeted with a banner claiming enormous savings on the highly inflated purported Estimated Values or List Prices of its Products:

> Save up to 65% off PCs and top tech. **Shop Now >**   [10]

This banner, or a similar banner, is and has always been present on the Lenovo website throughout the relevant period, regardless of whether there are in fact any sales promotions being offered.

30.     Lenovo's advertising similarly perpetually represents that consumers can save big if they act now, regardless of whether there are in fact any sales promotions being offered:

---

[10] *Available at* https://www.lenovo.com/us/en/pc/ (last accessed June 7, 2022).



31.   The Lenovo website also highlights some of the company's flagship PC models with highly inflated purported List Values.  For instance, the PC landing page on June 7, 2022 displayed the following:



11

Each of the flagship models advertised claimed an overall value that was $1,000 or more above its actual prevailing price, as measured by the Sale Price the Products were actually offered at. For instance, Lenovo represents on its website that the ThinkPad X1 Carb Gen 9 (14 inch Intel) Laptop has an Estimated Value of $2,469.00 but a current sale price starting at $1,401.60, a more than $1,000 discrepancy in advertised and actual quality:

---

[11] *Available at* https://www.lenovo.com/us/en/pc/ (last accessed June 7, 2022).



ThinkPad X1 Carbon Gen 9 (14",
Intel) Laptop

⭐⭐⭐⭐⭐

Est Value ⓘ ~~$2,469.00~~
Starting at
**$1,401.60**
$117/mo suggested payments w/12 mo promo
financing See How | Prequalify

[12]

32.     The website says "Starting at" because each model has various configurations with

different specifications for CPU, RAM, hard drive capacity, and more.  For instance, two of the

X1 Carbon configurations available in June 2022 are:

---

[12] *Available at* https://www.lenovo.com/us/en/p/laptops/thinkpad/thinkpadx1/x1-carbon-gen9/22tp2x1x1c9 (last
accessed June 7, 2022).



As shown above, Lenovo represents to consumers that these models have Estimated Values of

$3,049.00 and $3,589.00 respectively, when the Products are readily offered "40% off" those

fabricated Estimated Values.

     33.     This express warranty of the "Estimated Value" listed for each Product is explained

as follows:

> Estimated value is Lenovo's estimate of product value based on industry data,
> including the prices at which Lenovo and/or third-party retailers and e-tailers have

---

offered or valued the same or comparable products. Third-party data may not be
based on actual sales.

Thus, consumers are reasonably left with the impression that these models offer quality and value
commensurate with their high Estimated Values.  Indeed, as discussed above, consumers have no
way to comprehensively evaluate the quality of a computer *without* taking into account the
manufacturer's representations about its dollar value.

34.    For products as complex as personal computers, consumers necessarily rely on
these kinds of representations because the average consumer cannot take into account the myriad
variables that determine the quality and value of computers, including numerous attributes that
cannot be measured on a specification sheet and only become apparent over the lifespan of the
computer.  Lenovo's own product pages illustrate the overwhelming number of variables to
consider in buying a PC:

| | |
|---|---|
| Processor : 11th Generation Intel® Core™ i7-1165G7 Processor (2.80 GHz, up to 4.70 GHz with Turbo Boost, 4 Cores, 8 Threads, 12 MB Cache) | Processor : 11th Generation Intel® Core™ i7-1185G7 Processor with vPro™ (3.00 GHz, up to 4.80 GHz with Turbo Boost, 4 Cores, 8 Threads, 12 MB Cache) |
| Operating System : Windows 10 Pro 64 | Operating System : Windows 11 Pro 64 |
| Graphics : Integrated Intel® Iris® Xe Graphics | Graphics : Integrated Intel® Iris® Xe Graphics |
| Memory : 16 GB LPDDR4X 4266MHz (Soldered) | Memory : 32 GB LPDDR4X 4266MHz (Soldered) |
| Storage : 1 TB PCIe SSD | Storage : 512 GB PCIe SSD |
| Display : 14.0" WUXGA (1920 x 1200) IPS, anti-glare, low-power, 400 nits | Display : 14.0" WUXGA (1920 x 1200) IPS, anti-glare, low-power, 400 nits |
| Camera : IR & 720p HD with HPD | Camera : 720p HD |
| Fingerprint Reader : Fingerprint Reader | Fingerprint Reader : Fingerprint Reader |
| Keyboard : Backlit - US English | Keyboard : Backlit - US English |
| WLAN : Intel® Wi-Fi 6 AX201 802.11AX (2 x 2) & Bluetooth® 5.2 | WLAN : Intel® Wi-Fi 6 AX201 802.11AX (2 x 2) & Bluetooth® 5.2 with vPro™ |
| Warranty : 1 Year Depot or Carry-in | Warranty : 1 Year On-site |

[14]

This is not an exhaustive list of the relevant component specifications in a PC. For each of the more than a dozen relevant components in a PC, there are multiple metrics that gauge the quality and value. For instance: clock speed, cache, cores, and threads are all considerations in evaluating the quality and value of a CPU. Memory (or RAM) relevantly varies in memory size, DDR classification, frequency, latency, memory bandwidth, and more. CPU and RAM are not unique. Each component in a PC comes with its own complex array of considerations, which vary from model to model—and sometimes within different configurations of the same 'model.'

---

[14] *Id.*

35.     Raw numbers, however, do not tell the whole story.  Identical processors in two different computers built by two different manufacturers with two different sets of drivers can offer very different real-world performance.  Moreover, many components are not comparable apples-to-apple.  Defendant's Products, for instance, can come with Intel or AMD processors, which are not readily compared.  One processor may offer higher clock speeds but less power efficiency, or similar clock speeds and more processing cores, or better caching.  Furthermore, consumers looking to compare Defendant's Products with the actual computers that sell for Lenovo's lofty $3,000+ Estimated Values: Apple's MacBook Pro series, are manufactured proprietarily by Apple and have *entirely different* processor architecture (ARM instead of x86) and thus frustrate consumer comparison even more.

36.     Beyond hardware, computers have numerous attributes that cannot be captured on a specification sheet but matter quite a bit to consumers.  User experience differs across manufacturers' computers, with some computers offering greater features, more seamless user interfaces, greater OS stability, fewer firmware bugs, and more.  None of these attributes are readily available, and indeed many—including the durability and longevity of a computer—are not readily apparent until well after the point-of-sale.

37.     It is impossible for tech-savvy consumers, much less the average consumer, to make heads or tails of this themselves.  They *must* rely on representations like Lenovo's List Price to help evaluate the overall quality of the Products.  Thus, when Lenovo represents to consumers that a particular configuration of its ThinkPad X1 Carbon PC has an Estimated Value of $3,589, consumers reasonably believe that all of the components and the boundless specifications thereof, in addition to the drivers, software, and overall user experience taken together, comprise a Product with quality and value commensurate with a $3,589 computer.  There is simply no way, for

17

example, for a consumer to evaluate whether a 14-inch MacBook Pro with Apple's proprietary M2 processor built on ARM architecture is of greater, similar, or lesser value than an X1 Carbon. The only way consumers can do this holistically is by comparing the MacBook's $3099 price to the X1's $3,589 purported List Price.

38.    In other words, consumers reasonably believe that such a computer is "better" than a competitor's laptop priced lower than the Product's List Price but higher than its Sale Price, whether that higher quality is represented in better hardware, better use of hardware through high-quality drivers, better build quality, durability and/or longevity, or an overall better user experience.

39.    None of this could be further from the truth. Not only are Products' Estimated Values completely unrepresentative of those Products' quality as compared to similar computers, the Estimated Values don't have any relationship whatsoever with the actual sales price of *that same model* on the Lenovo.com website or at any other retailer.

40.    Take, for instance, the X1 Carbon with an "Estimated Value" of $2,469.00, with an Intel i7-1185G7 Processor, 32GB of LPDDR4X memory, and a 512GB solid state hard drive.



<sup>15</sup>

In contrast, an X1 Carbon with these same specifications can be purchased for a whopping $1,159.99—a full $1,300 less than the "Estimated Value" on Lenovo.com and more than $300 cheaper than the "sale" price on Lenovo's own amazon.com store:

---

[15] *Available at* https://www.lenovo.com/us/en/p/laptops/thinkpad/thinkpadx1/x1-carbon-gen9/22tp2x1x1c9 (last visited June 7, 2022).



Lenovo **ThinkPad** X1 Carbon Gen 9, 14" FHD(1920 x 1200)
IPS 400 nits, Fingerprint Reader, WUXGA i5-1135G7 up to
2.4GHz, 8GB RAM, 256GB SSD, Webcam, Bluetooth, WiFi,
Win 10 Pro, Black, EAT Cloth
Visit the Lenovo Store
★★★★★   1 rating  |  7 answered questions

$1,159⁹⁹
& FREE Returns  ⌄
**Pay $64.44/month for 18 months, interest-free upon approval for the Amazon Rewards Visa Card**

Capacity: **8GB | 256GB SSD**

8GB | 256GB SSD     8GB | 512GB SSD

Style: **WUXGA i5**

WUXGA i5     core i5

| | |
|---|---|
| **Brand** | Lenovo |
| **Series** | ThinkPad X1 |
| **Screen Size** | 14 Inches |
| **Color** | Black |
| **Hard Disk Size** | 256 GB |
| **CPU Model** | Intel Core i5 |
| **Ram Memory Installed** | 8 GB |

⌄ See more

16

41.     Thus, a consumer who reasonably trusts Lenovo's false representations would be led to believe they were receiving a laptop of quality and value approximating $2,469 (with a $987 discount) when, in reality, they are receiving a laptop of far lesser quality at a <u>$300 premium</u> over the same or comparable models sold elsewhere.

42.     Lenovo's ThinkPad X1 Carbon laptop computers are not unique. In fact, Defendant uses the exact same scheme to inflate the value and perceived quality of virtually all of the Products.  For instance, a ThinkPad T15 Gen 2 Intel PC with an i5 CPU, 8 GB of RAM, and a 256 solid state hard drive has an "Estimated Value" of $2,190.00 on Lenovo.com and a sale price of $1,313.40 with $875.60 in purported "savings" whereas the same computer with *twice* the hard drive capacity and otherwise identical specifications sells for $1,279.00 on Amazon.

---

[16] *Available at* https://www.amazon.com/Lenovo-ThinkPad-Fingerprint-i5-1135G7-Bluetooth/dp/B09S3BLDDJ/
(last visited June 7, 2022).



Processor : 11th Generation Intel® Core™ i5-1135G7 Processor (2.40 GHz, up to 4.20 GHz with Turbo Boost, 4 Cores, 8 Threads, 8 MB Cache)

Operating System : Windows 10 Pro 64

Graphics : Integrated Intel® UHD Graphics

Memory : 8 GB DDR4 3200MHz (Soldered)

Storage : 256 GB PCIe SSD

Display : 15.6" FHD (1920 x 1080) IPS, anti-glare, 300 nits

ThinkPad T15 Gen 2 Intel (15") - Black

Save $875.60   **40% off**

Est Value ⓘ ~~$2,189.00~~

**$1,313.40**

Lenovo Financing   $110/mo suggested payments w/ 12 mo promo financing
See How | Prequalify

Use eCoupon  THINKJUNE
eCoupon limited to 2 units

**Add To Cart**

17



Lenovo ThinkPad T15 Gen 2 15.6" Business IPS Laptop (Intel i5-1135G7 4-Core, 8GB RAM, 512GB PCIe SSD, Intel Iris Xe, 60Hz Full HD (1920x1080), WiFi, Bluetooth, Backlit KB, Win 10 Pro) with Hub
Visit the Lenovo Store

$1,279⁰⁰

Get 3% back on this item with the Amazon Rewards Visa Card.

Capacity: **8GB RAM|512GB SSD**

| 8GB RAM|1TB SSD | 8GB RAM|256GB SSD | **8GB RAM|512GB SSD** | 16GB RAM|1TB SSD |
| 16GB RAM|256GB SSD | 16GB RAM|512GB SSD | 24GB RAM|1TB SSD | |
| 24GB RAM|512GB SSD | 40GB RAM|1TB SSD | 40GB RAM|2TB SSD | 40GB RAM|512GB SSD |

Style: **Windows 10 Pro**

| **Windows 10 Pro** | Windows 11 Pro |

| Brand | Lenovo |
| Series | ThinkPad T15 Gen 2 |
| Screen Size | 15.6 Inches |
| Hard Disk Size | 512 GB |
| CPU Model | Core i5 |
| Ram Memory Installed Size | 8 GB |

∨ See more

18



---

[17] *Available at* https://www.lenovo.com/us/en/p/laptops/thinkpad/thinkpadt/thinkpad-t15-gen-2-(intel)/22tpt15t5n2 (last visited June 7, 2022).
[18] *Available at* https://www.amazon.com/Lenovo-ThinkPad-i5-1135G7-Fingerprint-

The Lenovo Yoga 6 is a "New Arrival" on Lenovo.com with no prior sales history whatsoever. And yet these brand new Yoga 6 configurations all have "Estimated Values" hundreds of dollars above Lenovo's asking price:



Lenovo applies this practice uniformly to *inter alia* its Legion gaming laptops,[20] ThinkBooks,[21] IdeaPads,[22] ThinkCentre desktops,[23] IdeaCentre desktops,[24] ThinkStation Workstations,[25] tablets,[26] monitors.[27]

43.     Defendant's policy is applied uniformly to virtually all of its Products.  Lenovo provides a fictitious Estimated Value or List Price for each Product, highlights a large purported "savings," and then ultimately offers the Product for sale at or above the prevailing market price and at or above the price of computers of comparable quality sold by other manufacturers. Consumers are deceived into believing that the Product they are purchasing is of substantially higher quality or greater value than it really is.

44.     Lenovo knows its policy has this effect and, in fact, Lenovo *intends* for this deleterious effect on consumers.  This is evidenced by the fact that the company fabricates its "Estimated Value" and List Prices out of whole cloth, and at consistently inflated numbers.  As a result, the company sells more of its Products directly, without retailers acting as middlemen, *and* it does so at a price premium.  The only loser is the consumer, who received a lower quality Product than advertised at a price higher than it is worth.

---

[20] *Available at* https://www.lenovo.com/us/en/p/laptops/legion-laptops/legion-5-series/legion-5-gen-6-(15%E2%80%9D-amd)-gaming-laptop/len101g0004 (last visited June 7, 2022).
[21] *Available at* https://www.lenovo.com/us/en/p/laptops/thinkbook/thinkbook-series/lenovo-thinkbook-15-g2-itl/xxtbxtmi500 (last visited June 7, 2022).
[22] *Available at* https://www.lenovo.com/us/en/p/laptops/ideapad/ideapad-300/ideapad-3-(15%E2%80%9D,-amd)-laptop/len101i0010 (last visited June 7, 2022).
[23] *Available at* https://www.lenovo.com/us/en/p/desktops/thinkcentre/m-series-tiny/thinkcentre-m75q-gen-2/11tc1mtm7g2 (last visited June 7, 2022).
[24] *Available at* https://www.lenovo.com/us/en/p/desktops/ideacentre/aio-500-series/ideacentre-aio-5i-27/fficf500348 (last visited June 7, 2022).
[25] *Available at* https://www.lenovo.com/us/en/p/workstations/thinkstation-p-series/thinkstation-p348-tower-workstation/len102s0004 (last visited June 7, 2022).
[26] *Available at* https://www.lenovo.com/us/en/p/tablets/android-tablets/lenovo-tab-series/tab-m8-hd-lte/tab-m8-hd-lte (last visited June 7, 2022).
[27] *Available at* https://www.lenovo.com/us/en/p/accessories-and-software/monitors/office/62aakar6us (last visited June 7, 2022).

45.     As a result, consumers are injured in the amount of the so-called Estimated Value minus the actual sale price, which is the most reliable metric available (although it still likely inflated) of the Products' actual quality.   This is because consumers believe, and Lenovo knowingly induces them to believe, that they are getting a PC of overall quality commensurate with the Estimated Value when, in reality, they are getting a Product of substantially lower quality.

## PLAINTIFF'S FACTUAL ALLEGATIONS

46.     Like other consumers, Plaintiff Anthony Ham visited Defendant's website, was inundated with its representations of sky-high List Prices, and was induced to purchase one of the Products from Lenovo's website for an inflated price relying on the company's fictitious List Prices.

47.     In June 2020 when Plaintiff visited Lenovo.com, the site prominently advertised "All Think on Sale!" and promised that consumers could "[s]ave up to 65% on ThinkPad laptops" with several flagship Lenovo laptops purportedly Discounted below the banner:



28

48.     On June 17, 2020, Plaintiff purchased a T495 (14') AMD 3700U with 8GB of RAM and a 256GB capacity solid state hard drive (the "T495") on Lenovo.com for a Sale Price of $969. Like all of its Products, when Plaintiff purchased the T495, the computer's product page advertised a "Web Price," which the page suggested was the original price or actual value of the product, a substantially lower sale price of $969, and significant purported Savings.  Plaintiff saw this List Price dramatically slashed out with a lower Sale Price prominently displayed.

49.     Believing the List Price was a truthful representation of the Product's actual overall quality, and taking into account *inter alia* hardware specifications, build quality, driver performance, software, and user experience, Plaintiff was induced to buy his T495 for $969.

---

[28] *Available at* https://web.archive.org/web/20200701000000*/https://www.lenovo.com/us/en/ (last visited June 13, 2022).

50.     Around the time Plaintiff purchased the T495, Lenovo advertised the Product at a purported Sale Price of $1,037.40 supposedly discounted from a substantially higher List Price of $1,729.00.[29]  Defendant highlighted a supposed savings of $691.60:



51.     The Web Price and the Savings advertised by Lenovo for Plaintiff's T495 on the company's website were both false and misleading because Defendant's actual price offered for

---

[29] There is no Lenovo.com product page for the T495 archived by Wayback Machine for the day Plaintiff Ham purchased the Product, but it was archived 2 weeks later on July 3, 2020, which is available at https://web.archive.org/web/20200701000000*/https://www.lenovo.com/us/en/laptops/thinkpad/thinkpad-t-series/T495/p/22TP2TTT495 (last visited June 13, 2022).  At that time, the advertised Sale Price was substantially similar.

[30] This screenshot was taken from a Wayback Machine archived version of the T495 product page from July 3, 2020 and is available at https://web.archive.org/web/20200701000000*/https://www.lenovo.com/us/en/laptops/thinkpad/thinkpad-t-series/T495/p/22TP2TTT495 (last visited June 13, 2022).

the Product was not at any time the List Price displayed on Lenovo's website, nor was the List Price ever the prevailing market price for the Product, and because the Product's true overall quality was never reflected in (nor did it bear any relation to) the List Price.

52.     In fact, Plaintiff's configuration of the T495 launched in June 2019 with a List Price of $1,209. Notably, this was the only period in the Product's entire lifecycle where it was not offered with a purported discount:



53.     The next month in July 2019, the Product was advertised with a Sale Price of $904 and an advertised Savings of $304:

---

[31] *Available at* https://web.archive.org/web/20200701000000*/https://www.lenovo.com/us/en/laptops/thinkpad/thinkpad-t-series/T495/p/22TP2TTT495 (last visited June 13, 2022).



54.     One month later, in August 2019, the Product's List Price ballooned to $1,729 and its Sale Price also increased—to $1,037.92.  Thus, although Lenovo had increased the Product's Sale Price by $133, it advertised a massive, purported Savings of $691.08:

---

[32] *Id.*



55.     Throughout the rest of the T495's approximately 2-year lifecycle, Defendant continued to advertise Plaintiff Ham's configuration of the Product with a List Price of $1,729.00 and substantially lower Sale Prices ranging from $972.00 to $1,037.  Each archived version of the Product's web page throughout that period had a different eye-popping banner accompanying the purported Discount, promising significant savings.  "Cyber Monday in July."  "Weekend Sale." "Black Friday sneak peak.  Save up to 62% on ThinkPad T495 (14").  Hurry!  Sale Ends 11/2."[34]

---

[33] *Id.*
[34] *Id.*

29

56.     Lenovo.com did not offer the Product at or even near the supposed List Price of $1,729.00 at any time prior to or after Plaintiff's purchase, nor did any retailer selling this configuration.  In fact, at the time of Plaintiff's purchase, models substantially similar to Plaintiff's T495 were available for a price lower than Lenovo.com's Sales Price.  This is because Lenovo's fictitious pricing scheme allows it to trick consumers into paying more money for less computer. By inflating representations of the Products' overall quality, Lenovo is effectively able to charge a price premium disguised as a discount.

57.     For instance, in July 2020 a comparable configuration of Lenovo's ThinkPad T495s, with a 3700U AMD process, 8GB of RAM, and a 256GB solid state hard drive, was offered for sale (direct from Lenovo) on eBay for $749.99.[35]  The T495s is a lighter and more portable version of the T495 and comparable configurations of the T495s are typically sold at a $100 premium over the standard T495 configurations.[36]  Yet, mere weeks after Plaintiff Ham purchased his T495 for $969, the higher-end T495s variant with comparable hardware specifications was available for $200 less.

58.     An Amazon reviewer for the 3500U configuration of the T495 in November 2019 was tricked by Defendant's misrepresentations regarding the 3700U much in the same was as Plaintiff Ham, stating: "I had already ordered a T495 with a Ryzen 3700u from Lenovo with similar specs for $950 (**a substantial discount from their list price**) when I saw this item on Amazon for $650. I ordered from Amazon and will send the other one back to Lenovo as soon as it gets here."[37] This consumer got off lucky.  He found the $650 offer on Amazon for the 3500U configuration of

---

[35] *Available at* https://web.archive.org/web/20200723041426/https://www.ebay.com/itm/Lenovo-ThinkPad-T495s-14-0-FHD-IPS-250-nits-Ryzen-7-Pro-3700U/164288563162 (last accessed June 13, 2022).
[36] *See* https://www.zdnet.com/product/lenovo-thinkpad-t495s/ (last accessed June 14, 2022).
[37] *Available at* https://www.amazon.com/Lenovo-ThinkPad-20NJ0004US-Touchscreen-Notebook/product-reviews/B07SH98QDW?reviewerType=all_reviews (last visited June 13, 2022).

the T495.  If he had instead stayed on Lenovo.com and believed Defendant's misrepresentations that they offered a significant Discount and that the illusory savings promotion would end soon, he may have purchased the exact same 3500U configuration on Lenovo.com for $893, a full $243 more than the Amazon price.

59.    The 3500U configuration of the T495 was typically offered for $100 less than the 3700U configuration.  Thus, while archived web data from 2020 does not show the exact price prevailing in the market for Plaintiff Ham's configuration of the T495 at the time of purchase, it illustrates that substantially similar models were consistently overpriced on Lenovo.com as compared to competitors' websites.  Plaintiff Ham could have purchased a more high-end version of his T495 for approximately $200 less or a slightly less powerful version for $300 less (whereas the different in prevailing market price of the two models was only $100).

60.    Plaintiff Ham also could have purchased competitors' laptops with comparable or better hardware configurations for a lesser price.  For instance, in June 2020 when Plaintiff purchased his T495, an ASUS ZenBook 14 3700U—a laptop in the same segment as Plaintiff's T495—with twice the hard drive capacity was offered for as low as $900.00.[38]  At that same time, a Dell Inspiron 5485 3700u with the same processor, same RAM, and twice the hard drive capacity was offered for as low as $639.99.[39]  Plaintiff was fraudulently induced to believe (incorrectly) that his T495 was of substantially higher quality than these and other competitors and purchase his Product motivated by that belief.

---

[38] *Available at*
https://camelcamelcamel.com/product/B084ZPT9ST?utm_campaign=camelizer&utm_medium=extension&utm_source=edge&utm_content=chart&utm_term=US-B084ZPT9ST (last visited June 15, 2022).
[39] *Available at*
https://camelcamelcamel.com/product/B07ZDL34CW?utm_campaign=camelizer&utm_medium=extension&utm_source=edge&utm_content=chart&utm_term=US-B07ZDL34CW (last visited June 15, 2022).

61.     Through the misrepresentations detailed above, Defendant misled Plaintiff into believing that the fictitious List Price stated on the Lenovo website was the actual, prevailing market price for the Product and that he was receiving a Product of overall quality reflected in the device's List Price.

62.     In reality, the List Price Defendant advertised bore no relation to the Product's prevailing market price, at the time Plaintiff purchased it or ever, or to its actual overall quality. While Plaintiff believed, as Lenovo induced him to believe, that the overall quality of his Product, including all of its components, the components' drivers, the device's software, and its overall user experience taken together, comprise a Product with quality commensurate with the $1,729 List Price Defendant fabricated and touted on its website.

63.      In reality, Plaintiff paid a price premium because of Defendant's fraudulent Sales Price.  Through Defendant's deceptive practices, the company induced Plaintiff to believe that it was offering a Product with overall quality reflected by other laptops in and around its $1,729 fictitious valuation.  Instead, Plaintiff received a Product of much lower overall quality.  In other words, he received a Product of lesser quality than he bargained for.

64.     Had Plaintiff known the true nature of Defendant's pricing, that the Product was actually of substantially lesser quality than Lenovo represented, he would have not purchased the Product from Lenovo.com.  He would have purchased the Product elsewhere for less or would have purchased a comparable or even higher quality PC from a different manufacturer entirely, for a similar or even lower price.

65.     As a result of Defendant's actions, Plaintiff has incurred damages, including economic damages.

## CLASS ACTION ALLEGATIONS

66.     Plaintiff brings this action individually and as the representative of all those similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the below-defined Class:

> **Class Definition**: During the fullest period allowed by law, all persons in the United States who purchased any of the Products on Defendant's website, Lenovo.com, for which Defendant advertised a List Price, either as a Web Price or Estimated Value, different from the Product's Sale Price.

67.     Members of the class described are referred to herein as "Class Members" or members of the "Class."

68.     Plaintiff reserves the right to amend the Class definitions or add a Class or Classes if discovery and/or further investigation reveal that the Class definition(s) should be narrowed, expanded or otherwise modified.

69.     The following are excluded from the Class: (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

70.     **Numerosity – Federal Rule of Civil Procedure 23(a)(a)**: The members of the Class are so numerous that their individual joinder herein is impracticable. Lenovo maintains accurate records of all transactions occurring on its website, including the name, mailing address, email and billing information of each of the Class members.  While the exact number of Class

members is unknown to Plaintiff at this time, Plaintiff is informed and believes that there are tens of thousands of members in the proposed Class, if not more, and a precise number can be ascertained through discovery. The number of individuals who comprise the Class are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action, rather than in individual actions, will benefit both the parties and the courts.

71.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**: Common questions of law and fact exist as to all members of each of the Class and predominate over questions affecting only individual members of the Class. Such common questions of law or fact include, but are not limited to, the following:

a.     Whether Defendant misrepresented material facts concerning the quality or market price of the Products on their website;

b.     Whether Defendant's conduct was unlawful; unfair; fraudulent and/or deceptive;

c.     Whether Defendant was unjustly enriched when selling the fictitiously-valued Products to Plaintiff and Class Members;

d.     Whether Plaintiff and the Class have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

72.     Defendant engaged in a common course of conduct giving rise to the legal rights Plaintiff seeks to enforce on behalf of himself and the other Members of the proposed Class. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action.

73.     **Typicality – Federal Rule of Civil Procedure 23(a)(3)**. Plaintiff's claims are typical of the claims of the other Members of the Class because, among other things, all Members of the Class were comparably injured through Defendant's uniform misconduct described above.

Further, there are no defenses available to Defendant that are unique to Plaintiff or to any particular Members of the Class.

74. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other Members of the Class he seeks to represent; he has retained counsel competent and experienced in complex class action litigation; and he will prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and the undersigned counsel.

75. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, Members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Class thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

76. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Members of the Class to

individually seek redress for Defendant's wrongful conduct.  Even if Members of the Class could afford individual litigation, the court system could not.  Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
**Violation of the New York Deceptive Trade Practices Act,
New York Gen. Bus. Law § 349, *et seq.*
(On behalf of the Class)**

77.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

78.     By reason of the acts set forth above, Defendant has been and is engaged in deceptive acts or practices in the conduct of a business, trade, or commerce in violation of New York's General Business Law § 349.

79.     Lenovo engaged in unfair and/or deceptive conduct by, *inter alia*, making the representations that the Products were of a far higher quality than they actually were, based on fictitious List Prices or Estimated Values billed to consumers as an accurate representation of the Products' overall quality.

80.     The public is likely to be damaged because of Lenovo's deceptive trade practices or acts. Specifically, Lenovo's false, deceptive, or misleading statements give consumers a false impression of the value of Lenovo's PC and PC peripherals.   These consume products are impossible for consumers to evaluate holistically without relying, wholly or in part, on Lenovo's representations regarding the Products' overall quality.

81. Lenovo directs its conduct at consumers, as its false, deceptive, or misleading statements are contained in marketing targeted toward consumers, including on the product pages of each of the Products. As such, Defendant's conduct as alleged herein is consumer oriented.

82. Defendant's deceptive acts are likely to mislead a reasonable consumer acting reasonably under the circumstances. Even tech-savvy consumers cannot holistically evaluate the overall quality of a computer without representations from the manufacturer regarding the device's retail value or List Price. The average consumer is even worse off, and Lenovo knows it. The company's unlawful conduct takes advantage of its unique knowledge regarding the Products' overall quality: including but not limited to the computer's countless hardware specifications, Lenovo's own drivers for controlling and leveraging that hardware which dictates real-world performance, the Products' build quality, software quality, stability, and reliability, and the Products' longevity.

83. Defendant's deceptive acts affect the public interest in the state of New York because, upon information and belief, consumers located in New York have purchased Lenovo's Products in reliance on Defendant's false, deceptive, or misleading statements.

84. Defendant's advertising and the Products' fictitious pricing or valuation induced Plaintiff and the Class to purchase Lenovo's Products at a price premium based on false and misleading statements regarding the Products' overall quality.

85. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the Class have been damaged thereby.

86.     As a result of Defendant's use of unfair or deceptive acts or business practices, Plaintiff and each of the other Members of the Class have sustained damages in an amount to be proven at trial.

87.     Plaintiff Ham would like to be able to consider Lenovo Products in the future, but if he cannot trust that the company's representations regarding its List Prices, and therefore overall value, for its Products, he cannot consider purchasing a Product from Lenovo.com.  Therefore, Plaintiff and Class Members seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

88.     Finally, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**COUNT II**
**Violation of the New York Deceptive Trade Practice Act,**
**New York Gen. Bus. Law § 350, *et seq.***
**(On behalf of the Class)**

89.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

90.     Lenovo has made material, false or misleading statements or representations of fact about the Products. Specifically, Defendant has literally, impliedly, or by necessary implication made the representations that the Products are of a particular quality, when in reality the Products are not of the quality represented and are sold at a price premium.  Defendant's unlawful practices conceal from consumers the fact that comparable or higher quality products may be purchased elsewhere at a lower price.

91.     Defendant's acts constitute false advertising in the conduct of business, trade, or commerce, or in the furnishing of any service in the state of New York in violation of New York's General Business Law § 350.

92.     The public is likely to be damaged because of Defendant's deceptive trade practices or acts. Specifically, Lenovo's false, deceptive, or misleading statements give consumers a false impression of the overall quality of Lenovo's PC and PC peripherals, including but not limited to the devices' countless hardware specifications, Lenovo's own drivers for controlling and leveraging that hardware which dictates real-world performance, the Products' build quality, software quality, stability, and reliability, and the Products' longevity.

93.     As such, Defendant's conduct as alleged herein is consumer oriented.

94.     As a result of Defendant's material, false or misleading statements or representations of fact about the Products, Plaintiff and each of the other Members of the Class have sustained damages in an amount to be proven at trial.

95.     Plaintiff Ham would like to be able to consider Lenovo Products in the future, but if he cannot trust that the company's representations regarding its List Prices, and therefore overall value, for its Products, he cannot consider purchasing a Product from Lenovo.com.  Therefore, Plaintiff and Class Members seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

96.     Finally, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**COUNT III**
**Fraud**
**(Plaintiff On Behalf of the Class)**

97.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

98.     Defendant made fraudulent misrepresentations to Plaintiff and members of the Class regarding the Products, specifically that the Products were of a particular quality, when in reality the Products are not of the quality represented, and are instead sold at a price premium.

Defendant induces consumers, including Plaintiff and the proposed Class, to purchase its Products at this premium by fraudulently misrepresenting to them the overall quality of its Products, including but not limited to the computer's countless hardware specifications, Lenovo's own drivers for controlling and leveraging that hardware which dictates real-world performance, the Products' build quality, software quality, stability, and reliability, and the Products' longevity.

99.     Defendant had a duty to disclose material facts to Plaintiff and the Class because numerous attributes of the Products' overall quality are knowledge available solely to Defendant, and Defendant made affirmative misrepresentations regarding the overall quality of the Products.

100.     Defendant knew or should have known that the Products were not of the quality represented by Lenovo's List Price or Estimated Value, but they nonetheless continued to manufacture and advertise the Products as such.  Plaintiff and the Class purchased the Products believing that the List Price or Estimated Value was representative of the Products' actual overall quality, as Lenovo expressly, repeatedly, and loudly represented.

101.     Lenovo failed to discharge its duty to disclose these material facts, and it affirmatively and falsely represented the List Price or Estimated Value of the Products as representative of their actual quality.

102.     In so misrepresenting these material facts to Plaintiff and the Class, Defendant intended to induce Plaintiff and the Class to believe that they were purchasing Products of significantly greater quality, and thus acted with scienter and/or an intent to defraud.

103.     Plaintiff and the Class reasonably relied on Defendant's misrepresentations insofar as they would not have purchased the Products manufactured and sold by Defendant had the truth about Defendant's representations been known or would have purchased them or comparable or higher quality products from other manufacturers at a lower price elsewhere.

104.     Even if Plaintiff's injury does not meet the standard for injury set out under the New York GBL (although Plaintiff maintains that it does), it is inescapable that Plaintiff has adequately pled a legally cognizable economic injury that is fairly traceable to Defendant's fraudulent misrepresentations.  March 28, 2023 Opinion and Order (ECF No. 33) ("MTD Order") at 14–18.

105.     As a direct and proximate cause of Defendant's fraudulent representations and concealment, Plaintiff and the Class suffered damages in an amount to be proven at trial.

106.     As a result of Defendant's willful and malicious conduct, punitive damages are warranted.

### COUNT IV
**Unjust Enrichment**
**(In the Alternative to Counts I–III and on Behalf of the Class)**

107.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

108.     At all times relevant hereto, Lenovo designed, manufactured, produced, promoted, marketed and sold the Products.

109.     Plaintiff and the other members of the Class conferred benefits on Lenovo by purchasing the Products based on Defendant's representations of List Price or Estimated Value.

110.     Plaintiff has Article III standing, which means that Plaintiff has plausibly pled that he (1) suffered an injury in fact, (2) that is plausibly traceable to Defendant's conduct, and (3) is redressable by a favorable judicial opinion.  *See* MTD Order at 14–17.  If Plaintiff cannot recover under the New York GBL or for his claim for fraud, then this case represents the "unusual situation[] when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." MTD Order at 28 (citing *Parks, LLC*, 377 F. Supp. 3d at 248).

111.    Lenovo received the benefits to the detriment of Plaintiff and the other members of the Class because Plaintiff and the other members of the Class purchased Products at a price premium due to Defendant's deliberate misrepresentations, and the Products are not what they bargained for or of the quality Defendant represents.

112.    Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiff and the other members of the Class. Retention of those monies under these circumstances is unjust and inequitable because Defendant's representations regarding the overall quality of the Products was misleading to consumers, which caused injuries to Plaintiff and the other members of the Class, because they would have not purchased the Products had they known the true facts or would have purchased them or different manufacturers' Products for a lower price elsewhere.

113.    Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and the other members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and the other members of the Class for its unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated members of the Class, prays for relief and judgment, including entry of an order, as follows:

(a) Declaring that this action is properly maintained as a class action, certifying the proposed Class, appointing Plaintiff as Class Representative and appointing Plaintiff's counsel as Class Counsel;

(b) Directing that Defendant bear the costs of any notice sent to the Class;

(c) Ordering Defendant to pay restitution to Plaintiff and the Class;

(d) A jury trial and damages according to proof;

(e) Awarding actual damages to Plaintiff and the Class;

(f) Awarding Plaintiff and members of the Class statutory damages, as provided by the applicable state consumer protection statutes invoked above;

(g) Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class;

(h) Civil penalties, prejudgment interest and punitive damages as permitted by law; and

(i) Ordering such other and further relief as the Court deems just and proper.

<u>**JURY TRIAL DEMAND**</u>

Plaintiff hereby demands a jury trial of the claims asserted in this Class Action Complaint.

Dated: April 18, 2023                                  Respectfully submitted,

By:    /s/ Russell Busch
Russell Busch (6329500)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
405 E 50th Street
New York, NY 10022
Tel: (630) 796-0903
rbusch@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Nick Suciu III*
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
nsuciu@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Trenton R. Kashima*
401 West C St., Suite 1760
San Diego, CA 92101
Tel: (714) 651-8845
tkashima@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Zoe T. Aaron
405 E 50th Street
New York, NY 10022
Tel: (630) 796-0903
zaaron@milberg.com


* *Pro Hac Vice* application forthcoming

*Attorneys for Plaintiff and the Proposed
Class*