## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

ANTHONY HAM,
individually and on behalf of all others
similarly situated,

     Plaintiff,

v.

LENOVO (UNITED STATES) INC.,

    Defendant.

Case No. 1:22-CV-005131-ALC

## PLAINTIFF'S OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS
## PLAINTIFF'S FIRST AMENDED COMPLAINT

Russell Busch
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
405 East 50th Street
New York, NY 10022
Tel:   (630) 796-0903
Email: rbusch@milberg.com

Nick Suciu III
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel:   (313) 303-3472
Email: nsuciu@milberg.com

Dated: July 3, 2023

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

LEGAL STANDARD ......................................................................................... 5

ARGUMENT ...................................................................................................... 6

   I.     Plaintiff Has Clearly Pled an Injury Caused by Lenovo ........................... 6

      A.    Plaintiff Has Sufficiently Alleged Injury ............................................. 6

          1.   Plaintiff Did Not Receive the Benefit of the Bargain ..................... 7

          2.   Plaintiff Paid a Price Premium Because of Defendant's Fictitious Pricing ... 10

          3.   Plaintiff Adequately Alleged Injury as to His Fraud Claim .......................... 14

      B.    Plaintiff Has Sufficiently Alleged That Lenovo Caused His Injury ................... 14

  II.    Plaintiff's Fraud Claims Are Sufficiently Pled ........................................... 15

 III.   Plaintiff's Unjust Enrichment Claim Should Survive Dismissal ................................ 18

      A.    Defendant Has Been Unjustly Enriched .............................................. 18

      B.    Plaintiff's Unjust Enrichment Claim is Not Duplicative ........................................ 19

  IV.   Waiver of Punitive Damages for Defendant's Willful Misconduct Would Violate Public Policy ....................................................................................................... 20

   V.    Plaintiff Has Article III Standing ............................................................... 21

      A.    Plaintiff Has (Still) Alleged an Injury-in-Fact .................................... 21

      B.    Plaintiff Has Standing to Represent Proposed Class Members for All Computer Products Subjected to Defendant's Fictitious Pricing Scheme ............ 22

      C.    Plaintiff May Be Injured Again and Therefore Has Standing for Injunctive Relief ...................................................................................................... 23

CONCLUSION .................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Ackerman v. Coca–Cola Co.*,
    09–CV–395, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ............................................ 23, 24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................ 6

*Belfiore v. Procter & Gamble Co.*,
    94 F. Supp. 3d 440 (E.D.N.Y. 2015) .................................................................................... 24

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................ 5

*Brown v. Kellogg Sales Co.*,
    2022 WL 992627 (S.D.N.Y. Mar. 31, 2022) .......................................................................... 6

*Buonasera v. Honest Co., Inc.*,
    208 F.Supp.3d 555 (S.D.N.Y. 2016) .................................................................................... 23

*Cannon v. Ashburn Corp.*,
    No. 16-CV-1452 (RMB)(AMD), 2016 WL 7130913 (D.N.J. Dec. 7, 2016) ........................ 10

*Casey v. Odwalla, Inc.*,
    338 F.Supp.3d 284 (S.D.N.Y. 2018) ...................................................................................... 5

*Colpitts v. Blue Diamond Growers*,
    527 F. Supp. 3d 562 (S.D.N.Y. 2021) ............................................................................ 11, 21

*Computech Intern., Inc. v. Compaq Computer Corp.*,
    No. 02-CV-2628 (RWS), 2004 WL 1126320 (S.D.N.Y. May 21, 2004) ........................ 16, 17

*DiCicco v. PVH Corp.*,
    No. 19-CV-11092 (ER), 2020 WL 5237250 (S.D.N.Y. Sept. 2, 2020) ................................. 10

*Dupree v. Giugliano*,
    20 N.Y.3d 921 (2012) ........................................................................................................... 21

*Duran v. Henkel of Am., Inc.*,
    450 F. Supp. 3d 337 (S.D.N.Y. 2020) .................................................................................. 11

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
    387 F.Supp.2d 265 (S.D.N.Y. 2004) .................................................................................... 16

*Fishon v. Peloton Interactive, Inc.*,
　620 F. Supp. 3d 80 (S.D.N.Y. 2022) ............................................................ 11, 14

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
　317 F.R.D. 374 (S.D.N.Y. 2016) ......................................................................... 24

*Great W. Ins. Co. v. Graham*,
　No. 18-CV-6249 (VSB), 2020 WL 3415026 (S.D.N.Y. June 22, 2020) ............................. 19

*Gross v. Sweet*,
　49 N.Y.2d 102 (1979) ....................................................................................... 20

*Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*,
　148 F. Supp. 3d 285 (S.D.N.Y. 2015) ................................................................... 9

*Hinojos v. Kohl's Corp.*,
　718 F.3d 1098 (9th Cir. 2013) ............................................................... 12, 13, 18

*In re MPM Silicones, L.L.C.*,
　596 B.R. 416 (S.D.N.Y. 2019) ............................................................................. 5

*Kalisch–Jarcho, Inc. v. City of N.Y.*,
　58 N.Y.2d 377 (1983) ....................................................................................... 20

*McCarthy v. Dun & Bradstreet Corp.*,
　482 F.3d 184 (2d Cir. 2007) ........................................................................... 6, 9

*McNulty v. Polar Corp.*,
　2020 WL 5658667 (S.D.N.Y. Sept. 23, 2020) ....................................................... 11

*Mikell v. Cutting Edge Elite Inc.*,
　No. 15-CV-7273, 2016 WL 5415095 (S.D.N.Y. Sept. 28, 2016) .................................. 6

*Morgan Stanley & Co. Inc. v. Peak Ridge Master SPC Ltd.*,
　930 F. Supp. 2d 532 (S.D.N.Y. Mar. 15, 2013) ..................................................... 20

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*,
　537 F.3d 168 (2d Cir. 2008) .............................................................................. 20

*Newton v. Kraft Heinz Foods Co.*,
　No. 16 Civ. 04578 (RJD)(RLM), 2018 WL 11235517 (E.D.N.Y. Dec. 18, 2018) ............. 9

*Prozeralik v. Cap. Cities Commc'ns, Inc.*,
　82 N.Y.2d 466, 626 N.E.2d 34 (1993) ................................................................ 21

*Rivera v. S.C. Johnson & Son, Inc.*,
　No. 20-CV-3588 (RA), 2021 WL 4392300 (S.D.N.Y. Sept. 24, 2021) ......................... 22

*Robey v. PVH Corp.*,
  495 F. Supp. 3d 311 (S.D.N.Y. 2020).......................................................................... 10

*Rodriguez v. Hanesbrands Inc.*,
  No. 17 Civ. 1612 (DLI) (RLM), 2018 WL 2078116 (E.D.N.Y. Feb. 20, 2018) .................. 11

*Rodriguez v. Hanesbrands Inc.*,
  No. 17-CV-1612 (DLI), 2018 WL 2078116 (E.D.N.Y. Feb. 20, 2018) ........................... 7, 14

*S.E.C. v. Lyon*,
  529 F.Supp.2d 444 (S.D.N.Y. 2008)............................................................................. 6

*Stuve v. Kraft Heinz Co.*,
  No. 21-CV-1845, 2023 U.S. Dist. LEXIS 6184 (N.D. Ill. Jan. 12, 2023) ............................ 19

*Wallach Marine Corp. v. Donzi Marine Corp.*,
  675 F.Supp. 838 (S.D.N.Y.1987)................................................................................. 16

*Warner v. Starkist Co.*,
  No. 1:18-cv-406 (GLS/ATB), 2019 WL 1332573 (N.D.N.Y. Mar. 25, 2019)...................... 19

*Weisblum v. Prophase Labs, Inc.*,
  88 F.Supp.3d 283 (S.D.N.Y. 2015).............................................................................. 16

**Other Authorities**

*Dash v. Seagate Tech. (US) Holdings, Inc.*, 2015 WL 1537543 (E.D.N.Y. Apr. 1, 2015) .......... 17

David Adam Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921, 983 n6 (2016)
  ................................................................................................................................ 3

Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*,
  11 J. of Pub. Pol'y & Mktg. 52, 55 (Spring 1992) ........................................................ 12, 18

Larry D. Compeau et al., Comparative Price Advertising: Believe It or Not, 36 J. CONSUMER
  AFF. 284, 284 (2002).................................................................................................. 3

**Statues, Rules, and Regulations**

16 C.F.R. § 233 ................................................................................................................ 2
16 C.F.R. § 233.1 (a).......................................................................................................... 17
16 C.F.R. § 233.1(b)........................................................................................................... 2, 17
16 C.F.R. § 233.3(a)........................................................................................................... 2, 17
Fed. R. Civ. Pro. 9(b)......................................................................................................... 17

Plaintiff Anthony Ham ("Plaintiff") respectfully submits this Opposition to Defendant Lenovo (United States) Inc.'s ("Lenovo" or "Defendant") Motion to Dismiss (ECF No. 38) (the "Motion" or "MTD") Plaintiff's First Amended Complaint (ECF No. 34) ("FAC"). For the reasons set forth below, Defendant's motion is without merit and should be denied.

## INTRODUCTION

Plaintiff brought this case to address the blatant, widespread, and unmitigated fraudulent practices Defendant Lenovo has perpetrated for years with impunity. Lenovo's scheme starts by concocting fictitious Purported Values for its Products, at different times called "Web Price" or "Estimated Value." These Purported Values are not based on current prices in the market, historic prices, or any other metric at all. Instead, they are fabricated from whole cloth with deliberate intent to induce consumers like Plaintiff to believe these Purported Values are representative of the overall quality of the Products. In other words, when Lenovo claims a Product has a Purported Value of $3,000, consumers will naturally tend to believe that Product is closer in overall quality to, say, a $3,000 Macbook from Lenovo competitor Apple. Lenovo then offers the Products for sale at a price significantly lower than the Purported Value because, in reality, their Products are worth significantly less.

Critically, a direct comparison of computer specifications would be impossible. Lenovo computers come with a variety of AMD or Intel processors whereas Macbooks, for example, come with Apple's proprietary processing units. FAC ¶ 35. Even seemingly comparable specifications like RAM or hard disk space fail to provide clarity. *Id.* ¶ 36. With fundamentally different operating systems, overall performance (what consumers *actually* care about) can vary significantly with identical hardware. *Id.* Premium manufacturers provide a higher quality end-product, even with the same hardware specifications, and are able to demand higher retail prices

forr their products due to their superior overall quality. There is no way for a reasonable consumer to compare an apple to an orange without guidance from computer manufacturers in the form of a price point indicating the product's overall quality. *Id.* ¶ 37. Thus, unlike with simpler consumer goods, the purported dollar value of a computer constitutes an express, qualitative representation of the Product's overall quality.

As the largest and most successful computer manufacturer in the world, Lenovo understands this. This is why Lenovo fabricates its fraudulent Purported Values and prominently displays them next to every one of the Products, with an actual Sale Price as much as 65% lower. FAC ¶ 29. In reality, Purported Values serve only to mislead consumers as to the overall quality of the Products. FAC ¶ 13. As a result, Lenovo benefits from charging final advertised prices that are often *higher* than the same or similar models elsewhere. FAC ¶ 44.  Lenovo's scheme has its intended effect—customers rely on the company's inflated quality in purchasing their Products. Lenovo, a multi-national corporate giant with more than $70 billion in annual revenue, has padded its bottom line with this scheme for years. FAC ¶ 2.

Defendant's scheme is not novel. Federal regulations implicate and prohibit precisely the kind of fictitious pricing employed by Lenovo because it is deceptive and because it successfully dupes consumers. When a retailer utilizes price comparisons, the list price must be the "actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time." *See generally* 16 C.F.R. § 233 (FTC Rules against deceptive pricing). Advertised 'original prices,' 'estimated values,' or any derivation thereof must be "in the recent, regular course of his business, honestly and in good faith—and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based." 16 C.F.R. § 233.1(b) (emphasis added); *see also* 16 C.F.R. § 233.3 subd. (a) ("To the extent that list or

suggested retail prices do not in fact correspond to prices at which a substantial number of sales of the article in question are made, the advertisement of a reduction may mislead the consumer.").

The FTC enforced the laws against fictitious pricing until the late 1960s, and "[t]he last standalone FTC mention of 'fictitious' pricing appeared in an order on December 31, 1970, a follow-through of a holdover complaint filed in 1969." David Adam Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921, 983 n6 (2016). Under political pressure, the agency ceased enforcing these laws and continues to ignore fictitious pricing schemes to this day. *Id.* Unsurprisingly, fraudulent pricing has since flourished, and has grown more brazen over time. Predictably, the practice has proliferated in virtually every industry, harming consumers and markets enormously in the aggregate.[1]

Defendant, however, took this lucrative fraudulent charade too far. Lenovo's fraudulent pricing long ago pushed past merely duping "[d]isappointed bargain-hunters," Def.'s MTD at 1, as classic fictitious pricing schemes did, and Lenovo's attempt to paint this case in that light should be given short shrift. Instead, the Court should recognize Lenovo's fraudulent pricing scheme for what it is—a widespread, sustained campaign taking advantage of the sheer complexity of computers and Lenovo's asymmetric understanding of its Products' overall quality and value by fraudulently misrepresenting the overall quality of its Products to consumers. *See* FAC ¶¶ 17–12.

Plaintiff and proposed Class Members did not receive the benefit of their bargain—consumers bargain for Products of one particular overall quality, but Lenovo provides Products of another, lower overall quality and is able to do so because of its fraudulent practices. Lenovo also

---

[1] *See* Larry D. Compeau et al., Comparative Price Advertising: Believe It or Not, 36 J. CONSUMER AFF. 284, 284 (2002) ("Advertisers' attempts to enhance consumers' perceptions of the value of a deal by using comparative price advertisements, in which they . . . compare the selling price to some suggested reference price, is widespread . . . . [A] crucial issue concerns the deceptive power of comparative price advertising that provides inflated and exaggerated reference prices.").

extracts a price premium on its Products due to its wanton, open, and systematic fraud. These injuries are the essence of false advertising claims under the New York General Business Law (the "NY GBL" or "GBL") and common law fraud, and they should not be confused with Defendant's straw man "disappointed bargain-hunters" theory.

Defendant Lenovo employs a flurry of legal arguments in an attempt to escape liability, and the Court should reject them all. First, Defendant argues Plaintiff suffered no injury, Def.'s MTD at 6–11, but Plaintiff suffered two well-established legally cognizable injuries: he did not receive the benefit of his bargain with Lenovo, FAC ¶¶ 61–62, and he paid a price premium for his Product due to Defendant's fraudulent representations. FAC ¶¶ 63–64. Defendant also argues that Plaintiff failed to allege Lenovo caused his injury. This argument fails for the same reason it failed the first time around—Plaintiff's Complaint is rife with fulsome allegations of causation.

Second, Defendant argues Plaintiff's fraud claims are barred by the economic loss doctrine, and that Plaintiff has not pled fraudulent intent.  Def.'s MTD at 11. The economic loss doctrine does not bar Plaintiff's claims here because Defendant willfully defrauded Plaintiff. And Plaintiff more than adequately alleges Defendant's fraudulent intent in its scheme to fabricate and advertise its fictitious prices. FAC ¶ 44 ("Lenovo knows its policy has this effect, and, in fact, Lenovo *intends* for this deleterious effect on consumers . . . [as] evidenced by the fact that the company fabricates its 'Estimated Value' and List Prices out of whole cloth, and at consistently inflated numbers"); *see also id.* ¶¶ 4–5, 9–16, 37–39.

Third, Defendant argues Plaintiff's Unjust Enrichment claim fails because "he has not pled that Lenovo was unjustly enriched." Def.'s MTD at 13. But Plaintiff has adequately pled each element of unjust enrichment. And while the Court dismissed Plaintiff's unjust enrichment claim in its initial MTD Order for the distinct reason that it found the claim to be duplicative of his GBL

claim, Your Honor should reconsider this conclusion. If the Court finds that Plaintiff has not met the heightened standards under the GBL, Plaintiff's unjust enrichment claim pled in the alternative is emphatically not duplicative.

And finally, Defendant Lenovo argues that Plaintiff lacks standing generally because "Plaintiff has not suffered an injury-in-fact," and that he lacks standing specifically for claims involving Products he did not specifically purchase. As the Court acknowledged, however, and as Plaintiff argued at length both above and in his first Opposition to Defendant's Motion to Dismiss, Plaintiff *did* plead a legally cognizable injury caused by Lenovo. Furthermore, Plaintiff has standing to bring his claims on behalf of <u>all similarly situated consumers</u>. Plaintiff concedes potential claims for peripheral devices, such as monitors and cables, but the Court has already agreed with Plaintiff "that the laptop Products are largely similar; therefore, at this stage of the litigation, the Court will deny Defendant's motion on this basis." MTD Order at 18. The Court should do the same for all desktop and server Products. Any small variations between these categories of computer have nothing to do with the claims at issue in this case.

## <u>LEGAL STANDARD</u>

When a defendant seeks to dismiss a complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court "must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor." *In re MPM Silicones, L.L.C.*, 596 B.R. 416, 427 (S.D.N.Y. 2019); *see also Casey v. Odwalla, Inc.*, 338 F.Supp.3d 284, 291 (S.D.N.Y. 2018). A complaint will survive a Rule 12(b)(6) motion so long as it articulates "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Because all allegations "are accepted as true, and all reasonable inferences are drawn in plaintiffs' favor," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *S.E.C. v. Lyon*, 529 F.Supp.2d 444, 449 (S.D.N.Y. 2008), and because the Court's task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof," *Mikell v. Cutting Edge Elite Inc.*, No. 15-CV-7273, 2016 WL 5415095 at *1 (S.D.N.Y. Sept. 28, 2016) (internal citations omitted), proffering evidence beyond a plaintiff's pleading is only appropriate for jurisdictional issues. *Brown v. Kellogg Sales Co.*, 2022 WL 992627, at *2 (S.D.N.Y. Mar. 31, 2022). As Your Honor has noted, however, "the Court may not rely on conclusory or hearsay statements contained in the affidavits." *Id.*

## ARGUMENT

### I.   Plaintiff Has Clearly Pled an Injury Caused by Lenovo

#### A.  Plaintiff Has Sufficiently Alleged Injury

Virtually the entirety of Defendant's Motion rests on its position that Plaintiff "has not been injured." *See, e.g.,* Def.'s MTD at 1. In its first MTD Order, the Court half agreed. While the Court found that Plaintiff alleged injury sufficient to support Article III standing, March Order at 14–17, it also held that Plaintiff did not meet the higher injury standard required by the NY GBL, *id.* at 21, or to sustain a claim for fraud, *id.* at 27. The Court granted Plaintiff leave to amend his Complaint to address his pleading deficiencies, and the Amended Complaint filed April 18, 2023 makes clear that Plaintiff and the proposed Class suffered cognizable injuries sufficient to sustain his claims. Plaintiff suffered injuries under two well-established theories of cognizable injury, discussed below, and *neither* theory relies on the straw man "disappointed bargain-hunter" theory Defendant imputes to Plaintiff's claims.

### 1.   *Plaintiff Did Not Receive the Benefit of the Bargain*

Plaintiff has pled injury from failing to receive the benefit of his bargain with Lenovo. A benefit of the bargain theory of injury sufficient to sustain claims under the GBL and for common law fraud occurs where the "plaintiff did not receive the product [they] bargained for." *Rodriguez v. Hanesbrands Inc.*, No. 17-CV-1612 (DLI), 2018 WL 2078116, at *4 (E.D.N.Y. Feb. 20, 2018), *report and recommendation adopted*, No. 17 Civ. 1612 (DLI) (RLM), 2018 WL 1686105 (E.D.N.Y. Mar. 30, 2018). The *Rodriguez* court found injury in fact sufficient to support claims under the GBL and for common law fraud because the plaintiffs "expressly allege[d] that the [p]roducts plaintiffs purchased had considerably less value than was warranted by defendant." *Id.* at *5 (internal quotations and citations omitted). This is precisely what Plaintiff alleged here. *See, e.g.,* FAC ¶¶ 16 ("The reality is that Lenovo's Products' actual value and quality are much lower than advertised."), 61–62 ("Defendant misled Plaintiff into believing that . . . he was receiving a Product of overall quality reflected in the device's List Price").

As it did in its first Motion to Dismiss, Lenovo once again mischaracterizes Plaintiff's theory of injury, incorrectly claiming it is "based solely on a theory that d+efendant's misrepresentation deprived the plaintiff of an opportunity to make a better-informed choice" and thus constitutes pleading "deception as injury." Def.'s MTD at 6. Rather, as detailed in Plaintiff's Complaint, computers are a special category of consumer goods too complex for consumers to evaluate holistically based on countless narrow specifications:

> Numerous factors affect the quality and overall value of different computer models, and reasonable consumers are not technologically literate enough to consider all of these factors together, including but not limited to: CPU processing speed, CPU cache size, the number of physical CPU cores, the number of virtual CPU cores, CPU power usage, CPU lifespan, RAM capacity, RAM cache size, RAM speed, RAM lifespan, hard drive capacity, hard drive speed, hard drive lifespan, whether a graphics card is integrated or discrete, the size, memory, clock rate, or bandwidth of the graphics card, screen resolution, screen brightness, screen power usage, how

many and what kinds of ports the computer has, the wireless card's bandwidth and range, the amount of time a computer will last on battery, the lifespan of the computer's battery, and the computer's operating system.

FAC ¶ 7. Furthermore, as Plaintiff's Amended Complaint makes clear:

> [E]ven if a particularly tech-savvy consumer with the time and wherewithal to research all of these components and their various specifications put in the work, it would not be enough to tell them all they needed to know about the actual quality, performance, capability, reliability, or longevity of the Products—the attributes that actually matter to consumers. This is because software matters just as much as the hardware it runs on, and the exact same processor in two different machines manufactured by two different companies might have wildly different real-world performance. Drivers (the software that harnesses and controls computers' hardware) created by one manufacturer may make identical hardware more or less performant, stable, reliable, customizable, and/or long-lasting than drivers offered by a competitor on its own products. . . Inescapably, representations like Defendant's about the Estimated Value of their computers are actually **qualitative statements about the overall quality, performance, capability, reliability, and longevity of the Products**, and Lenovo purposefully induce consumers to believe its price representations are commensurate with the Products' actual quality."

*Id.* ¶¶ 10, 12.

In the Court's initial MTD Order, Your Honor noted that the sheer number of computer specifications can be "overwhelming." March 28, 2023 Order (ECF No. 33) at 24. Above and beyond "overwhelming," however, a fulsome evaluation of a computer's overall quality is not possible for the typical consumer. While some attributes are available to consumers, as the Court noted, *id.*, the full picture of a computer's overall quality is only available to the manufacturer:

> Raw numbers, however, do not tell the whole story. Identical processors in two different computers built by two different manufacturers with two different sets of drivers can offer very different real-world performance. Moreover, many components are not comparable apples-to-apple. Defendant's Products, for instance, can come with Intel or AMD processors, which are not readily compared. One processor may offer higher clock speeds but less power efficiency, or similar clock speeds and more processing cores, or better caching. Furthermore, consumers looking to compare Defendant's Products with the actual computers that sell for Lenovo's lofty $3,000+ Estimated Values: Apple's MacBook Pro series, are manufactured proprietarily by Apple and have *entirely different* processor architecture (ARM instead of x86) and thus frustrate consumer comparison even more.

FAC ¶ 35. Furthermore:

> Beyond hardware, computers have numerous attributes that cannot be captured on a specification sheet but matter quite a bit to consumers. User experience differs across manufacturers' computers, with some computers offering greater features, more seamless user interfaces, greater OS stability, fewer firmware bugs, and more. None of these attributes are readily available, and indeed many—including the durability and longevity of a computer—are not readily apparent until well after the point-of-sale. It is impossible for tech-savvy consumers, much less the average consumer, to make heads or tails of this themselves. They *must* rely on representations like Lenovo's List Price to help evaluate the overall quality of the Products.

FAC ¶¶ 36–37. All of these attributes, the discernable and indiscernible, come together to define what consumers actually care about: the Products' overall "actual quality, performance, capability, reliability, or longevity." *Id.* ¶ 10. A spec sheet cannot tell that story, but Lenovo knows a clear, direct representation of the Products' overall value will.

Plaintiff has, at a minimum, raised a question of fact as to whether consumers must reasonably rely on manufacturers' price or value representations to ascertain the quality and value of computers, and that question of fact is not appropriate for resolution on a motion to dismiss. *See Newton v. Kraft Heinz Foods Co.*, No. 16 Civ. 04578 (RJD)(RLM), 2018 WL 11235517, at *3 (E.D.N.Y. Dec. 18, 2018) ("[T]he reasonable consumer test is a fact-based inquiry that cannot be resolved in a Rule 12(b)(6) motion."); *Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015) ("[U]sually [the reasonable consumer] determination is a question of fact."); *see also McCarthy*, 482 F.3d at 191 (2d Cir. 2007) (on a MTD, "all reasonable inferences are drawn in plaintiffs' favor"). If, as Plaintiff contends, a reasonable consumer interprets representations like Lenovo's Purported Value as "qualitative statements about the overall quality, performance, capability, reliability, and longevity of the Products," then Defendant has made false representations about the "overall quality, performance, capability, reliability, and longevity" of the Products, a quintessential 'benefit of the bargain' injury.

In the March Order, Your Honor emphasized that "the Court is not bound by *Cannon*." March Order at 23. Plaintiff agrees, and offers it here solely to illustrate what other courts in this District have taken away from it—where consumers cannot independently holistically evaluate products but must instead rely on manufacturers' representations regarding the overall value of the products, those representations regarding overall value constitute qualitative representations that form the basis of a "benefit of the bargain" injury. *DiCicco v. PVH Corp.*, No. 19-CV-11092 (ER), 2020 WL 5237250, at *7 (S.D.N.Y. Sept. 2, 2020) (acknowledging where consumers must rely on the merchant's representations of the products' overall quality and value, misrepresentations deprive consumers of the benefit of the bargain); *Robey v. PVH Corp.*, 495 F. Supp. 3d 311, 320–21 (S.D.N.Y. 2020) (same); *see also Cannon v. Ashburn Corp.*, No. 16-CV-1452 (RMB)(AMD), 2016 WL 7130913, at *7 (D.N.J. Dec. 7, 2016) ("Under the benefit-of-the-bargain theory, [p]laintiffs are required to show nothing more than that the consumer was misled into buying a product that was ultimately worth less to the consumer than the product he was promised.").

### 2. *Plaintiff Paid a Price Premium Because of Defendant's Fictitious Pricing*

Plaintiff and the proposed Class were injured in a second, distinct way. Defendant charged Plaintiff and the proposed Class a price premium for the Products, and Defendant induced them to pay that price premium with its fraudulent misrepresentations. By fabricating a significantly inflated Purported Value (*e.g.* $1,729 for Plaintiff Ham's T495), Lenovo surreptitiously boosts consumer perception of the overall quality of its Products. FAC ¶¶ 1, 6–7, 13–16, 61–65. Thus, Lenovo can charge an inflated price (*e.g.* $969 for Plaintiff Ham's T495) and consumers pay that price in reliance on Lenovo's fraudulent misrepresentations. FAC ¶¶ 1, 7, 13, 17, 63–64. But for Lenovo's fraudulent misrepresentations, consumers would not be willing to pay the Products' sale price and would instead buy the Product or a comparable one elsewhere for less. FAC ¶¶ 17, 64.

Defendant argues that Plaintiff fails to allege a price premium injury by selectively quoting the caselaw and mischaracterizing the applicable standard. While Defendant states that "[a] price premium injury is plausibly alleged when a plaintiff alleges that a company marketed a product as having a 'unique quality,'" Def.'s MTD at 7 (citing *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 350-51 (S.D.N.Y. 2020)), this cherry-picked quote omits the preceding language in the *Duran* opinion: "[a price premium injury] ***often*** takes the following form." *Duran*, 450 F. Supp. 3d at 350 (emphasis added). In other words, *Duran* was opining on one form of price premium injury commonly entertained by courts, *not* stating that all price premium injuries take this form.

Broadly, "[a]llegations that a product had significantly less value than it warranted constitute a classic price premium theory of injury that is plausible and cognizable." *Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80, 94 (S.D.N.Y. 2022) (citing *McNulty v. Polar Corp.*, 2020 WL 5658667, at *5 (S.D.N.Y. Sept. 23, 2020)). That is *precisely* what Plaintiff has alleged here. FAC ¶ 16 ("The reality is that Lenovo's Products' actual value and quality are much lower than advertised."). Indeed, even less is required than what Plaintiff has pled here. "Numerous courts in this Circuit have found sufficient a plaintiff's general allegation that she would not have paid a price premium but for the defendant's misrepresentations." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 578 (S.D.N.Y. 2021) (citing *Rodriguez v. Hanesbrands Inc.*, No. 17 Civ. 1612 (DLI) (RLM), 2018 WL 2078116, at *5 (E.D.N.Y. Feb. 20, 2018)); *see also Rodriguez*, 2018 WL 2078116 at *5 (collecting cases). This standard is resoundingly met here. *See* FAC ¶¶ 17 ("Had Plaintiffs and members of the Class known that the List Prices on Lenovo.com were fabricated . . . they would not have purchased their Products from Lenovo.com, would have purchased them elsewhere, or may have purchased a PC or Apple computer from a different manufacturer entirely."), 64 ("Had Plaintiff known the true nature of Defendant's pricing, that the

Product was actually of substantially lesser quality than Lenovo represented, he would have . . . purchased the Product elsewhere for less or would have purchased a comparable or even higher quality PC from a different manufacturer entirely, for a similar or even lower price.").

Plaintiff's theory of injury is supported by findings in economic science, which other courts have recognized as relevant to the question of economic injury. *See, e.g., Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (overturning dismissal and holding that "when a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, . . . he has suffered an economic injury.").[2] Defendant's limiting conception of price premium injury "ignores the fact that, to other consumers, a product's 'regular' or 'original' price matters; it provides important information about the product's worth and the prestige that ownership of that product conveys. *Id.* at 1105–06 (citing Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. of Pub. Pol'y & Mktg. 52, 55 (Spring 1992) (the "Dhruv Paper")). As sophisticated actors like Lenovo understand, "the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product," and "empirical studies indicate that as discount size increases, consumers' perceptions of value and their willingness to buy the product increase." *Hinojos*, 718 F.3d at 1106 (citing the Dhruv Paper). "Misinformation about a product's 'normal' price is, therefore, significant to many consumers in the same way as a false product label would be." *Id.*

Defendant also mischaracterizes price premium theories of injury as requiring a manifest defect or "lesser craftsmanship compared to the Lenovo computers that were sold at other retailers."

---

[2] While *Hinojos* is a 9th Circuit case with claims under California consumer protection law, its reasoning is highly relevant and should be persuasive to the Court because it dealt with what constitutes economic injury and fits the requirements of price premium theories of injury, which Plaintiff alleges here.

Def.'s MTD at 8. This is not a requirement for cognizable injury, which is why, for example, "falsely labeling a watch as a Rolex would be an actionable misrepresentation even if the watch was a functional equivalent of a Rolex." *Hinojos*, 718 F.3d at 1106 (internal quotations and citations omitted).

Finally, Defendant characterizes this price premium theory as a "repackaged version of his allegation that he did not receive as much of a 'discount' as he had hoped," and claims that he "now asserts that he paid a 'price premium' because he believed he was receiving a Laptop worth the overall quality of $1,729 when he agreed to pay $969 to buy his Laptop." Def.'s MTD at 8. This is doubly wrong. First, although Defendant has consistently painted this straw man, Plaintiff's theory of injury was *never* that "he did not receive as much of a discount as he had hoped." Pl.'s Opp'n (ECF No. 25) at 5–6 ("Plaintiff's claims do not arise from 'disappointed bargain-hunting' but from Lenovo's material misrepresentations of the Product's actual quality and value"). Second, Plaintiff's price premium theory goes beyond Defendant's characterization that "he believed he was receiving a Laptop worth the overall quality of $1,729." Def.'s MTD at 8. To state Plaintiff's claim in full: Consumers care less about individual specifications (nor can they track and assess them all holistically within the context of a complete product) than they care about the overall quality, performance, reliability, stability, longevity of computers. FAC ¶¶ 10–11, 36. Consumers cannot evaluate these criteria in computers themselves. FAC ¶¶ 13, 38. Lenovo, through its fictitious pricing, represented to Plaintiff that he was getting a computer with the overall quality, performance, reliability, stability, longevity, and other objective and holistic attributes of computers in the market priced in the range of $1,729. FAC ¶ 49. Why else would Lenovo systematically represent significantly inflated "Web Prices" or "Estimated Values" to consumers? *See Hinojos*, 718 F.3d at 1106 (citing the Dhruv Paper, which recounts the empirical evidence that

consumers interpret fictitious pricing misrepresentations as representations about the overall objective quality and value of products).  These economic findings are even more relevant where, as here, the products at issue are too complex for consumers to evaluate objectively without relying on manufacturers' representations about the products' overall value. FAC ¶¶ 7–13, 34–38.

### 3.  *Plaintiff Adequately Alleged Injury as to His Fraud Claim*

Arguing for dismissal of Plaintiff's fraud claim, Defendant once again incorrectly characterizes Plaintiff's claims as an "attempt[] to plead deception as injury." Def.'s MTD at 9. As detailed above, however, Plaintiff was injured (1) because he was deprived of the benefit of the bargain, and (2) because Defendant's fraudulent misrepresentations allowed it to charge a price premium. Both theories of injury are adequate to sustain a claim for fraud. *See, e.g. Rodriguez v. Hanesbrands Inc.*, No. 17-CV-1612 (DLI), 2018 WL 2078116, at *4 (E.D.N.Y. Feb. 20, 2018), *report and recommendation adopted*, No. 17 Civ. 1612 (DLI) (RLM), 2018 WL 1686105 (E.D.N.Y. Mar. 30, 2018) (finding injury under plaintiff's GBL and fraud claims where "plaintiff did not receive the product she bargained for," and dismissing the plaintiff's fraud claim for a different reason); *Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80, 94 (S.D.N.Y. 2022) (denying dismissal of claims for fraud based on a price premium theory of injury where the "product had significantly less value than it warranted").

### B.  **Plaintiff Has Sufficiently Alleged That Lenovo Caused His Injury**

As it did in its first Motion to Dismiss, Defendant once again argues that "Plaintiff also still fails to allege that any injury . . . was caused by Lenovo," relying again on *Zachmann v. Coleman Co*. As Plaintiff detailed in the parties' prior briefing, *Zachmann* is inapposite. Pl.'s Opp'n (ECF No. 25) at 11. And Defendant's argument doubly fails this time around because Plaintiff's Amended Complaint makes abundantly clear that Lenovo's fraud caused his injuries:

> Believing the List Price was a truthful representation of the Product's actual overall quality, and taking into account *inter alia* hardware specifications, build quality, driver performance, software, and user experience, Plaintiff was induced to buy his T495 for $969.

FAC ¶ 49.

Defendant then repeats another argument, that Plaintiff "could have exercised the 'Price Match' to obtain a lower price *if one was actually available*," Def.'s MTD at 10 (emphasis original), failing to address <u>either</u> of Plaintiff's theories of injury. As Plaintiff noted then, this argument has nothing to do with Plaintiff's benefit of the bargain theory of injury. Pl.'s Opp'n at 12. Regarding Plaintiff's price premium injury, Defendant's argument likewise fails because Defendant's Price Match <u>only works</u> on an identical or 'comparable' machine being sold for a lower price. Def.'s MTD at 3. This defeats Defendant's argument for two reasons. First, Defendant's fictitious pricing is *designed to obfuscate the overall quality and value of its Products*, intentionally obscuring what a "comparable" computer would be. FAC ¶¶ 15, 38–39, 44. Second, Plaintiff's injury was paying a price premium *for his Product*. Plaintiff and the proposed Class cannot reclaim the price premium they paid *for the Products they purchased* without Defendant acknowledging it charges a price premium—which Defendant indisputably does not intend to do.

## II.    <u>Plaintiff's Fraud Claims Are Sufficiently Pled</u>

Defendant challenges Plaintiff's fraudulent misrepresentation claim for two reasons, (1) it is barred by the economic loss doctrine; and (2) Plaintiff has not pled fraudulent intent. MTD at 11–12. But both of these arguments fail.

First, as Defendant notes, the economic loss doctrine generally "restricts plaintiffs who have suffered 'economic loss,' but not personal or property injury, to an action for the benefits of their bargain. If the damages suffered are of the type remedial in contract, a plaintiff may not recover in tort." *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F.Supp.2d 265, 277

(S.D.N.Y. 2004). The economic loss doctrine indisputably applies to claims that sound in negligence or strict liability. *See*, *e.g.*, *Computech Intern., Inc. v. Compaq Computer Corp.*, No. 02-CV-2628 (RWS), 2004 WL 1126320, at *10 (S.D.N.Y. May 21, 2004) (citing cases). Yet, courts often decline to apply the economic loss doctrine to intentional torts, including fraudulent misrepresentations. *See Weisblum v. Prophase Labs, Inc.*, 88 F.Supp.3d 283, 297–98 (S.D.N.Y. 2015); *accord EED Holdings*, 387 F.Supp.2d at 278; *Computech Intern., Int'l*, 2004 WL 1126320, at *10. For this reason alone, Plaintiff's fraud claims survive Defendant's challenge.

Yet, to the extent that Defendant claims that a tort claim cannot coexist with a contract claim, Defendant is also mistaken. MTD at 11. While Defendant seemly suggests the economic loss doctrine prohibits tort claims based on a breach of contract, it confuses two separate legal concepts. As courts in this district have noted, "[t]he economic loss doctrine should not be confused with the well established principle that, under New York law, a cause of action for fraud generally does not arise where the fraud alleged relates to a breach of contract." *Computech Intern., Int'l*, 2004 WL 1126320, at *11. But just because there is a governing contract, does not immunize a Defendant from a tort claim. Instead, if there is an affirmative misrepresentation, a tort claim may be maintained. *See id. citing Wallach Marine Corp. v. Donzi Marine Corp.*, 675 F.Supp. 838, 841 (S.D.N.Y.1987) (declining to dismiss a fraud claim where "there is an alleged affirmative misrepresentation independent of a breached contract term which distinguishes this pleading from those that simply reiterate a contract breach cast in terms of fraud").

Here, Defendant does not argue (and Plaintiff does not allege) that Defendant breached any particular contractual term. Instead, Plaintiff generally alleges that Defendant intentionally misrepresented the overall quality of Products on its website. *See generally* FAC. "[Defendant's] fraud claim does not arise out of a breach of contract and thus may not be deemed redundant."

*Computech Intern., Int'l*, 2004 WL 1126320, at *11 (finding that a misrepresentation regarding "nature of the relationship between the parties and that [the parties] would formalize discount pricing" was an actionable tort, despite an existing contractual agreement).

Second, Defendant claims that Plaintiff did not allege "fraudulent intent" with sufficient particularly. MTD at 11-12. However, Rule 9(b) specifically states that "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Pro. 9(b). And Defendant concedes that intent may be shown "by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." MTD at 11 *citing Dash v. Seagate Tech. (US) Holdings, Inc*., 2015 WL 1537543, at *2 (E.D.N.Y. Apr. 1, 2015). Here, Plaintiffs specifically allege that:

> Lenovo knows its policy has this effect and, in fact, Lenovo *intends* for this deleterious effect on consumers. This is evidenced by the fact that the company fabricates its "Estimated Value" and List Prices out of whole cloth, and at consistently inflated numbers. As a result, the company sells more of its Products directly, without retailers acting as middlemen, *and* it does so at a price premium.

FAC, ¶ 44. Such pricing schemes have been prohibited for years. There are FTC regulations that speak directly to this case. When a retailer utilizes price comparisons, the list price must be the "actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time." 16 C.F.R. § 233.1 (a) (emphasis added). Additionally, this price must have been used "in the recent, regular course of his business, honestly and in good faith—and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based." 16 C.F.R. § 233.1(b) (emphasis added); *see also* 16 C.F.R. § 233.3(a). Defendant's violation of clear and well-established standards, greatly inflating the list price of their computers, suggest "conscious misbehavior or recklessness."

Defendant's motivation in making such misrepresentations is readily apparent. As noted by

the Ninth Circuit in *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013), "[e]mpirical studies indicate that as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases… Misinformation about a product's 'normal' price is, therefore, significant to many consumers in the same way as a false product label would be" *Id., citing* Dhruv Paper. While Defendant suggests that generalized motivations are not enough to state a claim, Plaintiff goes far beyond that, given the clear prohibition against Defendant's alleged pricing practices combined with the document effect of false discounts on the consuming public. Defendant's intent is more than reasonably inferred.

III.     <u>Plaintiff's Unjust Enrichment Claim Should Survive Dismissal</u>

   **A. Defendant Has Been Unjustly Enriched**

   Defendant argues that Plaintiff has failed to allege unjust enrichment, but Plaintiff's First Amended Complaint has satisfied the elements of unjust enrichment, which requires a showing that he "(1) suffered an injury in fact, (2) that is plausibly traceable to Defendant's conduct, and (3) is redressable by a favorable judicial opinion. March 28, 2023 Opinion and Order at 14-17 (ECF No. 33) ("MTD Order"). The first and second elements are sufficiently pled because "Plaintiff and Class Members conferred benefits on Lenovo purchasing the Products based on Defendant's representations of List Price or Estimated Value …[and] Defendant has been unjustly enriched in retaining the revenues derived from the purchases and the Products by Plaintiff and other members of the Class." FAC ¶¶ 109, 112. Plaintiff sufficiently pled the third element of his unjust enrichment claim because "Defendant's representations regarding the overall quality of the Products was misleading to consumers, which caused injuries to Plaintiff and the other members of the class, because they would have not purchased the Products had they known the true facts or would have purchased them from different manufacturers' Products for a lower price elsewhere."

*Id.* ¶ 112.

### B.  Plaintiff's Unjust Enrichment Claim is Not Duplicative

Your Honor did not, however, dismiss Plaintiff's unjust enrichment claim for failing to plead the elements of the claim in the Court's March Order. Instead, the Court dismissed Plaintiff's unjust enrichment claim as duplicative of his NY GBL claims. But Plaintiff's unjust enrichment claim, adequately pled in the alternative, is not duplicative, and it should therefore not be dismissed.

As a general matter, New York law permits alternative pleading, and it is premature to dismiss unjust enrichment claim where, as here, Plaintiff could conceivably be entitled to restitution despite the failure of his other claims. *See, Great W. Ins. Co. v. Graham*, No. 18-CV-6249 (VSB), 2020 WL 3415026, at *34 (S.D.N.Y. June 22, 2020). While Your Honor noted in the Court's March Order that "[c]ourts in the Second Circuit have consistently held that unjust enrichment claims are duplicative of NY GBL claims," March Order (ECF No. 33) at 28, courts in this circuit do not always agree because "[t]he elements for an unjust enrichment claim are distinct from the elements for GBL claims under §§ 349 and 350." *Warner v. Starkist Co.*, No. 1:18-cv-406 (GLS/ATB), 2019 WL 1332573, at *7 (N.D.N.Y. Mar. 25, 2019). *See also Stuve v. Kraft Heinz Co.*, No. 21-CV-1845, 2023 U.S. Dist. LEXIS 6184, at *36 (N.D. Ill. Jan. 12, 2023) ("Because the court is not dismissing [p]laintiffs' failure-to-disclose claim at this time, it also will not dismiss [p]laintiffs' appended unjust enrichment claim.").

Furthermore, dismissal as duplicative of Plaintiff's NY GBL claims would be particularly unwarranted in this case. Plaintiff pled his unjust enrichment claim in the alternative to his GBL claims, and his GBL claims will fail if the Court finds, as it did in its March Order, that "Plaintiff has failed to establish a cognizable injury [under the] N.Y.G.B.L.," March Order at 25. As Your Honor noted in that Order, "[t]wo claims are duplicative of one another if they arise from the same

facts … **and do not allege distinct damages**." *Id.* at 28 (citing *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008)). Plaintiff's alternative pleading here means that he seeks restitution for unjust enrichment *only if* the Court finds that he has no cognizable injury and therefore *no damages* under the GBL. Plaintiff's damages under his unjust enrichment theory are indisputably distinct from *no damages under the GBL*, the only scenario under which Plaintiff seeks restitution for unjust enrichment. Plaintiff's claim is thus properly pled in the alternative and should survive dismissal.[3]

## IV.     Waiver of Punitive Damages for Defendant's Willful Misconduct Would Violate Public Policy

Next, Defendant seeks to escape punitive damages for its intentional fraudulent conduct, relying on *Morgan Stanley & Co. Inc. v. Peak Ridge Master SPC Ltd.*, 930 F. Supp. 2d 532 (S.D.N.Y. Mar. 15, 2013). Defendant's reliance on *Morgan Stanley*, however, is misplaced because, as the *Morgan Stanley* court acknowledged, "liability limitations will be set aside when the conduct at issue involved willful misconduct." *Morgan Stanley*, 930 F. Supp. at 544; *see also Kalisch–Jarcho, Inc. v. City of N.Y.,* 58 N.Y.2d 377, 384 (1983); *Gross v. Sweet,* 49 N.Y.2d 102, 106 (1979). Here, Defendant willfully invented Purported Values for the Products that had no bearing on reality. FAC ¶ 16 ("Lenovo's Products' actual value and quality are much lower than advertised. Its customers are not receiving Products of the quality advertised and expected by purchasing these advertised "Discounted" Products from Lenovo.").

Indeed, Defendant's reliance on a *medical malpractice* case is telling. In contrast to the malpractice suit involved in *Dupree v. Giugliano*, where the standard for punitive damages

---

[3] This is doubly true if the Court dismisses Plaintiff's GBL and fraud claims for a second time. Otherwise, Plaintiff would be left in the bizarre situation where the Court acknowledges he suffered cognizable injury fairly traceable to Defendant's fraudulent conduct (*i.e.* that he has standing), but paradoxically holds both that he has no remedies at law *and* cannot seek restitution under a theory of unjust enrichment

necessitates the manifestation of evil or malicious conduct beyond a breach of professional duty, the fraudulent misrepresentation in this case involves intentional wrongdoing. 20 N.Y.3d 921, 924 (2012); *see also* FAC ¶¶ 44 ("Lenovo knows its policy has this effect and, in fact, Lenovo intends for this deleterious effect on consumers"), 45 ("Lenovo knowingly induces [consumers] to believe, that they are getting a PC of overall quality commensurate with the Estimated Value when, in reality, they are getting a Product of substantially lower quality."). Here, the intentional fabrication of the Products' Purported Values (which Lenovo makes up out of whole cloth) and the prominent display of those fabricated values across Lenovo.com, as alleged by Plaintiff, demonstrates an inherent element of malice, fraudulent motive, and conscious disregard for the interests of others. *See Prozeralik v. Cap. Cities Commc'ns, Inc.*, 82 N.Y.2d 466, 478–79, 626 N.E.2d 34 (1993) ("A statement is made maliciously if it is made with deliberate intent to injure or with a wanton disregard for its truth.").

## V. <u>Plaintiff Has Article III Standing</u>

### A. Plaintiff Has (Still) Alleged an Injury-in-Fact

The Court held in its March Order that Plaintiff "comfortably satisfies [the] injury-in-fact prong of Article III standing." March Order (ECF No. 33) at 17 (quoting *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021)). For the reasons laid out at length in Plaintiff's first Opposition, ECF No. 25 at 4–10, Plaintiff still has Article III standing.

Defendant adds a flurry of cases to its rehashed argument, each of which is inapposite because they deal with mere allegations of "buyer's remorse." Def.'s MTD at 16. Once again, Defendant deftly beats at the straw man it makes of Plaintiff's claims, but does nothing to defeat Plaintiff's *actual* claims, which are predicated on two well-established theories of economic injury: Plaintiff did not receive the benefit of his bargain with Lenovo and Plaintiff paid a price premium due to Defendant's fraud. *See supra*, at 6–14.

21

**B.  Plaintiff Has Standing to Represent Proposed Class Members for All Computer Products Subjected to Defendant's Fictitious Pricing Scheme.**

Plaintiff brought this case on behalf of all consumers who purchased Products from Lenovo.com subject to Defendant's fraudulent fictitious pricing scheme. In its first Motion to Dismiss, Defendant argued that Plaintiff only had standing for claims on behalf of other consumers who purchased his exact Product. Def.'s First Motion to Dismiss (ECF No. 22) at 13–14. Your Honor disagreed, noting *all* Products were subjected to the fraudulent practice at issue and finding "that the laptop Products are largely similar; therefore, at this stage of the litigation, the Court will deny Defendant's motion on this basis." March Order at 18. The Court, however, dismissed claims for all "non-laptop products." *Id.*

Plaintiff concedes that peripherals (such as monitors) and accessories (such as cables and docks) are different from Plaintiff's Product, but other *computers*—i.e. desktop and server computers—are substantially similar and claims for those Products should not be dismissed. The principal difference between these kinds of computers is portability, and this has nothing to do with the claims at issue.

The prevailing view in this District and Circuit is that class action plaintiffs can bring claims for products they didn't purchase if they can show: 1) the products are substantially similar to the products that they did purchase; and 2) the alleged misrepresentation is the same. *Rivera v. S.C. Johnson & Son, Inc.*, No. 20-CV-3588 (RA), 2021 WL 4392300, at *9 (S.D.N.Y. Sept. 24, 2021). Laptop computers, desktop computers, and server computers are substantially the same in every way relevant to this lawsuit. First, each of the Products is a Lenovo computer with *inter alia* CPUs, GPUs, motherboards, RAM, hard drives, firmware, operating systems, and end-user software. Second, each of the Products is a complex machine whose overall objective quality cannot be determined by the reasonable consumer without relying on Defendant's Purported

Value. Third, each of the Products is treated identically in Defendant's fictitious pricing scheme. Defendant's scheme, in turn, is straightforward and, critically, uniformly applied to the proposed Class. This is dispositive because the key inquiry for determining whether allegations for other products are sufficiently similar looks to the nature of the misrepresentation:

> Although the unpurchased products may contain different ingredients compared to the purchased products, the Court finds that the Amended Complaint adequately alleges that the misrepresentation claimed with respect to the unpurchased products is sufficiently similar to the misrepresentation for the purchased products.

*Buonasera v. Honest Co., Inc.*, 208 F.Supp.3d 555, 563 (S.D.N.Y. 2016).

Finally, Defendant rehashes its failed argument that because its fictitious pricing scheme represented the List Price at different times as "Web Price" or "Estimated Value," Plaintiff cannot represent consumers whose List Price was represented as an "Estimated Value." Def.'s MTD at 19. For the reasons Plaintiff stated in his original Opposition, Pl.'s Opp'n (ECF No. 25) at 17, and for the reasons the Court initially rejected this argument, March Order at 18–19, the argument should be rejected again.

### C.  Plaintiff May Be Injured Again and Therefore Has Standing for Injunctive Relief

Courts in this circuit "have held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer," because to "hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief." *Ackerman v. Coca–Cola Co.*, 09–CV–395, 2013 WL 7044866, at *2–3, *14–15, *15 n. 23 (E.D.N.Y. July 18, 2013). The fact that "plaintiffs seek to be relieved from defendants' misleading and deceptive practices in the future, and the fact that they discovered the alleged deception years ago does not render defendants' advertising or labeling any more accurate or truthful." *Id.*, at *15. "An injunction in connection with a class action is designed to afford protection of future consumers from the same fraud. *Belfiore v. Procter & Gamble Co.*, 94

F. Supp. 3d 440, 445 (E.D.N.Y. 2015). To hold otherwise would denigrate the New York consumer protection statute. *Id.*; *see also Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 317 F.R.D. 374, 397–98 (S.D.N.Y. 2016) (finding standing because plaintiffs may buy the products at issue in the future if they are not mislabeled).

Here, Plaintiff not only satisfies this standard, but he himself (as well as other proposed Class Members he seeks to represent) is at risk of future harm. This is because, as Defendant goes through pains to point out in its briefing, Plaintiff has not alleged that Lenovo makes poor quality computers. *See, e.g.,* Def.'s MTD at 4, 17, 19. Rather, he has alleged that consumers shopping on Lenovo.com do not receive the benefit of the bargain and pay a price premium due to Defendant's fraudulent practices. FAC ¶¶ 61–65. Plaintiff would like to be able to consider purchasing Lenovo computers in the future, and he would like to be able to shop Lenovo.com—where Defendant sells millions of computers each year, *see* Pl.'s Opp'n (ECF No. 25) at 1—to do so. Without injunctive relief, however, Plaintiff will not be able to shop Lenovo.com without being injured again. *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866, at *15 (E.D.N.Y. July 18, 2013) (permitted plaintiffs to seek injunctive relief where "defendants' allegedly deceptive conduct is ongoing . . . [and] [p]laintiffs seek to be relieved from defendants' misleading and deceptive practices in the future."). To hold otherwise would "effectively bar any consumer who avoids the offending product from seeking injunctive relief." *Id.*

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in its entirety, except that Plaintiff concedes claims for consumers who purchased non-computer Products.

Dated: July 3, 2023

By: */s/ Russell Busch*
Russell Busch
*rbusch@milberg.com*
Zoe T. Aaron
*zaaron@milberg.com*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
405 E 50th Street
New York, New York 10022
Tel.: (630) 796-0903

Nick Suciu III*
*nsuciu@milberg.com*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel.: (313) 303-3472
Fax: (865) 522-0049

Trenton R. Kashima*
*tkashima@milberg.com*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
402 W. Broadway, Suite 1760
San Diego, CA 92101
Tel.: (619) 810-7047

* *Pro Hac Vice* application forthcoming

*Attorneys for Plaintiff and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 3, 2023 the foregoing document was filed via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

_/s/ Russell Busch_
Russell Busch