**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **HAM,**<br><br>       **Plaintiff,**<br><br>  -against-<br><br>**LENOVO (UNITED STATES) INC.,**<br><br>       **Defendant.** | **22-CV-05131 (ALC)**<br><br><u>**OPINION & ORDER**</u> |

**ANDREW L. CARTER, United States District Judge:**

  Plaintiff Anthony Ham brings this putative class action suit against Defendant Lenovo (United States) Inc. alleging (1) deceptive acts or practices in violation of the New York Deceptive Practice Act, New York General Business Law ("GBL") § 349 *et seq*; (2) false advertising in violation of GBL § 350 *et seq*.; and (3) fraud. Defendant moved to dismiss Plaintiff's Second Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons discussed herein, Defendant's motion is **GRANTED**.

BACKGROUND

## I. Procedural Background

  On June 17, 2022, Plaintiff filed the initial Complaint in this action. ECF No. 1. After the Parties briefed Defendant's first motion to dismiss, the Court dismissed the Complaint without prejudice. *See Ham v. Lenovo (United States) Inc.*, 664 F. Supp. 3d 562 (S.D.N.Y. 2023) ("*Ham I*"). On April 18, 2023, Plaintiff filed the First Amended Complaint. ECF No. 34. After the Parties briefed Defendant's renewed motion to dismiss, the Court dismissed the First Amended Complaint without prejudice. *See Ham v. Lenovo (United States) Inc.*, 2024 WL 1348707 (S.D.N.Y. Mar. 29, 2024) ("*Ham II*").

On April 14, 2024, Plaintiff filed a Second Amended Complaint. ECF No. 45 ("SAC"). On April 30, 2024, the Court entered a joint stipulation and order establishing the briefing schedule for Defendant's renewed motion to dismiss. ECF No. 47. On May 24, 2024, Defendant filed its motion to dismiss and supporting memorandum and declaration. ECF Nos. 48, 49 ("Def. Br."), 50 ("Def. Decl."). On July 19, 2024, Plaintiff filed his opposition. ECF No. 54 ("Pl. Opp."). On August 9, 2024, Defendant filed its reply. ECF No. 55. ("Def. Reply").

## II. Factual Background

The Court presumes the Parties' familiarity with the relevant facts and directs readers to the factual background provided in the Court's prior opinions granting dismissal without prejudice. *See Ham I* at 569–73; *Ham II* at *1–2. For the purposes of this motion, the Court focuses mostly on Plaintiff's new allegations.

Here, again, Plaintiff takes issue with how Defendant prices its consumer products on its website, Lenovo.com. This time, however, Plaintiff alleges that the listed values of the products represent "an indication of 'comparable' computers, and thus fool[] consumers into believing they are getting overall better, more powerful and/or performant machines." FAC ¶ 1. To accomplish this, Defendant "fabricates a fictitious original price, at different times throughout the relevant period called 'Web Price' or 'Estimated Value' (collectively referred to herein as 'Purported Value')" which "promises users a substantial reduction from that fictitious price ('Discount' or 'Savings'), and presents users with a comparatively lower price to pay at the point of sale ('Sale Price')." *Id.* ¶ 6.

Plaintiff notes that Lenovo's current Purported Value—which is labeled as "Estimated Value"—is defined as such:

> Estimated value is Lenovo's estimate of product value **based on industry data, including the prices at which Lenovo and/or third-party retailers and e-**

>    **tailers have offered or valued the same or comparable products.** Third-party data may not be based on actual sales

*Id.* ¶ 7 (emphasis in original).

Advancing a similar claim for the third time, Plaintiff alleges that "[s]uch representations are meant to induce, and succeed in inducing, reasonable consumers to believe that the Purported Value represents either the price for 'comparable' computers in the market or the Product's prevailing price in the market." *Id.* ¶ 8. Such a representation also amounts to a "direct, unambiguous statement that a computer with a Purported Value of $3,000 for example is, in fact, a computer with overall qualities and performance comparable to a laptop sold in the market for $3,000, for instance a high-end Apple Macbook Pro. As a result, Lenovo leads consumers to believe that the Products have performance, features, and overall value that they do not have." *Id.* ¶ 9.

Similar to the prior iterations of Plaintiff's Complaint, the SAC alleges that Purported Value is a "work of fiction" designed to "create the impression of significantly higher quality Product[s] than consumers will actually receive." *Id.* ¶ 12. Plaintiff states that "[c]onsumers will forgo higher overall quality products from other manufacturers on the inflated value and misrepresented characteristics Lenovo communicates on its website." *Id.* ¶ 13. He also alleges that "Defendant continuously and systematically lied and continues to lie to consumers" who are "thereby misled and induced to purchase Defendant's Products at an inflated price under the mistaken belief that Defendant's Purported Value accurately conveys the overall quality and characteristics of the Products (as Defendant explicitly states it does), as measured by 'comparable' computers, thus incurring economic injury." *Id.* ¶ 16.

Plaintiff's factual allegations of his purchase of one of Defendant's laptops are largely unchanged from his prior submissions. One addition to the SAC appears to be responsive to the

Court's prior opinion dismissing the FAC in part for failing to allege a price premium injury. Plaintiff now alleges that "Lenovo's misrepresentations—the Purported Values of the Products—do indeed market the product as having a specific quality or characteristic that they do not have. That is, Lenovo explicitly represents that these Purported Values represent 'comparable' computers in the market." *Id.* ¶ 46. Plaintiff includes an example to illustrate Defendant's alleged price premium scheme:

> [I]magine Lenovo marketed its $1,313.40 T15 Gen 2 Intel model [] on its website with an accompanying thumbnail of a $2,189.00 Macbook Pro with the statement that the Product was 'comparable to this competing product.' This would unambiguously constitute a false representation about the T15's qualities or characteristics, because the claim falsely states that its qualities and characteristics are 'comparable' to the $2,189.00 Macbook Pro's qualities and characteristics. . . . Lenovo's fabricated Purported Values do just that, except that instead of singling out a single computer, Lenovo's lie is comprised of a dollar figure and the claim that the T15 has qualities and characteristics generally comparable to those computers.

*Id.* In so doing, Defendant "expressly represents to consumers that its Purported Values are an indication of 'comparable' computers, and thus a reference for comparable qualities or characteristics." *Id.* ¶ 49. With respect to his particular purchase, Plaintiff "[believed] the Purported Value was a truthful representation of the Product's actual qualities and characteristics and meant the Product was 'comparable' to higher quality computers priced at or around that Purported Value, as Lenovo expressly claimed" and was thereby "induced to buy his T495 for $969." *Id.* ¶ 53.

## LEGAL STANDARD

When deciding on a motion to dismiss for failure to state a claim, the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements" need not be credited." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim should be dismissed where a plaintiff has failed to plead sufficient facts that "plausibly give rise to an entitlement for relief." *Id.* at 679. A claim is plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). A plaintiff must present "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

## DISCUSSION

Defendant contends that Plaintiff does not have standing because he was never exposed to the definition of Estimated Value, which was included in a tooltip accompanying the Estimated Value product comparison and was not on the website when Plaintiff bought his laptop. Defendant also characterizes Plaintiff's suit as another "disappointed bargain-hunter" case and contends that Plaintiff still has not shown he was injured by Lenovo's pricing decisions.

Plaintiff argues that Defendant's own definition of Estimated Values shows that Defendant misrepresented the objective qualities and characteristics of the Product to Plaintiff to represent that the laptop he purchased had comparable features to that of a $1,729 laptop. Even if he did not actually see Defendant's Estimated Value definition, Plaintiff alleges that this was exactly how he interpreted the Purported Value representations.

I.      **Plaintiff Has Standing to Bring His Claim**

As a threshold matter, the Court addresses Plaintiff's standing. Defendant makes an argument about standing for the third time in this litigation, now arguing that Plaintiff lacks standing to bring this case because the SAC relies on a new theory in which the definition of the Estimated Value on Defendant's website is the "crux" of Defendant's purported "deception." But Defendant argues Plaintiff did not in fact see this definition when he purchased the laptop. *See* Def. Br. at 7, 9. At the time Plaintiff bought his laptop, the website listed a "Web Price" that, unlike the "Estimated Value," lacked without any explanation as to how the price was determined. SAC ¶¶ 52, 54–55.

Standing requires that a plaintiff have (1) "suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *John v. Whole Foods Market Group, Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). On this argument, Defendant specifically challenges the second prong, reminding the Court that "[i]n false advertising cases, the only way a plaintiff can show that he was injured as a result of the defendant's representations is to prove that he saw and relied on the statements at issue." *Kraus v. Snow Teeth Whitening LLC*, 2022 WL 4642170, at *5 (E.D.N.Y. Sept. 15, 2022), *report and recommendation adopted*, 2022 WL 4662819 (E.D.N.Y. Sept. 30, 2022).

In response, Plaintiff posits that the Estimated Value tooltip is just "additional contextual information that acts as a <u>hint</u> for users who have not inferred an element's purpose or function from the other surrounding context." Pl. Opp. at 5 (emphasis in original). Indeed, Plaintiff submits that "the text of Lenovo's tooltip is not a brand new, standalone representation, but

rather additional context spelling out what Defendant's Purported Value means for users who have not otherwise put it together from the surrounding context." *Id.*

The Court agrees with Defendant that Plaintiff cannot bring a suit on the basis of a statement he did not see or rely on. Nevertheless (and despite Plaintiff's threadbare argument), the Court concludes that Plaintiff's allegation that he "[b]eliev[ed] the Purported Value was a truthful representation of the Product's actual qualities and characteristics and meant the Product was 'comparable' to higher quality computers priced at or around that Purported Value" is fairly traceable to Defendant and sufficient for standing.[1] *See* SAC ¶ 53.

## II.     Plaintiff's GBL §§ 349 and 350 Claims Fail

The Court now turns to the substance of Plaintiff's claims. "To state a claim under either [GBL §§ 349 and 350], a plaintiff must plead facts to show that (1) the challenged transaction was consumer-oriented; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct." *Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 461 (S.D.N.Y. 2020) (internal citations and quotations omitted). Claims under GBL §§ 350 and 350-a "must meet all of the same elements as a claim under GBL § 349." *Wurtzburger v. Ky. Fried Chicken*, No. 16-CV-08186, 2017 WL 6416296, at *2 (S.D.N.Y. Dec. 13, 2017) (citing *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1, (2002)).

The SAC alleges that Defendant violated N.Y.G.B.L. § 349 by "engag[ing] in unfair and/or deceptive conduct by . . . making the representations that the Products had qualities and characteristics that they did not, namely that these Purported Values were a representation of

---

[1] In the SAC, Plaintiff again tries to assert claims for non-laptops, which the Court has previously rejected. *See Ham I*, 664 F. Supp. 3d at 578, n.7; *Ham II*, 2024 WL 1348707, at *5. Given the ultimate disposition of this case, the Court does not reach the issue of Plaintiff's standing to assert claims for Defendant's other products.

'comparable' computers in the market. In reality, the Purported Values of the Products were fictitious, fabricated to fool consumers as to 'comparable' computers and therefore as to the quality and characteristics of the Products[,]" *Id.* ¶ 83, and that "[Defendant's] false, deceptive, or misleading statements give consumers a false and highly inflated impression of the qualities and characteristics of [Defendant's] PCs." *Id.* ¶ 84. Once again, Plaintiff claims that he (1) did not receive the benefit of his bargain and (2) paid a price premium. But given that Plaintiff did not rely on some newly alleged express representation by Defendant, his injury theories begin to look much like the theories the Court has previously dismissed in this action.

As to the first theory, Plaintiff claims he "did not receive the product [he] bargained for." *See Rodriguez v. Hanesbrands Inc.*, No. 17-CV-1612, 2018 WL 2078116, at *5 (E.D.N.Y. Feb. 20, 2018), *report and recommendation adopted*, No. 17-CV-1612, 2018 WL 1686105 (E.D.N.Y. Mar. 30, 2018). Plaintiff tweaks his argument from the last motion to dismiss stage, specifically arguing that "[Defendant's] misrepresentations regarding the qualities and characteristics of the Products induced Plaintiff and consumers to believe that the Products had greater qualities and characteristics than they actually had." Pl. Opp. at 9.

In support of this, Plaintiff relies on the notion that "a fulsome evaluation of a computer's overall qualities and characteristics is not merely difficult for a typical consumer, it is actually *impossible*." *Id.* (emphasis in original). Although he does not cite to *Cannon v. Ashburn Corp.* in this round of briefing, Plaintiff articulates once again the proposition found in *Cannon* (and similar cases), which the Court already distinguished. *See Cannon v. Ashburn Corp.*, No. 16-CV-1452, 2016 WL 7130913 (D.N.J. Dec. 7, 2016); *see also Ham*, 2024 WL 1348707, at *6.

And in this round, too, the Court finds this argument to be unpersuasive where there are no allegations that Defendant did not disclose the specifications of the products to consumers.

Perhaps in the hypothetical that Plaintiff posited—in which Defendant placed an image of a more expensive competing product next to its own and affirmatively told consumers that the product were "comparable"—the Court could come down differently. *See* SAC ¶ 46. But here, Plaintiff does not plausibly allege that consumers, including Plaintiff, were induced by Defendant's alleged misrepresentations, to believe that the products had greater quality than they had.

Moreover, Plaintiff still has not alleged "that the laptop he received was worth less than the value he paid." *Ham* I, 664 F. Supp. 3d at 583. Thus, the Court finds that Plaintiff has failed to adequately plead a benefit-of-the-bargain injury under the GBL.

As for Plaintiff's price premium theory, he alleges that Defendant "surreptitiously boosts consumer perception of the qualities and characteristics of its Products" through its "significantly inflated" value assertions. Pl. Opp. at 11. "To allege injury under a price premium theory, a plaintiff must allege not only that defendants charged a price premium, but also that there is a connection between the misrepresentation and any harm from, or failure of, the product." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 350 (S.D.N.Y. 2020) (quoting *DaCorta v. AM Retail Grp.*, No. 16-CV-1748, 2018 WL 557909, at *7 (S.D.N.Y. Jan. 23, 2018)) (quotation marks omitted).

The traditional price premium claim proceeds by a "plaintiff alleg[ing] that a company marketed a product as having a unique quality, that the marketing allowed the company to charge a price premium for the product, and that the plaintiff paid the premium and later learned that the product did not, in fact, have the marketed quality." *Id.* "The failing of the product [must be] apparent from the marketing and the allegations that the products were not as marketed." *DaCorta*, 2018 WL 557909, at *8; *see e.g., Segedie v. Hain Celestial Grp., Inc.*, No. 14-CV-5029, 2015 WL 2168374, at *12 (S.D.N.Y. May 7, 2016) (price premium based on label that

product was "natural" or "all natural"); *Segovia v. Vitamin Shoppe, Inc.*, No. 14-CV-7061, 2016 WL 8650462, at *7–8 (S.D.N.Y. Feb. 25, 2016) (premium paid due to product's marketing as containing lactose which allegedly "aid[s] in the absorption and digestion of protein"). Here, Plaintiff has not made an adequate showing that Defendant promises, advertises, or markets a specific or unique quality that its products in fact do not have.

In failing to adequately allege a price premium, Plaintiff has again failed to "properly allege[] an injury for his N.Y. G.B.L. §§ 349 and 350 claims." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 576 (S.D.N.Y. 2021).

### III.    Plaintiff's Fraud Claim Fails

To allege fraud under New York law, a plaintiff must allege "a representation of material fact, falsity, scienter, reliance and injury." *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 57 (1999). Because Plaintiff has failed to sufficiently plead injury, his common law fraud claim is also dismissed for failure to plead an injury. *See Small*, 94 N.Y.2d at 57 (dismissing common law fraud claim upon finding plaintiff failed to plead injury on their N.Y.G.B.L. claim).

### IV.    Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,' "among other reasons." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has amended his pleadings twice before. In general, a plaintiff's failure to fix

deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.").

Further—and despite Defendants' two prior arguments that the Court deny Plaintiff further leave to amend—Plaintiff has not asked to amend again or otherwise suggested that he is in possession of facts that would cure the deficiencies identified in this ruling. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result).

Here, any further amendment to try to save Plaintiff's now-dismissed claims would be futile because "[t]he problem[s] with [Plaintiff's] causes of action [are] substantive," and "better pleading will not cure [them.]" *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Indeed, the FAC makes clear that Plaintiff has only repackaged the same claims this Court has previously dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED** with prejudice. The Clerk of Court is respectfully directed to terminate the pending motion at ECF No. 48 and to close the case.

**SO ORDERED.**

**Dated:  March 31, 2025**
   New York, New York

                                        **ANDREW L. CARTER, JR.**
                                        **United States District Judge**